**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

MARY COMANS              *
                        *
      Plaintiff,         *
                        *
      v.               *
                        *
EXECUTIVE OFFICE OF THE    *
PRESIDENT             *
                        *   Civil Action No: <u>25-1237</u>
      and           *
                        *
DEPARTMENT OF HOMELAND   *
SECURITY            *
                        *
      and           *
                        *
UNITED STATES OF AMERICA    *
                        *
      Defendants.      *
*    *    *    *    *    *    *    *    *    *    *    *

**<u>COMPLAINT</u>**

Plaintiff Mary Comans ("Ms. Comans") served as a public servant for the United States Government for over twenty years through both Republican and Democratic Administrations. At the time relevant here, Ms. Comans was a member of the Senior Executive Service ("SES"). Disregarding long-standing legislative and regulatory protections that govern how and when a member of the SES can be terminated, the federal government informed Ms. Comans that it removed her from federal service "pursuant to Article II of the United States Constitution, at the direction of the President."  No cause or due process was provided with respect to this removal, and the Government asserts that neither need be.

In order to both assert her own rights and protect the integrity of the Civil Service system, and because the Government argues that other means of redress are unavailable, Ms. Comans brings this action against the Executive Office of the President ("EOP"), the Department of

Homeland Security ("DHS"), for the actions of its component, the Federal Emergency

Management Agency ("FEMA"), and the United States of America ("USA") for the purposes of

seeking relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Federal

Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act,

28 U.S.C. § 1651, and the Fifth Amendment to the Constitution of the United States.

## JURISDICTION

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because

Ms. Comans' causes of action arise under the Constitution and laws of the United States.

## VENUE

2.      Venue is appropriate in this District under 5 U.S.C. § 703 and 28 U.S.C.

§ 1391(e)(1)(C), as Ms. Comans is a resident of this District.

## PARTIES

3.      Ms. Comans served as FEMA's Chief Financial Officer, an SES position, from

2017 until Defendants terminated her employment on February 11, 2025. Ms. Comans, who has

over twenty years of federal service, also served as FEMA's Chief Operating Officer from 2020

– 2021. Ms. Comans was an exemplary employee with absolutely no disciplinary history.

Indeed, she had been rated "Achieved Excellence" in her performance reviews for every year

that she served in the SES. Ms. Comans received the DHS Secretary's Award for Team

Excellence, the DHS CFO's Award for Innovation in an Austere Budget Climate, and the U.S.

Coast Guard Public Service Commendation, among other awards. She obtained a Masters in

National Resource Strategy in 2015 from the Dwight D. Eisenhower School for National

Security & Resource Strategy, Fort McNair, D.C., and a Master of Public Administration from

New York University's Robert F. Wagner School of Public Service in 2004. Her Bachelor of Arts in Political Science is from Fordham University.

4.      Defendant EOP initiated the unlawful and unconstitutional actions taken against Ms. Comans.

5.      Defendant DHS is an agency of the United States as defined by 5 U.S.C. § 701 and subject to the jurisdiction of this Court. DHS, and its component FEMA, have also taken the unlawful and unconstitutional actions against Ms. Comans.

6.      Defendant USA is responsible for the exercise of state action being challenged by Ms. Comans in this case.

## FACTS

### I.    *SES Protections*

7.      Established in the Civil Service Reform Act of 1979 ("CSRA"), the SES was designed to be a senior corps of civil service executives, selected for their leadership qualifications, who serve as the link between political appointees and the rest of the federal workforce. 5 U.S.C. § 3131 *et seq.*

8.      Recognizing that the success of the federal government depends upon an accountable leadership corps, the CSRA established a comprehensive system for reviewing personnel action taken against federal employees. It specifies how employees can be elevated to the SES, and how they can be removed from it. After a probationary period, career senior executives may "not be removed from the Senior Executive Service or civil service except in accordance with" certain statutory provisions. 5 U.S.C. § 3393(g).

