**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MARY COMANS,

        *Plaintiff*,

        *v.*

EXECUTIVE OFFICE OF THE PRESIDENT
*et al.*,

        *Defendants*.

No. 1:25-cv-01237-MSN-WEF

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    Legal Background.................................................................................................. 2

    B.    Factual Background .............................................................................................. 4

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

I.    The Court Lacks Jurisdiction Over Ms. Comans's Constitutional, *Ultra Vires*, APA, and Declaratory Judgment Claims ............................................................... 6

    A.    The CSRA Strips District Courts of Jurisdiction Over Ms. Comans's Removal ...................................................................................................... 7

        1.    Congress's Intent to Preclude District-Court Jurisdiction is Fairly Discernible in the CSRA's Statutory Scheme ............................................ 9

        2.    Ms. Comans's Claims Are of the Type Congress Intended to be Reviewed Within the CSRA's Statutory Structure.................................... 9

        3.    The Fourth Circuit's Decision in NAIJ Does Not Compel a Different Result................................................................................... 11

    B.    Because the Court Lacks Jurisdiction Over Claims I–V, it Cannot Exercise Jurisdiction Over the Declaratory Judgment Claim............................................. 14

II.    The Court Lacks Jurisdiction Over Ms. Comans's Mandamus Claim ............................ 16

CONCLUSION.................................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*Elgin v. Department of Treasury*,
   567 U.S. 1 (2012)............................................................................................... *passim*

*Ameur v. Gates*,
   759 F.3d 317 (4th Cir. 2014) ................................................................................ 7

*Bennett v. SEC*,
   844 F.3d 174 (4th Cir. 2016) ............................................................................. 7, 8

*C&E Servs., Inc. v. D.C. Water & Sewer Auth.*,
   310 F.3d 197 (D.C. Cir. 2002) ............................................................................ 16

*Califano v. Sanders*,
   430 U.S. 99 (1977)............................................................................................... 7

*Esparraguera v. Dep't of the Army*,
   101 F.4th 28 (D.C. Cir. 2024)............................................................................... 3

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005).......................................................................... 14, 18

*Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*,
   104 F.3d 616 (4th Cir. 1997) .............................................................................. 15

*Goldstein v. Moatz*,
   364 F.3d 205 (4th Cir. 2004) .............................................................................. 15

*Hall v. Virginia*,
   385 F.3d 421 (4th Cir. 2004) ................................................................................ 5

*Heckler v. Ringer*,
   466 U.S. 602 (1984)............................................................................................ 16

*Honeywell Int'l Inc. v. OPTO Elecs. Co.*,
   135 F.4th 170 (4th Cir. 2025) ............................................................................. 15

*Hopewell Nursing Home, Inc. v. Heckler*,
   784 F.2d 554 (4th Cir. 1986) .............................................................................. 16

*In re First Fed. Sav. & Loan Ass'n of Durham*,
   860 F.2d 135 (4th Cir. 1988) ..................................................................... 16, 17, 18

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ............................................................................ 6, 13

*Lee v. USCIS*,
   592 F.3d 612 (4th Cir. 2010) ................................................................................ 7

*Lovern v. Edwards*,
   190 F.3d 648 (4th Cir. 1999) ................................................................................ 6

*Lovitky v. Trump*,
   949 F.3d 753 (D.C. Cir. 2020) ............................................................................ 15

*Lovo v. Miller*,
   107 F.4th 199 (4th Cir. 2024) ............................................................................. 17

*Nat'l Ass'n of Immgr. Judges v. Owen*,
   139 F.4th 293 (4th Cir. 2025) ........................................................................ *passim*

*Papasan v. Allain*,
   478 U.S. 265 (1986) .............................................................................................. 5

*Renne v. Geary*,
   501 U.S. 312 (1991) .............................................................................................. 6

*Rydie v. Biden*,
   No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ...................................... 11

*Schilling v. Rogers*,
   363 U.S. 666 (1960) ............................................................................................ 15

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) ............................................................................................ 15

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .............................................................................................. 8

*United States v. Fausto*,
   484 U.S. 439 (1988) ........................................................................................ *passim*

*Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*,
   118 F.3d 205 (4th Cir. 1997) .............................................................................. 15

**STATUTES**

5 U.S.C. § 1204(a) ..................................................................................................... 17

5 U.S.C. § 3132(a)(2)..................................................................................................... 3

5 U.S.C. § 3592............................................................................................................. 3

5 U.S.C. § 7512(1) ........................................................................................................... 9

5 U.S.C. § 7542 ............................................................................................................... 3

5 U.S.C. § 7701(g) ......................................................................................................... 17