9.      The CSRA and other civil service laws were enacted by Congress to specifically protect federal employees, including SES employees, from political retaliation and to provide

procedural protections. *See* 5 U.S.C. § 2301(b)(8)(A). Thus, the government can dismiss members of the SES, such as Ms. Comans, only for reasons specified in statute, and only after established due process procedures are followed.

10.    But those SES protections are under direct attack by this new presidential Administration. On January 20, 2025, Defendant Trump issued an Executive Order to the heads of Executive Departments and Agencies, entitled "Restoring Accountability for Career Senior Executives" ("SES EO").[1] The SES EO claimed that the "President's power to remove subordinates is a core part of the Executive power vested by Article II of the Constitution and is necessary for the President to perform his duty to 'take Care that the Laws be faithfully executed.' Because SES officials wield significant governmental authority, they must serve at the pleasure of the President."

11.    The SES EO further claimed that "[i]f career SES officials fail to faithfully fulfill their duties to advance the needs, policies, and goals of the United States, the President must be able to rectify the situation and ensure that the entire Executive Branch faithfully executes the law." The SES EO claims the authority to terminate or discipline members of the SES when, for example, "SES officials who engage in unauthorized disclosure of Executive Branch deliberations, violate the constitutional rights of Americans, refuse to implement policy priorities, or perform their duties inefficiently or negligently."

12. The SES EO concluded by directing "[a]ny agency head who becomes aware of an SES official whose performance or continued occupancy of the position is inconsistent with

---

[1] Memorandum for the Heads of Executive Departments and Agencies, *Restoring Accountability for Career Senior Executives*, THE WHITE HOUSE (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/restoring-accountability-for-career-senior-executives/.

either the principles reaffirmed in this Order or their duties to the Nation under section 3131 of title 5, United States Code, [to] … immediately take all appropriate actions, up to and including removal of that official, with the support of OPM and OMB."

13.    Significantly, Ms. Comans' notification of removal did not assert that she had in any way failed to faithfully fulfill her duties "to advance the needs, policies, and goals of the United States," or that her "performance or continued occupancy of [her] position is inconsistent with either the principles reaffirmed in the [SES EO] or [her] duties to the Nation under section 3131 of title 5, United States Code." Rather, her termination was based solely on the assertion that it was "pursuant to Article II of the United States Constitution, at the direction of the President."

## II.    *Termination of Mary Comans*

14.    On February 3, 2025, FEMA transmitted $59,000,000 to the U.S. Treasury, which in turn sent it the following day to the New York City Office of Management and Budget under FEMA's Sheltering and Services Program ("SSP").

15.    On February 5, 2025, representatives of the Department of Government Efficiency ("DOGE") met with FEMA officials to discuss how certain funding programs operated, including the SSP. During the meeting, the DOGE officials confirmed that funding to state and local governments was not paused.

16.    On February 10, 2025, following publicity regarding FEMA payments to New York City, DOGE representatives flagged the SSP payment as an alleged violation of the President's Executive Order, "Protecting the American People Against Invasion" and the Secretary's memorandum, "Direction on Grants to Non-governmental Organizations."

17.     On February 11, 2025, without any warning, prior disciplinary history, or the statutory notice required by the CSRA, MaryAnn Tierney, Senior Official Performing the Duties of the Deputy Administrator, FEMA, provided Ms. Comans a Memorandum ("Termination Memorandum") which stated, in full:

> This is an official notice that, effective immediately, you are being removed from your position with the Federal Emergency Management Agency and from Federal service. This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President. Article II, § 1 states that the executive Power "shall be vested in a President of the United States of America," and this termination is an exercise of that vested power.

Significantly, the Termination Memorandum did not assert that Ms. Comans was being terminated for cause, or that she had failed in any way to faithfully execute the law.