5 U.S.C. § 7703(a) ..................................................................................................... 3, 10

5 U.S.C. §§ 7511–15 ..................................................................................................... 10

5 U.S.C. § 7542 ....................................................................................................... 3, 9, 10

5 U.S.C. § 7543(d) ................................................................................................... 3, 10

28 U.S.C. § 1331 ............................................................................................................. 6

28 U.S.C. § 1361 ........................................................................................................... 16

28 U.S.C. § 2201(a) ...................................................................................................... 15

## REGULATIONS

5 C.F.R. § 1201.113 ....................................................................................................... 3

## LEGISLATIVE MATERIALS

171 Cong. Rec. S6975-76 (daily ed. Oct. 7, 2025) ........................................................ 5

## OTHER AUTHORITIES

14 Wright & Miller § 3655 (4th ed. Sept. 2025 update) .............................................. 17

*Board Members*, MSPB,
   https://perma.cc/EQ4D-AVGJ ............................................................................... 5, 13

The Merit Systems Protection Board's Authority to Adjudicate Constitutional
   Questions within an Administrative Proceeding,
   2025 WL 2817559 (O.L.C. Sept. 26, 2025) ......................................................... 4, 5

**INTRODUCTION**

When Congress passed the Civil Service Reform Act of 1978 (CSRA), it "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (quotation cleaned). A key part of that framework was to jettison what had become standard suits by federal employees for injunctive relief, mandamus relief, and other remedies in federal district courts in favor of centralized, largely exclusive review of federal personnel claims by the Merit Systems Protection Board (MSPB). The primary rationale for doing so was the need to correct what had evolved over many years into a "patchwork system" of disjointed, overlapping, and often conflicting statutes, regulations, and rules. *Id.* at 445. Per the CSRA's careful design, the MSPB adjudicates covered claims of improper personnel action in the first instance, and employees dissatisfied with the outcome of that adjudication may seek Article III review primarily in the United States Court of Appeals for the Federal Circuit.

Mary Comans is a former member of the federal civil service who alleges she was wrongfully removed from federal employment. Shortly after her removal, she availed herself of the CSRA's comprehensive scheme by appealing her removal to the MSPB, where her case was assigned to an administrative judge, and where the Government's motion to dismiss is pending. But parallel to her MSPB appeal, she has now sued in this Court, seeking relief from the same adverse personnel action simultaneously under review in the MSPB. She acknowledges her pending MSPB appeal, just as she acknowledges that the CSRA "create[s] a uniform scheme for administrative and judicial review" with which covered employees must comply. Compl. ¶¶ 24, 31. Nonetheless, she would have this Court carve out of that scheme an exception for this suit.

1

Because, she claims, "the framework of the CSRA has been thwarted," *id.* ¶ 34, she argues that she should be allowed to bring a parallel action in federal district court, seeking the same relief.

But that is not how district-court jurisdiction works for personnel disputes within the CSRA's scope. The Supreme Court has twice held that the CSRA strips district courts of jurisdiction to entertain claims regarding such disputes, channeling review of those claims through the MSPB and from there to the Federal Circuit. And the Fourth Circuit has repeatedly affirmed as much, subject to specific factual exceptions of no moment in this case. Simply put, no recent developments have arisen to reverse Congress's decision, almost fifty years ago, to channel judicial review of Ms. Comans's claims away from federal district court. And none of the various theories of relief that she posits can shake that underlying jurisdictional reality.

The Court should dismiss Ms. Comans's Complaint for lack of jurisdiction.

## BACKGROUND

### A.    Legal Background

In 1978, President Carter signed the CSRA into law, thereby "comprehensively overhaul[ing] the civil service system" by creating "an entirely new framework for evaluating adverse personnel actions against employees … within the federal government." *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 301 (4th Cir. 2025) (quotation cleaned) (hereinafter "*NAIJ* "). The CSRA replaced the "outdated patchwork of statutes and rules" and "haphazard arrangements for administrative and judicial review of personnel action" with "an integrated scheme … designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 444–45. That "integrated scheme" divides civil-service employees into three main classifications. The Senior Executive Service (SES) encompasses high-level positions in the Executive Branch for

2

which appointment by the President and confirmation by the Senate are not required. *See* 5 U.S.C. § 3132(a)(2). The "competitive service" encompasses all other Executive Branch employees for whom presidential appointment and senatorial confirmation are not required, unless specifically excepted by statute or statutorily authorized regulation. *Id.* § 2102(a). And the "excepted service" encompasses all employees that do not fall within the reach of the first two classifications. *Id.* § 2103(a); *see also Fausto*, 484 U.S. at 441 n.1 (describing these three categories of Executive Branch employees).