18.     The same day, however, Defendant DHS, publicly issued a press release[2] that falsely and in a defamatory manner stated Ms. Comans had been fired "for circumventing leadership to unilaterally make egregious payments for luxury NYC hotels for migrants." Not only is it provably false that Ms. Comans ever circumvented her leadership or unilaterally authorized these payments, but even at the time of her firing, FEMA leadership (as well as several in DHS leadership) did not believe this to be true. The release also stated that "[u]nder President Trump and Secretary Noem's leadership, DHS will not sit idly and allow deep state activists to undermine the will and safety of the American people." Ms. Comans' actions were widely and publicly, and falsely, called "illegal" and "criminal" by right-wing influencers, including Elon Musk, on various social media platforms and news outlets; examples are given below.

---

[2] Press Release, U.S. Dep't of Homeland Sec., Statement from a DHS Spokesperson on Termination of 4 FEMA Employees Who Made Payments to Luxury Hotels for Migrants (Feb. 11, 2025), https://www.dhs.gov/news/2025/02/11/statement-dhs-spokesperson-termination-4-fema-employees-who-made-payments-luxury.





19.     As a member of the Civil and Senior Executive Services, Ms. Comans was entitled to procedural and substantive due process before removal. Defendants' removal of Ms. Comans without such process was unlawful.

20.     The grounds for dismissing members of the SES, such as Ms. Comans, are specified and limited by statute, including, but not limited to 5 U.S.C. § 7543(a), which notes that "[u]nder regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." The Termination Memorandum did not cite any of those grounds, and none are applicable to Ms. Comans.

21.     Additionally, the CSRA provides that a "career appointee may not be removed from the Senior Executive Service or civil service except in accordance with" five specified provisions. 5 U.S.C. § 3393(g). Section 3592(a)(2) allows a career SES employee to be removed based only on a finding of "less than fully successful executive performance as determined under

subchapter II of chapter 43 of this title." None of the five specified provisions was cited in the Termination Memorandum or are applicable to Ms. Comans.

22.    The procedures that must be followed before terminating a member of the SES, such as Ms. Comans, are also governed by statute and regulation including, but not limited to, 5 U.S.C. § 7543(b) and 5 C.F.R. §§ 752.601-606. Those provisions clearly set forth the obligations the Defendants were required to follow before terminating Ms. Comans, which included:

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe that the employee has committed a crime for which a sentence of imprisonment can be imposed, stating specific reasons for the proposed action;
> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
> (3) be represented by an attorney or other representative; and
> (4) a written decision and specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7543(b). The Defendants did not afford any of these protections to Ms. Comans before they unlawfully terminated her.

23.    Finally, Ms. Comans' removal also was contrary to the SES EO, which asserts that the President must be able to "ensure that the entire Executive Branch faithfully executes the law," and thus must be able to "rectify the situation" when "career SES officials fail to faithfully fulfill their duties to advance the needs, policies, and goals of the United States."  To that end, President Trump's SES EO states that "[a]ny agency head who becomes aware of an SES official whose performance or continued occupancy of the position is inconsistent with either the principles reaffirmed in this Order or their duties to the Nation under section 3131 of title 5, United States Code, shall immediately take all appropriate actions, up to and including removal of that official, with the support of OPM and OMB." But none of these factors laid out in the EO was cited in Ms. Comans' Termination Memorandum, and Ms. Comans' SF50 cited as the legal

basis for her removal only "Art II 1 UNIT." Accordingly, Defendants' action of removing Ms.

Comans was *ultra vires* under the SES EO, as well as under the Constitution and federal law.

### III.    *Unavailability and Futility of the Merit System Protection Board*

24.    Congress enacted the CSRA in 1978, to create a uniform scheme for

administrative and judicial review of covered federal employee personnel actions, in order to

ensure a non-political career civil service for the good of the American public. That scheme sets

forth the protections and remedies available to such employees as well as the procedural process

they must follow. Normally, when a federal employee seeks relief from an action covered by the

CSRA, he or she is required to comply with the prescribed scheme of administrative and judicial

review and generally may not bring an initial claim in federal court.