For each classification, the CSRA also describes whether and what kind of review is available for certain adverse personnel actions. As relevant here, when a member of the SES is removed from federal civil service, Chapter 75 of the CSRA entitles her "to appeal to the Merit Systems Protection Board" in keeping with § 7701. 5 U.S.C. §§ 7542, 7543(d).[1] Those appeals are typically adjudicated by administrative judges under a longstanding delegation of authority from the Board itself. *See Organization Functions & Delegations of Authority*, MSPB (Apr. 2011) (attached as Ex. A), at 17–21 (§§ 2.3.2–2.3.4). Within 35 days of that adjudication, the parties may petition for review of the matter by the full Board; if neither party does so, or if the Board denies the petition, the administrative judge's ruling becomes the final decision of the MSPB. 5 C.F.R. § 1201.113. The MSPB's final decision may then be appealed, in most circumstances, to the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(a)–(b).

---

[1] The CSRA uses some variation of the term "remove" to refer to both terminations and demotions of SES members. *See* 5 U.S.C. §§ 3592, 7542; *see also Esparraguera v. Dep't of the Army*, 101 F.4th 28, 41 n.2 (D.C. Cir. 2024) (Henderson, J., dissenting) (explaining differences in meaning of the same term). The appeal rights mentioned here do not apply to a demotion—i.e., a "remov[al] from the [SES] to a civil service position outside of the [SES]." *See* § 3592(a).

B.      **Factual Background**

On February 11, 2025, Mary Comans was removed from her employment with the federal government.  Compl. ¶ 17.  At that time, she was a member of the SES, serving as the Chief Financial Officer of the Federal Emergency Management Agency (FEMA), a component of the Department of Homeland Security (DHS).  *Id.* ¶ 3.  That day, she received notice of her removal by way of a memorandum stating:

> This is an official notice that, effective immediately, you are being removed from your position with the Federal Emergency Management Agency and from Federal service. This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President. Article II, § 1 states that the executive Power "shall be vested in a President of the United States of America," and this termination is an exercise of that vested power.

*Id.* ¶ 17.

Ms. Comans promptly appealed her dismissal to the MSPB.  *Id.* ¶ 31.  There, DHS moved to dismiss on April 25, 2025, arguing both that her removal was lawful on the merits, and that the MSPB lacked jurisdiction over the exercise of the President's constitutional authority inherent in her case.  *See id.* ¶ 32.  But before the administrative judge could adjudicate the motion, DHS withdrew its jurisdictional objection, conceding that point and filing a revised motion to dismiss solely on the merits of Ms. Comans's removal.  *See Comans v. DHS*, No. DC-0752-25-1783-I-1 (MSPB 2025), at Tabs 14–15 (docket report attached as Ex. B).  That motion remains pending. *See id.*; Compl. ¶ 33.  At the same time, the Department of Justice's Office of Legal Counsel published an opinion explaining that MSPB administrative judges do, in fact, have jurisdiction to consider issues raised during adjudicative proceedings regarding the President's constitutional authority.  *See* The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding, 2025 WL 2817559 (O.L.C. Sept. 26, 2025) (hereinafter "MSPB OLC Opinion").

4

In July 2025, without awaiting the resolution of her MSPB proceedings, Ms. Comans filed a parallel suit in this Court, alleging various theories of relief. Despite her ongoing administrative appeal, she asserted that "this Court may exercise jurisdiction" because "the framework of the CSRA has been thwarted." Compl. ¶ 34. She cited three reasons for that claim: that "there is no quorum at the MSPB"; that "the MSPB is failing to perform its duties" to "adequately process[]" claims like hers; and that "Defendants have taken the position that MSPB has no jurisdiction over" Article II removals. *Ibid.*

But even in the absence of a Board quorum for much of 2025, MSPB administrative judges continued to exercise the Board's delegated authority to adjudicate appeals of adverse personnel actions, including by ruling on motions, overseeing discovery, and holding evidentiary hearings, among other standard adjudicatory functions. *See Frequently Asked Questions about the Lack of Quorum Period and Restoration of the Full Board*, MSPB (Apr. 9, 2025) (attached as Ex. C), at 1–2 ("the majority of the MSPB's adjudication work continues unaffected"); Ex. A at 17–21 (§§ 2.3.2–2.3.4). Then, on October 7, 2025, the Senate confirmed the President's nomination of James Woodruff II to serve on the Board. *See* 171 Cong. Rec. S6975–76, S6992 (daily ed. Oct. 7, 2025). He was sworn in on October 28, 2025, thereby restoring the Board's quorum. *See Board Members*, MSPB, https://perma.cc/EQ4D-AVGJ.