25.    The CSRA established the Merit System Protection Board ("MSPB") as an

independent agency consisting of three members, each appointed by the President with the

advice and consent of the Senate to serve seven-year terms. 5 U.S.C. §§ 1201, 1202(a)-(c). The

MSPB is a quasi-judicial body, adjudicating conflicts between civil servants and their employing

agencies. It was designed to resolve disputes including federal employees' allegations that their

government employer discriminated against them, retaliated against them for whistleblowing,

violated protections for veterans, or otherwise subjected them to an unlawful adverse

employment action or prohibited personnel practices. 5 U.S.C. §§ 1204(a)(1), 1221, 2302(b)(1),

2302(b)(8)-(9), 3330a(d), 7512.

26.    By statute, no more than two members of the MSPB are permitted to be from the

same political party, to ensure that federal employees are "protected against arbitrary action,

personal favoritism, or coercion for partisan political purposes." 5 U.S.C.

§§ 1201, 2301.

27.     Thus, agency action to remove employees covered by the CSRA through termination, such as in this matter, is supposed to be challengeable before the MSPB. *See id.* §§ 7511–15. The statute provides that a covered employee "against whom an action is proposed is entitled to[:]" a minimum of "30 days' advance written notice[;]" the opportunity to respond orally and in writing; representation; and "a written decision and the specific reasons therefor at the earliest practicable date." *Id.* § 7513(b). Decisions are appealable, first to the MSPB and then to the United States Court of Appeals for the Federal Circuit. *Id.* §§ 7513(d), 7703(b).

28.     MSPB Chair Cathy Harris' term was set to expire on March 1, 2028, but President Trump terminated her MSPB position on February 10, 2025. On March 4, 2025, the U.S. District Court for the District of Columbia issued a permanent injunction reinstating Ms. Harris to her MSPB position. After appeals, however, the U.S. Supreme Court ultimately stayed that injunction and permitted Ms. Harris' removal, which remains the case at the time of the filing of this Complaint.

29.     MSPB member Raymond Limon retired on February 28, 2025.[3]

30.     As of this filing, there is only one remaining member of the MSPB, which thus lacks a quorum to vote on any petitions for review.[4]

31. Ms. Comans attempted to pursue her rights through the MSPB process. On March 4, 2025, she filed an appeal challenging her termination.

---

[3] Press Release, U.S. Merit Systems Protection Board, Member Raymond A. Limon Retiring (Feb. 28, 2025), https://www.mspb.gov/publicaffairs/press_releases/ Ray_Limon_Farewell_Press_ Release.pdf.

[4] *See U.S. Merit Systems Protection Board: Frequently Asked Questions about the Lack of Quorum Period and Restoration of the Full Board, UPDATED: April 9, 2025*, U.S. MERIT SYSTEMS PROTECTION BOARD (Apr. 9, 2025), https://www.mspb.gov/FAQs_ Absence_of_Board_Quorum_4-9-25.pdf.

32.     The Defendants opposed that appeal and filed a Motion to Dismiss on April 25, 2025, particularly arguing that the MSPB did not possess jurisdictional authority over the Constitutional claims and assertion of the President's Article II authority.

33.     Ms. Comans filed an opposition to the Defendants' Motion to Dismiss on May 5, 2025. To date, the MSPB has failed, notwithstanding the passage of more than 120 days (which is an internal MSPB policy that it tries to meet), to adjudicate the dispute. Upon information and belief, the inability of MSPB administrative judges to issue timely decisions, which is prevalent throughout the MSPB system now particularly in light of the exponential increased caseload,[5] demonstrates that the Congressional intent of the CSRA cannot be met and this Court can exercise jurisdiction over the dispute. Additionally, even if the MSPB could timely address the dispute, the Defendants contend it cannot, since they contend that the President's alleged Article II removal authority is plenary.

34.     Because (a) there is no quorum at the MSPB, (b) independently, because the MSPB is failing to perform its duties so that the claims of covered employees, such as Ms. Comans, are not adequately processed, and (c) the Defendants have taken the position that the MSPB has no jurisdiction over what the Defendants characterize as an "Article II removal," the framework of the CSRA has been thwarted and this Court may exercise jurisdiction over the presented Constitutional and statutory challenges.