Defendants now seek dismissal of all claims for lack of subject-matter jurisdiction.[2]

---

[2] Courts may take judicial notice of items in the public record, even at the motion-to-dismiss stage. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)). That standard is satisfied as to those few facts recited above without citation to the Complaint.

## LEGAL STANDARD

Court must "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation cleaned). And on a motion to dismiss for lack of subject-matter jurisdiction, "[i]t is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A defendant, meanwhile, "may challenge subject matter jurisdiction in one of two ways": first, by way of a "facial challenge" contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"; and second, by way of a "factual challenge" contending that "the jurisdictional allegations of the complaint are not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quotation cleaned). On a facial challenge, "the facts alleged in the complaint are taken as true," and the complaint must "allege[] sufficient facts to invoke subject matter jurisdiction." *Ibid.* But on a factual challenge, "a trial court may … go beyond the allegations of the complaint" and even conduct "an evidentiary hearing" to "determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Ibid.* (quotation cleaned). "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Ibid.*

## ARGUMENT

I.  **THE COURT LACKS JURISDICTION OVER MS. COMANS'S CONSTITUTIONAL, *ULTRA VIRES*, APA, AND DECLARATORY JUDGMENT CLAIMS**

Generally, 28 U.S.C. § 1331 imbues the federal courts with broad jurisdiction to entertain "all civil actions arising under the Constitution, laws, or treaties of the United States." Relying on

6

that broad jurisdictional authority, Ms. Comans asserts claims under the APA,[3] a theory of *ultra vires* agency action, the Fifth Amendment to the Federal Constitution, and Articles I and II of the Constitution more broadly.  Compl. ¶ 1; *id.* at 12–16.  But under binding Supreme Court and Fourth Circuit precedent, Congress has affirmatively stripped district courts of § 1331 jurisdiction over claims regarding adverse personnel decisions like the removal challenged in this case.  And because the Court lacks jurisdiction to hear Ms. Comans's APA, *ultra vires*, and constitutional claims, it also lacks jurisdiction to grant declaratory relief.  Accordingly, it should dismiss Claims I–VI for lack of jurisdiction.

## A.     The CSRA Strips District Courts of Jurisdiction Over Ms. Comans's Removal

"[T]he right of access to federal courts is not a free-floating right, but rather is subject to Congress'[s] Article III power to set limits on federal jurisdiction."  *Ameur v. Gates*, 759 F.3d 317, 326 (4th Cir. 2014).  And although "[f]ederal district courts generally have 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States,'" *Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir. 2016) (quoting § 1331), Congress may nevertheless "divest the district courts of jurisdiction over certain claims," including "by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court, *ibid.*  That is precisely what Congress has done to Ms. Comans's claims in this case.

Twice over, the Supreme Court has held that personnel actions like this one are exclusively channeled away from district-court review and to the MSPB.  In *Elgin v. Department of Treasury*,

---

[3] The APA does not provide federal courts with an independent source of jurisdiction over challenges to agency action.  *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977); *see also Lee v. USCIS*, 592 F.3d 612, 619 (4th Cir. 2010) ("The APA is not a jurisdiction-conferring statute. Rather, the jurisdictional source for an action under the APA is the 'federal question' statute" (quotation cleaned)).  Accordingly, the absence of subject-matter jurisdiction under § 1331 dooms not only the *ultra vires* and constitutional claims, but the APA claims, too.

7

the plaintiffs were former competitive-service employees challenging the lawfulness of their removal from federal employment; the Supreme Court held that the CSRA's "elaborate" framework made clear that "Congress intended to deny such employees … review in the district court," instead channeling their claims to the MSPB.  567 U.S. 1, 11–12 (2012).  The Court affirmed that even for *constitutional* claims regarding the removal of federal personnel, district courts could not exercise jurisdiction, *id.* at 12–14, because such claims were merely "the vehicle by which [the plaintiffs sought] to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action," *id.* at 22.  And the Court warned against "the possibility of parallel litigation regarding the same agency action before the MSPB and a district court."  *Id.* at 14.  That holding re-affirmed the Supreme Court's decision over two decades earlier in *Fausto*, which likewise had held that the CSRA evinced "a congressional judgment" that federal employees generally "should not be able to demand judicial review for the type of personnel action covered" by the statute.  484 U.S. at 448.