_____

[5] Statistics published on the MSPB's website show that while there were approximately 100 or fewer cases filed per week from September 2024 to January 2025, the number of filed cases ballooned dramatically in February 2025, peaking at 2,188 cases filed between February 23 and March 1 of 2025. *Weekly Number of Cases Received in the Regional and Field Offices, Fiscal Year 2025*, U.S. MERIT SYSTEMS PROTECTION BOARD, https://www.mspb.gov/Recent%20ROFO%20Case%20Receipts.pdf (last visited July 21, 2025).

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(PROCEDURAL DUE PROCESS, PROPERTY INTEREST)**
**(Against All Defendants)**

35.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

36.     Ms. Comans has a protected property interest in her continued employment with FEMA.

37.     Defendants' actions to terminate her without proper due process unlawfully deprived her of that property interest.

38.     Ms. Comans has suffered adverse and harmful effects from the deprivation of her property interest in her employment, including, but not limited to, loss of income and lost or jeopardized present and future financial opportunities.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(PROCEDURAL DUE PROCESS, LIBERTY INTEREST)**
**(Against All Defendants)**

39.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

40.     The Fifth Amendment's protection against deprivation of liberty without due process of law protects against reputational harm caused by government actors when that harm is accompanied by other harm. Here, the Defendants' actions harmed Ms. Comans' reputational interests by terminating her admittedly without cause, based solely on the President's alleged Article II authority, but then publicly accusing her, either directly or indirectly through third parties, of unlawful and indeed criminal conduct. In addition, Defendants' actions have caused

12

the loss of her present government employment and have harmed her future employment prospects.

41.    As a member of the SES, Ms. Comans was entitled by statutes, regulations and the Fifth Amendment to protection against deprivation of her liberty interest without the process required by law. The lack of any due process accorded to Ms. Comans deprived her of the ability to challenge the accuracy of the evidence, if any even exists, that the Defendants falsely claimed was the stated basis for her removal, as well as to protect her reputation.

42.    The Defendants' actions have prevented Ms. Comans from participating in her chosen profession. Should Ms. Comans apply to work for a federal agency or a private civilian employer for a position that requires even the most rudimentary background investigation, the Defendants will disseminate information, in addition to what they already have, to include known inaccurate and false information that will adversely impact her reputation and chances for additional employment opportunities. As a result, the Defendants have effectively stigmatized Ms. Comans' reputation and imparted a "status change" upon her that has implicated her liberty interests.

43.    As no opportunity was ever provided to Ms. Comans to respond to the actions taken by the Defendants, Ms. Comans is entitled to, among other remedies, a name-clearing hearing regarding the false public statements regarding her actions and the basis for her removal.

44.    Ms. Comans has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## THIRD CAUSE OF ACTION
## VIOLATION OF ARTICLE I AND II OF THE U.S. CONSTITUTION
## (CONSTITUTIONALITY OF EXECUTIVE ORDER)
## (<u>Against Defendants EOP and USA</u>)

45.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

46.     President Trump's SES EO exceeds the President's constitutional authority because it violates Article I, section 8 and Article II, sections 2 and 3 of the U.S. Constitution. The Constitution empowers Congress to create statutory frameworks for due process protections of federal employees; it gives the President no authority to violate the laws duly enacted by Congress. To the extent Defendants relied upon the SES EO to remove Ms. Comans, they did so in violation of the authorities vested in Congress by the Constitution.

47.     Ms. Comans has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities, as a result of her unlawful and unconstitutional termination.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
## (*ULTRA VIRES* IN VIOLATION OF STATUTORY AND
## EXECUTIVE ORDER AUTHORITY)
## (<u>Against Defendant DHS</u>)

48.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

49.     Defendant DHS had no lawful authority to terminate Ms. Comans without adhering to the statutory protections. Her termination was therefore *ultra vires* and without legal force or effect.