Even beyond that weight of binding precedent, application of the multi-factor test articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), affirms that the CSRA's intricate statutory scheme jurisdictionally channels Ms. Comans's claims away from district-court review.  "Under *Thunder Basin* and its progeny, determining whether Congress has impliedly divested district-court jurisdiction … involves a two-step inquiry." *Bennett*, 844 F.3d at 181.  First, courts ask "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *NAIJ*, 139 F.4th at 304 (quoting *Thunder Basin*, 510 U.S. at 207).  Second, courts ascertain whether the plaintiff's claims "'are of the type Congress intended to be

reviewed within this statutory structure.'" *Ibid.* (quoting *Thunder Basin*, 510 U.S. at 212). Both steps of that inquiry point to preclusion of jurisdiction here.

### 1. Congress's Intent to Preclude District-Court Jurisdiction is Fairly Discernible in the CSRA's Statutory Scheme

As an initial matter, Ms. Comans alleges injuries flowing exclusively from her loss of employment. *See generally* Compl. As all parties apparently agree, *see* Compl. ¶¶ 7–9, 24–27, the relevant statutory scheme is therefore the CSRA, which "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin*, 567 U.S. at *5. The question, then, is whether the CSRA evinces a "fairly discernible" intent to preclude district-court jurisdiction. *NAIJ*, 139 F.4th at 304.

The Supreme Court has long had a ready answer to that question: "the comprehensive nature of the CSRA," its "elaborate" framework, and "the painstaking detail with which [it] sets out the method for covered employees to obtain review of adverse employment actions" combine to make it "fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 10–12 (citing *Fausto*, 484 U.S. at 443, 448) (quotation cleaned). In other words, with one exception not applicable here, if the adverse personnel action is "covered" by the CSRA, its "review scheme" is "exclusive." *Id.* at 13.

### 2. Ms. Comans's Claims Are of the Type Congress Intended to be Reviewed Within the CSRA's Statutory Structure

Having satisfied the first step of the *Thunder Basin* inquiry, the CSRA therefore ousts the district courts of jurisdiction unless Ms. Comans's claims are not "of the type Congress intended to be reviewed within this statutory structure." *NAIJ*, 139 F.4th at 308 (quotation cleaned). Here, Ms. Comans's removal is precisely the type of personnel action that falls within the CSRA's reach. Chapter 75 of the CSRA not only broadly defines covered actions to include "a removal" from

9

federal civil service, 5 U.S.C. § 7512(1); it also specifically defines covered actions *respecting SES members* to include "a removal from the civil service," *id.* § 7542. The Complaint itself, in fact, acknowledges that Ms. Comans's removal is "covered" by the CSRA. Compl. ¶ 27 (citing 5 U.S.C. §§ 7511–15). And as the Supreme Court has observed, "a challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Elgin*, 567 U.S. at 22.

If all that were not enough, the Supreme Court and the Fourth Circuit have articulated a three-part test governing "whether a claim falls within the statutory structure" for jurisdiction-preclusion purposes. *NAIJ*, 139 F.4th at 308. First, courts ask whether precluding district-court jurisdiction would "foreclose all meaningful judicial review of the claim." *Ibid.* (quotation cleaned). Second, they evaluate whether the claim is "wholly collateral to the statute's review provisions." *Ibid.* (quotation cleaned). Third, they consider whether "the claim fall[s] outside the agency's expertise." *Ibid.* (quotation cleaned). Applying that test confirms the obvious: Ms. Comans's claims are covered by the CSRA.

In fact, not one of those three factors is satisfied here. First, the absence of district-court jurisdiction does not foreclose meaningful judicial review. As the Fourth Circuit has explained, "[j]udicial review need not be immediately available"—nor, for that matter, "require the involvement of a district court" at all. *Id.* at 310–11. Instead, "[a] statutory scheme can provide for meaningful judicial review even if it requires litigants to first seek relief in an administrative forum, so long as an appeal to an Article III court is available in due course." *Id.* at 310. The CSRA squarely fits that bill as applied to Ms. Comans's claims: its "exclusive" scheme requires pursuing the MSPB's administrative process, then obtaining Article III judicial review by

10

appealing, as necessary, to the Federal Circuit. *Elgin*, 567 U.S. at 13, 17–18; *see* 5 U.S.C. §§ 7703(a)–(b), 7542, 7543(d).