50.     Defendant DHS also had no lawful authority under President Trump's SES EO to terminate Ms. Comans without adhering to the statutory protections. Her termination was therefore *ultra vires* and without legal force or effect.

51.     Ms. Comans has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities. As such she is entitled to reinstatement, an award of backpay and any other available damages.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – 5 U.S.C. §§ 706(1) and 706(2)
### (Against Defendant DHS)

52.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

53.     Defendant DHS, in authorizing the issuance of the Termination Memorandum, implemented a final agency decision "not in accordance with the law," "contrary to a constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

54.     Ms. Comans has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

### SIXTH CAUSE OF ACTION
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202
### (Against All Defendants)

55.     Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

56.     Ms. Comans is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Ms. Comans and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to

15

establish that Ms. Comans is a Member of the SES and that the Defendants do not have authority to remove her without affording her all rights and protections set forth by applicable statutes and regulations.

57.    Ms. Comans has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

**SEVENTH CAUSE OF ACTION**
**WRIT OF MANDAMUS**
**(Against All Defendants)**

58.    Ms. Comans repeats and realleges the allegations contained in paragraphs 7 through 34 above, inclusive.

59.    In the alternative, Ms. Comans is entitled to a writ of mandamus commanding Defendants to return her to office and not remove her without following lawful procedures. Defendants have a legal duty not to terminate her without affording her the protections prescribed by law and, absent this Court granting relief, there is no other adequate means of redress.

60.    The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies. To the extent relief is unavailable under either the APA, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

**JURY DEMAND**

61.    Plaintiff demands a jury trial on all triable issues.

16

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Mary Comans requests that the Court award her the following relief:

(1)    An order that Defendants immediately reinstate Ms. Comans and enjoining the Defendants from taking any further adverse personnel action against her without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment;

(2)    A declaration that the Defendants' actions violated Ms. Comans' Fifth Amendment due process and statutory rights and order appropriate relief, to include, but not limited to, a name-clearing hearing;

(3) A declaration that Defendants Noem and DHS violated the Administrative Procedure Act;

(4) An award of backpay and other monetary and administrative relief as appropriate;

(5) Award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and,

(6) grant such other relief as the Court may deem just and proper.

17

Date:   July 24, 2025                         Respectfully Submitted,


/s/ Kevin Byrnes
Kevin Byrnes, VSB 47623
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fluet.law
e-file@fluet.law


/s/ Norman L. Eisen
Norman L. Eisen, Esq.
(*pro hac vice forthcoming*)
Tianna J. Mays, Esq.
(*pro hac vice forthcoming*)
Taryn Wilgus Null, Esq.
(*pro hac vice forthcoming*)
Democracy Defenders Fund
600 Pennsylvania Avenue SE, No. 15180
Washington, D.C. 20003
T: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org
Taryn@statedemocracydefenders.org


/s/ Margaret M. Donovan
Margaret M. Donovan, Esq.
(*pro hac vice forthcoming*)
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, Connecticut 06604
T: (203) 336-4421
F: (203) 368-3244
mdonovan@koskoff.com


*Counsel for Plaintiff*

/s/ Mark S. Zaid
Mark S. Zaid, Esq.
(*pro hac vice forthcoming*)
Bradley P. Moss, Esq.
(*pro hac vice forthcoming*)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
T: (202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com


/s/ Abbe David Lowell
Abbe David Lowell, Esq.
(*pro hac vice forthcoming*)
Brenna L. Frey, Esq.
(*pro hac vice forthcoming*)
David A. Kolansky, Esq.
(*pro hac vice forthcoming*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, D.C. 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
BFrey@lowellandassociates.com
DKolansky@lowellandassociates.com


/s/ Heidi R. Burakiewicz
Heidi R. Burakiewicz, Esq.
(*pro hac vice forthcoming*)
Burakiewicz & DePriest, PLLC
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
T: (202) 856-7500
hburakiewicz@bdlawdc.com