Second, Ms. Comans's claims are not "wholly collateral" to the CSRA's review provisions. "Claims are not wholly collateral when they are the vehicle by which [a] petitioner[] seek[s] to reverse agency action." *NAIJ*, 139 F.4th at 312. This analysis, as with the meaningful-review factor, "also focuses on whether a plaintiff challenges a covered action under the CSRA" and therefore "closely follows" that of the first factor. *Ibid.* And as with the first factor, the second readily points to preclusion of jurisdiction, because each of Ms. Comans's claims are the "vehicle" by which she aims to reverse her removal. In precisely the same context, *Elgin* explained that whatever the underlying legal theory, claims challenging removal from the federal civil service cannot be "wholly collateral" to the CSRA because "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Elgin*, 567 U.S. at 22. Further, "reinstatement, backpay, and attorney's fees"—i.e., what Ms. Comans seeks here, Compl. at 17—"are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide." *Ibid.*

Third, Ms. Comans's claims are hardly "beyond the expertise" of the MSPB. "Agency expertise is interpreted broadly," *NAIJ*, 139 F.4th at 313, and as detailed above, unlawful-removal claims fall squarely in the wheelhouse of the CSRA, and therefore of the MSPB's adjudicative purview. Further, "[c]laims do not fall beyond the expertise of the MSPB simply because they raise a constitutional challenge," *ibid.*, even when that challenge is to the lawfulness of an Executive Order, *see Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *7 (4th Cir. Apr. 19, 2022). In short, none of Ms. Comans's claims escapes the MSPB's reach.

11

3.      *The Fourth Circuit's Decision in NAIJ Does Not Compel a Different Result*

The Fourth Circuit's decision in *NAIJ* does not require this Court to conclude differently. In that case, a voluntary association of immigration judges challenged an agency policy that the Fourt Circuit determined fell within the ambit of Chapter 23 of the CSRA. *NAIJ*, 139 F.4th at 300, 310. In its jurisdiction-preclusion analysis, the Fourth Circuit expressly acknowledged that *Fausto* and *Elgin* have generally made the step-one *Thunder Basin* determination a simple one. *Id.* at 305. But it held that the conclusion of those cases as to the CSRA "can only be true … when [that] statute functions as Congress intended." *Ibid.* And it expressed concern—without expressly holding—that the CSRA's "adjudicatory scheme" may no longer be functioning as such, for two specific reasons.

First, it observed that "the President removed the Special Counsel" from the Office of Special Counsel (OSC), which is charged, in relevant part, with investigating violations of Chapter 23 of the CSRA. *Id.* at 303, 305 (citing 5 U.S.C. § 1214(b)(2)). Second, the Fourth Circuit observed that the President had "removed … two members of the MSPB such that it currently lacks a quorum." *Id.* at 305.[4] But "to maintain Congress'[s] intent," the Court suggested, "the MSPB and Special Counsel must function such that they fulfill their roles prescribed the CSRA," and if those roles "go unfilled, or if the agencies fail to perform their duties such that covered employees' claims are not adequately processed, then the framework of the CSRA would be thwarted," thereby "defeat[ing] congressional intent." *Ibid.* Accordingly, the Court remanded the

---

[4] This was not an accurate observation by the Court: in February 2025, the President removed *one* member of the MSPB such that it thereafter lacked a quorum. At the time of that removal, one of the three Board seats was already vacant due to the retirement of Raymond Limon upon the expiration of his statutory term. *See* Ex. C at 1.

case to the district court "to conduct a factual inquiry into whether the CSRA continues to provide a functional adjudicatory scheme." *Id.* at 308.

That inquiry could not cure the jurisdictional defects at issue here. For one thing, the role of the Special Counsel is of no relevance to this case, which falls within the ambit of Chapter 75 of the CSRA and therefore, unlike a Chapter 23 case, does not involve an OSC investigation. Still, in a nod to the *NAIJ* analysis, Ms. Comans alleges three reasons this Court might exercise jurisdiction over her claims: the absence of a quorum on the Board; "the inability of MSPB administrative judges to issue timely decisions" due to their "exponential [*sic*] increased caseload"; and that the Government has "taken the position that the MSPB has no jurisdiction." Compl. ¶¶ 33–34. None of those reasons survives a factual attack. *See Kerns*, 585 F.3d at 192 (on a factual challenge to jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply").

*First*, since Mr. Woodruff's appointment to the Board, its quorum is now restored. *See Board Members*, MSPB, https://perma.cc/EQ4D-AVGJ; *supra* p. 5. *Second*, the previous absence of a quorum did not, after all, delay the adjudication of MSPB appeals, because administrative judges continued their work as usual during that time. Ex. C at 1–2 (even in the absence of a quorum, "the majority of the MSPB's adjudication work continues unaffected"); *see also* Ex. A at 17–21 (outlining delegation of authority from the Board to administrative judges). And of course, the Fourth Circuit's decision in *NAIJ* cannot be read to suggest that the Supreme Court's jurisdiction-preclusion holdings in *Fausto* and *Elgin* rise and fall with the mere pace of adjudications by administrative judges. *Third*, the Government has expressly *disclaimed* any

13

objection to the MSPB's jurisdiction in this case. Ex. B at Tabs 14–15; *see also generally* MSPB OLC Opinion, 2025 WL 2817559.[5]

The upshot is that under *Elgin* and *Fausto*, the CSRA makes it "fairly discernible that Congress intended to deny" Ms. Comans "review in district court." *Elgin*, 567 U.S. at 10–12 (citing *Fausto*, 484 U.S. at 443, 448). To the extent those holdings could be undercut by the concerns outlined in *NAIJ*, those concerns have no implications for this case, where the OSC is of no relevance, MSPB administrative judges are operating as usual, and a quorum of the Board has been restored. Accordingly, as applied to this case, nothing in the Fourth Circuit's decision disturbs the Supreme Court's conclusion that the *Thunder Basin* inquiry requires the preclusion of district-court jurisdiction.

\*      \*      \*

In sum, straightforwardly applying the *Thunder Basin* analysis requires channeling Ms. Comans's claims to the MSPB. "The CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue." *Elgin*, 567 U.S. at 18. The removal of a member of the SES falls expressly within the CSRA's scope, and "[a]llowing an alternative route to relief in the district court … would substitute an entirely different remedial regime for the one Congress intended to be exclusive." *Fornaro v. James*, 416 F.3d 63, 68 (D.C. Cir. 2005) (Roberts, J.). Because Ms. Comans's removal is covered by the CSRA, this Court lacks jurisdiction to entertain her claims for relief from that removal. Accordingly, the Court should dismiss claims I–V.

---

[5] And in any event, as a legal matter, the Government's view of MSPB jurisdiction is not determinative of the Court's jurisdiction. Channeling matters to administrative adjudication instead of the federal courts is a matter of congressional intent, and therefore unaffected by the nature of an agency's arguments during administrative proceedings.

**B.      Because the Court Lacks Jurisdiction Over Claims I–V, it Cannot Exercise Jurisdiction Over the Declaratory Judgment Claim**

In addition to her APA, *ultra vires*, and constitutional claims, Ms. Comans brings a freestanding declaratory-judgment claim "on the basis of all claims identified." Compl. ¶ 56. As the sixth of seven total claims, the "claims identified," though not actually specified in the Complaint, presumably refer to those outlined in Claims I–V. But the absence of jurisdiction under § 1331 sinks not only the APA, *ultra vires*, and constitutional claims; it also divests this Court of jurisdiction to grant declaratory relief.[6]

That is because the Declaratory Judgment Act, by its own terms, empowers the Court to grant declaratory relief only "[i]n a case … within its jurisdiction." 28 U.S.C. § 2201(a). But "[a] dispute does not invoke federal jurisdiction simply because the plaintiff seeks a remedy that happens to be available in a federal statute." *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 618 (4th Cir. 1997). Rather, jurisdiction must come from some other source—and as the Supreme Court has long held, "the Declaratory Judgment Act is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 210 (4th Cir. 1997) (Act is "remedial only, and is not itself a basis for federal subject matter jurisdiction."].[7] Instead, "[t]he operation of the … Act is procedural only": by it, Congress merely "enlarged the range of remedies available in the

_____

[6] If, instead, Ms. Comans means "claims identified" to include the mandamus claim, Compl. ¶¶ 58–60, that cannot secure jurisdiction for the declaratory-judgment claim, either: as discussed below, the Court also lacks jurisdiction over the mandamus claim. *See infra* Part II.

[7] Nor, in fact, does the Act provide an independent cause of action, *Honeywell Int'l Inc. v. OPTO Elecs. Co.*, 135 F.4th 170, 178 (4th Cir. 2025), or a waiver of sovereign immunity, *see Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004).

15

federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

As explained above—and as Ms. Comans herself concedes, Compl. ¶¶ 24–27—the CSRA channels claims regarding adverse personnel actions to the MSPB. That statutory scheme strips this Court of jurisdiction to entertain Ms. Comans's claims, and "resort to the Declaratory Judgment Act will not fill a gap in subject matter jurisdiction." *Lovitky v. Trump*, 949 F.3d 753, 758 (D.C. Cir. 2020) (quotation cleaned). And for good reason: allowing a declaratory judgment in this context "would constitute an end-run around Congress's clear intent" that Ms. Comans's claims be adjudicated exclusively in the MSPB. *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (discussing dispute-channeling scheme under analogous statute to CSRA). Because Ms. Comans asserts the federal-question statute as this Court's sole basis for jurisdiction, the CSRA's divestment of that jurisdiction correspondingly dooms her declaratory-judgment claim. Accordingly, the Court should dismiss Claim VI.

## II.     THE COURT LACKS JURISDICTION OVER MS. COMANS'S MANDAMUS CLAIM

Ms. Comans's final theory of relief in this case seeks "a writ of mandamus," under 28 U.S.C. § 1361, "commanding Defendants to return her to office." Compl. ¶¶ 59–60. But "[m]andamus is not favored except in extraordinary situations." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). And again, Ms. Comans cannot show that this Court has jurisdiction to grant such relief.

*First*, both the Supreme Court and the Fourth Circuit have explained that "the exhaustion of available remedies is a prerequisite to jurisdiction under … § 1361." *Hopewell Nursing Home, Inc. v. Heckler*, 784 F.2d 554, 557 (4th Cir. 1986) (citing *Heckler v. Ringer*, 466 U.S. 602 (1984)). That provision, the *Heckler* Court explained, is "intended to provide a remedy for a plaintiff only

16

if he has exhausted all other avenues of relief." 466 U.S. at 616–17. But Ms. Comans concedes that she has not exhausted the administrative remedies available to her in the MSPB. That alone spells the end of her mandamus claim. *See Hopewell*, 784 F.2d at 558 (affirming dismissal for lack of subject-matter jurisdiction because "failure … to exhaust available administrative remedies … precludes … mandamus jurisdiction.").

*Second*, even if Ms. Comans had exhausted her administrative remedies, mandamus jurisdiction still would not obtain. That's because mandamus jurisdiction is established only "[i]f the complaint states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 140 (4th Cir. 1988); *see* 14 Wright & Miller § 3655 (4th ed. Sept. 2025 update) ("whether jurisdiction exists under [§] 1361 is intertwined with the merits"). Those elements are threefold: that the petitioner show a "clear right to the relief sought"; that the respondent have a "clear duty to do the particular act requested"; and that "no other adequate remedy is available." *In re First Fed.*, 860 F.2d at 138; *see also Lovo v. Miller*, 107 F.4th 199, 216 (4th Cir. 2024) (mandamus jurisdiction depends on whether "an agency has a clear duty to act"). But here, even if Ms. Comans had met her burden of pleading the existence of a "clear right" and a "clear duty," she cannot, as a matter of law, plead that no adequate alternative remedy exists for her claimed injuries.[8]

That is because the CSRA exists for the very purpose of providing the remedies that she seeks, and channels claims for such relief exclusively to the MSPB. In fact, when Congress passed

---

[8] If the Court does, after all, determine that it possesses jurisdiction over any of Ms. Comans's claims, the Government will explain in more detail why those claims fail on the merits. But on this motion to dismiss for lack of jurisdiction, the Government need not engage on the merits to prevail, given Ms. Comans's obvious shortcomings on the third element of mandamus jurisdiction. Accordingly, the Government leaves a discussion of the merits for another day, without conceding that Ms. Comans has satisfied those prerequisites to mandamus relief.

17

the CSRA, it specifically sought "to replace the haphazard arrangements for … review of personnel action … *including suits for mandamus*, injunction, and declaratory judgment.'" *Fausto*, 484 U.S. at 444 (quotation cleaned; emphasis added).  For that reason, Ms. Comans herself has invoked the available administrative remedies under the CSRA, *see* Compl. ¶ 31, and nothing in the Complaint suggests the *inadequacy* of those remedies.  To the contrary, the MSPB has broad authority "to order relief to prevailing employees, including reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6; *see* 5 U.S.C. §§ 1204(a), 7701(g).  The adequacy of such relief for Ms. Comans's alleged injuries decisively undermines her mandamus claim.  Nor does it matter that the pace of MSPB adjudications is not to her liking: "however unsatisfactory the CSRA's approach may appear to [Ms. Comans], the fact that a remedial scheme chosen by Congress vindicates rights less efficiently [than some other method] does not render the CSRA remedies inadequate for purposes of mandamus." *Fornaro*, 416 F.3d at 69 (Roberts, J.).

At bottom, "[m]andamus is not favored except in extraordinary situations." *In re First Fed.*, 860 F.2d at 138.  Here, a former member of the federal civil service has sued for reinstatement in district court because, she claims, the MSPB will move too slowly.  But discomfort with the pace of agency adjudication is no extraordinary circumstance warranting the exercise of this rare judicial power.  Because it lacks jurisdiction to entertain Ms. Comans's mandamus claim, the Court should dismiss Claim VII.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety for lack of jurisdiction.

JANUARY 5, 2026

LINDSEY HALLIGAN
United States Attorney and Special Attorney

TODD W. BLANCHE
Deputy Attorney General

ROBERT K. MCBRIDE
First Assistant United States Attorney

_____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Respectfully submitted,*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Cesar Azrak*
CESAR AZRAK
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-0693
Email: cesar.e.azrak@usdoj.gov

*Counsel for Defendants*

19