# Exhibit 1

Megan  Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's Statement Of Supplemental Authority; Office of Legal Counsel Opinion Regarding the MSPB

Summary Page

Case Title :        Megan  Jackler v. Department of Justice

Docket Number :        DA-0752-25-0330-I-1

Pleading Title :        Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's Statement Of Supplemental Authority; Office of Legal Counsel Opinion Regarding the MSPB

Filer's Name :        Matthew Pizzo

Filer's Pleading Role :        Agency

Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|

Megan Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's Statement Of Supplemental Authority; Office of Legal Counsel Opinion Regarding the MSPB

Table of Contents

| | | |
|---|---|---|
| Summary | ......................................... | 1 |
| Table of Contents | ......................................... | 2 |
| Interview | ......................................... | 3 |
| Body | ......................................... | 4 |
| Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand | ......................................... | 4 |
| Agency's Statement Of Supplemental Authority | ......................................... | 9 |
| Office of Legal Counsel Opinion Regarding the MSPB | ......................................... | 10 |
| Certificate of Service | ......................................... | 22 |

Megan  Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's Statement Of Supplemental Authority; Office of Legal Counsel Opinion Regarding the MSPB

Online Interview

1. Enter a brief title for your pleading.

Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's Statement Of Supplemental Authority; Office of Legal Counsel Opinion Regarding the MSPB

2. Does your pleading assert facts that you know from your personal knowledge?

Yes

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | | |
|---|---|---|
| MEGAN JACKLER, | ) | DOCKET NUMBER: |
| Appellant, | ) | DA-0752-25-0330-I-1 |
| v. | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| Agency, | ) | Date: September 27, 2025 |
| and | ) | |
| DIRECTOR OF THE OFFICE OF | ) | |
| PERSONNEL MANAGEMENT, | ) | |
| Intervenor. | ) | |

## AGENCY'S MOTION FOR LEAVE TO FILE ADDITIONAL PLEADING AND ALTERNATIVE MOTION TO REMAND

The United States Department of Justice ("DOJ"), through its component, the Executive Office for Immigration Review ("EOIR" or "Agency") moves for leave from the Merit Systems Protection Board ("Board") to submit an additional pleading, i.e., the attached statement of supplemental authority based upon an opinion from the DOJ's Office of Legal Counsel ("OLC") ("OLC Opinion"). *See* 5 C.F.R. § 1201.114(a)(4) (setting for the standards for file a pleading in addition to a petition for review with the Board); *see also Shivaee v. Dep't of the Navy*, 74 M.S.P.R. 383, 385 n. 1 (1997) (considering otherwise untimely submissions to the extent that they are in the nature of citations to supplemental authorities authorized by Fed.R.App.P. 28(j) and are relevant to the appeal). Alternatively, the Agency moves for leave to move to remand the instant petition for review back to the presiding Administrative Judge to consider an argument he declined to address previously in light of the OLC Opinion.[1]

---

[1] Although the Agency recognizes that the Board currently lacks a quorum, in such situations, a single Board Member may direct a case back to the presiding Administrative Judge in order to address, *inter alia*, "[a] newly raised claim that was not previously adjudicated in the appeal currently under review for docketing and adjudication" or "[a] matter for further development of the record." 5 C.F.R. § 1200.3(c)(2) and (4). As discussed herein, the OLC Opinion meets both
(continued…)

As has been discussed at length in these proceedings, Appellant is a former Assistant Chief Immigration Judge who was removed by the Attorney General pursuant to her authority under Article II of the United States Constitution.   Below, "[t]he [A]gency assert[ed] that that Immigration Judges are inferior officers and thus may be removed without cause under Article II of the Constitution."   Initial Decision ("ID") at 6.   "The Director of the Office of Personnel Management similarly assert[ed] that the for-cause removal protections for civil service employees cannot limit the President's Article II power to execute the law.  ID at 6.  The Chief Administrative Judge, on August 22, 2025, declining to rule on the merits of such arguments, relied upon the decisions in *Davis-Clewis v. Department of Veterans Affairs*, 2024 MSPB 5, ¶ 9 and *Malone v. Department of Justice*, 14 M.S.P.R. 403, 406 (1983), to reach a conclusion that "Administrative agencies are without authority to determine the constitutionality of statutes" as "[t]he Board has long recognized that administrative agencies are without authority to determine the constitutionality of statutes."   ID at 6-7.   The Agency timely filed its Petition for Review at 4:59 EST on September 26, 2025.

On the evening of September 26, 2025, sometime between 7:45 pm and 8:30 pm EST, the DOJ's Office of Legal Counsel issued, through posting on its publicly facing website, https://www.justice.gov/olc/opinions: Memorandum Opinion for the Counsel to the President, T. Elliot Gaiser, Assistant Attorney General, Office of Legal Counsel, Re: The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative

---

of those criteria.  Thus, the current lone Board Member possesses the authority to vacate the Chief Administrative Judge's Order of August 22, 2025, and remand the instant case to him for further proceedings. The Agency respectfully requests that the single Board Member do so.

Proceeding, 49 Op. O.L.C. __ (Sept. 26, 2025) ("OLC Opinion").[2]  The OLC, exercising authority delegated by the Attorney General, provides binding legal advice within the Executive Branch. *See* 28 U.S.C. § 511; 28 C.F.R. § 0.25(a); Memorandum Opinion for the Acting Assistant Attorney General Criminal Division, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, Re: Reconsidering Whether The Wire Act Applies To Non-Sports Gambling, 42 Op. O.L.C. 158, 176, 2018 WL 7080165, at *12 (Nov. 2, 2018); *accord Case de Maryland v. U.S. Dept. of Homeland Security*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) ("Although not binding on [Article III] courts, OLC opinions reflect the legal position of the executive branch and are generally viewed as providing *binding* interpretive guidance for executive agencies." (cleaned up) (emphasis added)); *cf. Smith v. Jackson*, 246 U.S. 388, 389-91 (1918) (holding "that any doubt which [an Executive Branch official] might have had [about following a law] should have been subordinated. . .to the ruling of the Attorney General").

The attached statement of supplemental authority is undisputably new, important, and material authority for this recently filed Petition for Review.  The OLC has reached the conclusion that the Administrative Judges of the Board "must adjudicate the constitutional issues raised by the Agencies."  OLC Opinion at 12.  With respect to the decision of the Chief Administrative Judge, the OLC Opinion, which directly repudiates his decision, should be considered binding upon the Board.  *See Cherichel v. Holder*, 591 F.3d 1002, 1016 n. 17 (8th Cir.2010) (noting that "OLC opinions are generally binding on the Executive branch"); *see also United States v. Arizona*, 641 F.3d 339, 385 n. 16 (9th Cir.2011) ("Office of Legal Counsel opinions are generally viewed

---

[2]  Undersigned counsel declares, under penalty of perjury under the laws of the United States of America that the foregoing statement, particularly insofar as it relates to the posting of the OLC opinion is true and correct and based upon his actual knowledge and review of the OLC's website throughout the evening of September 26, 2025.

as providing binding interpretive guidance for executive agencies and reflecting the legal position of the executive branch." (internal quotation marks, citations, and alterations omitted)), *aff'd in part, rev'd in part and remanded on other grounds*, 567 U.S. 387 (2012); *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 440 (1995) (recognizing that the OLC Memorandum is binding on the Department of Justice and other Executive Branch agencies).

The OLC Opinion, which constitutes the official stance of the Executive Branch, speaks for itself: "[T]he MSPB administrative judges must adjudicate the constitutional issues raised by the Agencies." OLC Opinion at 12.  Further, the OLC did consider the decisions in *Davis-Clewis* and *Malone*, OLC Opinion at 8-9, n.5, and arrived at the conclusion that, even if "agency adjudications are generally ill suited to address structural challenges to their own enabling acts," "an agency's intimate familiarity with the statutes and regulations it administers may make it particularly well suited to address most other constitutional questions—even where such challenges could be made by a large group of individual plaintiffs."  OLC Opinion at 9 (cleaned up).

Therefore, the Agency respectfully moves for the Board for leave to submit an additional pleading, i.e., the attached statement of supplemental authority, the OLC Opinion.  The binding OLC Opinion is undeniable intervening authority that, at a minimum, the Chief Administrative Judge's decision *must* be vacated as it does not represent the legal position of the Executive Branch.  While the OLC Opinion does not address the precise issue of whether Immigration Judges are "inferior officers" who are subject to at-will removal by the Attorney General, the Agency otherwise maintains, for the reasons set forth in its Petition for Review and elsewhere in the record, the Board should uphold the Agency's removal because it was a proper exercise of the Attorney General's constitutional authority.  Alternatively, the Agency requests an immediate remand and vacatur of the Chief Administrative Judge's decision pursuant to 5 C.F.R. § 1200.3 to allow the

Chief Administrative Judge to address and adjudicate the Agency's argument in light of the OLC

Opinion.

Respectfully submitted,

**/s/ Matthew T. Pizzo**
Matthew T. Pizzo
Special Counsel
Office of General Counsel
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2269
Falls Church, Virginia 22041
Matthew.Pizzo@usdoj.gov
Cell: 832-651-7522

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | | |
|---|---|---|
| MEGAN JACKLER, | ) | DOCKET NUMBER: |
| Appellant, | ) | DA-0752-25-0330-I-1 |
| v. | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| Agency, | ) | Date: September 29, 2025 |
| and | ) | |
| DIRECTOR OF THE OFFICE OF | ) | |
| PERSONNEL MANAGEMENT, | ) | |
| Intervenor. | ) | |

## AGENCY'S STATEMENT OF SUPPLEMENTAL AUTHORITY

The United States Department of Justice ("DOJ"), through its component, the Executive Office for Immigration Review ("EOIR" or "Agency"), respectfully submits to the Merit Systems Protection Board ("Board") this Statement of Supplemental Authority.  On the evening of September 26, 2025, the DOJ's Office of Legal Counsel issued the attached: Memorandum Opinion for the Counsel to the President, T. Elliot Gaiser, Assistant Attorney General, Office of Legal Counsel, Re: The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding, 49 Op. O.L.C. __ (Sept. 26, 2025).  The Agency reincorporates its arguments which are set forth in its above-filed Motion For Leave To File Additional Pleading and Alternative Motion to Remand.  The binding OLC Opinion is undeniable authority that, at a minimum, the Chief Administrative Judge's decision *must* be vacated.

Respectfully submitted,

**/s/ Matthew T. Pizzo**
Matthew T. Pizzo
Special Counsel
Office of General Counsel
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2269
Falls Church, Virginia 22041
Matthew.Pizzo@usdoj.gov
Cell: 832-651-7522

(Slip Opinion)

# The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding

Administrative judges of the Merit Systems Protection Board adjudicating removal-related appeals brought by certain federal employees must resolve the constitutional arguments raised by the Executive Branch.

September 26, 2025

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

Since January 20, 2025, the heads of a number of executive departments and agencies ("Agencies") have removed certain officers and employees within their Agencies in furtherance of the President's duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *see also id.* § 1, cl. 1 (vesting "[t]he executive Power" in the President alone). A subset of those employees appealed to the Merit Systems Protection Board ("MSPB" or "Board") pursuant to the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111. Their appeals are currently pending before administrative judges. You have asked whether MSPB administrative judges are empowered and obligated to consider constitutional issues raised by the Agencies during these proceedings. We conclude that they are and that they must therefore resolve the Agencies' constitutional arguments.

To date, you have not asked us to address—and we do not opine on—the merits of any question currently pending before the administrative judges about whether Congress has limited (or even could limit) the ability of officers of the United States to terminate employees when necessary to fulfill the President's obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

## I.

The Civil Service Reform Act ("Act") forms "'a comprehensive system for reviewing personnel action taken against federal employees.'" *Elgin v. Dep't of the Treas.*, 567 U.S. 1, 5 (2012) (quoting United *States v. Fausto*, 484 U.S. 439, 455 (1988)). It applies to the "removal" of an employee

1

Document Number: 3685733                    e-Appeal Submission: 09/27/2025 04:09 PM ET

49 Op. O.L.C. __ (Sept. 26, 2025)

from his position, 5 U.S.C. § 7512(1),[1] provides that an agency may remove an employee "only for such cause as will promote the efficiency of the service," *id.* § 7513(a), and authorizes employees against whom action is taken to appeal to the MSPB, *id.* § 7513(d).

The MSPB may hear an appeal itself or may "refer the case to an administrative law judge." *Id.* § 7701(b)(1). A decision of an administrative judge generally "shall be final" unless (1) the Board "reopens and reconsiders a case on its own motion" or (2) "a party to the appeal or the Director [of the Office of Personnel Management] petitions the Board for review within 30 days after the receipt of the decision." *Id.* § 7701(e)(1); *see* 5 C.F.R. § 1201.113 (explaining the "initial decision of the judge will become the Board's final decision 35 days after issuance" except as otherwise provided). Depending upon the basis for its action, the "decision of the [employing] agency shall be sustained . . . only if the agency's decision" is "supported by substantial evidence" or "a preponderance of the evidence." 5 U.S.C. § 7701(c)(1). Conversely, "the agency's decision may not be sustained" if the employee shows (1) "harmful error in the application of the agency's procedures in arriving at such decision," (2) "the decision was based on any prohibited personnel practice," or (3) "the decision was not in accordance with law." *Id.* § 7701(c)(2).

A final decision of the MSPB may be appealed to the U.S. Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9); *see Helman v. Dep't of Veterans Affs.*, 856 F.3d 920, 926 (Fed. Cir. 2017). An employing agency may, however, only obtain review of an MSPB decision with the intervention of the Office of Personnel Management ("OPM"). *See* 5 U.S.C. § 7703(a), (d); *see also Horner v. MSPB*, 815 F.2d 668, 671 (Fed. Cir. 1987) (explaining "OPM has been given a statutory right to seek judicial review of any final order or decision of the board" following a determination by the Director of OPM); *Dir. of OPM v. Moulton*, No. 2024-109, 2024 WL 1953955, at *1 (Fed. Cir. May 3, 2024) (explaining the Federal Circuit has discretion "whether to

---

[1] Because Congress has expressly defined "employee," 5 U.S.C. § 7511(a)(1), "'we must follow that definition,' even if it varies from [the] term's ordinary meaning," *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)). We do not, however, take a position on whether any individual who has challenged his termination would be considered an employee or an officer in the constitutional sense.

2

*MSPB's Authority to Adjudicate Constitutional Issues*

permit OPM's petition for review"); *Implementing or Challenging Initial Decisions*, MSPB, https://www.mspb.gov/studies/adverse_action_report/ 18_implementingorchallenging.htm (last visited Sep. 26, 2025) (explaining "the agency cannot appeal directly to the Federal Circuit at any stage").

Although the MSPB must have "jurisdiction over the underlying agency action" to entertain any appeal, *Hubbard v. MSPB*, 319 F. App'x 912, 914 (Fed. Cir. 2009), "[t]here is no question but that the [Act] provides the exclusive remedy for an alleged constitutional violation . . . arising out of federal employment," *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) (citations omitted). Federal employees must appeal "exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 10– 12; *see also Axon Enter., Inc. v. FTC*, 598 U.S. 175, 189, 195 (2023) (distinguishing challenges to a "specific substantive decision" such as "firing an employee" from constitutional challenges "to the structure or very existence of an agency").[2] And with one exception not relevant here, the availability of review under the Act turns not upon the "type of claim" but rather upon "the type of civil service employee and adverse employment action at issue." *Elgin*, 567 U.S. at 12–13.

Here the Agencies do not present a structural challenge to the MSPB or its administrative judges. Instead, they argue that the removals at issue were lawful under Article II given the functions performed by the specific employees at issue in the underlying cases. As a general matter, the Agencies justify the terminations based upon the President's powers—arising from the Vesting and Take Care Clauses of Article II—to remove those who wield executive power on his behalf. The precise contours of the Agencies' arguments differ to some extent based upon the case and the role of the terminated employee. For example, we understand the Agencies argue in some cases that the terminated employees were inferior officers for constitutional purposes and could therefore be removed without cause. In others, the Agencies argue that the terminated employees were removable at-will under Article II because they were exercising core

---

[2] *See also* 1 Peter Broida, *A Guide to Merit Systems Protection Board Law and Practice* 345–48 (36th ed. 2019) (explaining that "the Board does not have jurisdiction over [a] constitutional claim unless it also has jurisdiction over the action taken against the employee," summarizing MSPB precedent regarding the review of constitutional issues, and discussing *Elgin*).

3

49 Op. O.L.C. __ (Sept. 26, 2025)

executive functions such as engaging in criminal prosecution. And in each, the Agencies contend that the statutory provisions relevant to those employees should be construed to avoid serious constitutional questions, or they otherwise cannot be applied to preclude the personnel action at issue consistent with the Constitution. You have asked whether the MSPB administrative judges must adjudicate these constitutional issues.

## II.

Given the comprehensiveness of the Act's regime, it should come as no surprise that the MSPB takes the view that it can "adjudicate a constitutional challenge to an agency's application of a statute." *Special Counsel v. Jackson*, 119 M.S.P.R. 175, 179 (2013) (citing *May v. OPM*, 38 M.S.P.R. 534, 538 (1988)). And its precedent reflects that the MSPB does "routinely adjudicate[] some constitutional claims." *Elgin*, 567 U.S. at 12 (collecting cases).[3] We agree with the MSPB's practice of routinely reviewing many constitutional issues and similarly conclude that where, as here, a constitutional issue is material to the employing agency's employment decision, the MSPB must resolve it. Its authority and duty to address these constitutional issues follows from the text of the Act, and its regulations confirm the same.

*First*, the Act makes clear that the scope of the MSPB's review includes the interpretation of law. The Act requires the MSPB to adjudicate "the decision of the agency," 5 U.S.C. § 7701(c)(1), and instructs the MSPB not to sustain "the [employing] agency's decision" if, among other reasons, "the decision was not in accordance with *law*," *id.* § 7701(c)(2)(C) (emphasis added). To adjudicate an appeal consistent with the statute, then, an administrative judge must "analyze all material issues of fact and law" and not "simply announce that he will not consider" arguments that he "deems unworthy of consideration." Broida, *supra* note 2, at 1491

---

[3] *See also May v. OPM*, 38 M.S.P.R. 534, 538 (1988) (due process); *Special Counsel v. Murry*, No. CB-1216-15-0002-T-1, 2015 WL 6688194 (M.S.P.B. Nov. 3, 2015) (due process and equal protection); *Bain v. OPM*, 49 M.S.P.R. 307, 313 (1991) (equal protection); *Brooks v. OPM*, 59 M.S.P.R. 207, 215 n.7 (1993), *superseded by statute* (equal protection); *Hatley v. Dep't of the Navy*, 164 F.3d 602, 603–04 (Fed. Cir. 1998) (Fourth Amendment); *Fuller v. Dep't of the Navy*, 465 F. App'x 949, 950 (Fed. Cir. 2012) (referring to the administrative judge's disposition of constitutional claims).

4

*MSPB's Authority to Adjudicate Constitutional Issues*

(collecting cases); *see, e.g.*, *Smart v. Dep't of the Army*, 105 M.S.P.R. 475, 481 (2007).

It is true, of course, that section 7701 of title 5 never explicitly references the Constitution. So one might argue that Congress's use of the word "law" refers only to *statutory* law—as distinct from agency rules or regulations—and excludes *constitutional* law. Indeed, some statutes seem to draw a distinction between the Constitution and other law. *E.g.*, 42 U.S.C. § 1983 (referring to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States); 18 U.S.C. § 242 (referring to "the Constitution or laws of the United States").

But we think the implication runs the other way here: That section 7701 does not set the Constitution apart from "law" means the Constitution is presumptively included within the meaning of the term. That is because the Constitution is "the supreme Law of the Land," U.S. Const. art. VI, and therefore falls within the ordinary meaning of the "law." Consistent with that understanding, the Supreme Court has long held that the President's duty to "take Care that the Laws be faithfully executed," *id.* art. II, § 3, includes the Constitution itself, *In re Neagle*, 135 U.S. 1, 63–64 (1890); *see Presidential Power to Use the Armed Forces Abroad Without Statutory Authorization*, 4A Op. O.L.C. 185, 186 & n.4 (1980); *cf.* William Howard Taft, *The Presidency: Its Duties, Its Powers, Its Opportunities and Its Limitations* 70 (1916) ("The laws that [the President] must take care shall be faithfully executed are not confined to acts of Congress."). And in other contexts, too, the Supreme Court has understood the word "law" to include the Constitution. *See, e.g.*, *Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 346 (1937) (construing the statutory phrase "in accordance with law" to encompass "all questions of general and statutory law and all constitutional questions"); *Lockerty v. Phillips*, 319 U.S. 182, 188–89 (1943) (similar); *Oklahoma v. U.S. Civ. Serv. Comm'n*, 330 U.S. 127, 135 (1947) (similar).

Our conclusion is reinforced by the broader statutory context, which provides "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin*, 567 U.S. at 5 (quoting *Fausto*, 484 U.S. at 455); *see* 5 U.S.C. § 7701(c)(2) (instructing the MSPB not to "sustain[]" the employing agency's decision if it "was not in accordance with law"). We think it unlikely that Congress intended to insulate unconstitutional agency action from the MSPB's review. Indeed, the Act uses

5

49 Op. O.L.C. __ (Sept. 26, 2025)

the same phrase—without reference to the Constitution—when providing for review by the Federal Circuit. *See id.* § 7703(c) (instructing the court to "set aside any agency action" that is "not in accordance with law"). And the Federal Circuit has authority to "consider and decide" constitutional issues. *Elgin*, 567 U.S. at 21; *see Briggs v. MSPB*, 331 F.3d 1307, 1311 (Fed. Cir. 2003) (explaining constitutional challenges "implicate the 'otherwise not in accordance with law' aspect of [the Federal Circuit's] standard of review"). It would make little sense to read "law" in section 7701(c)(2)(C) as excluding the Constitution when "law" includes the Constitution just two provisions later.

We also think it unlikely that Congress intended to forbid the MSPB's review of material constitutional issues since the Act empowers the MSPB to perform statutory interpretation, which often necessarily implicates constitutional analysis. *See, e.g.,* 5 U.S.C. § 7701(d)(2) (requiring the MSPB to "notify the Director [of OPM] whenever the interpretation of any civil service law, rule, or regulation . . . is at issue in any proceeding"); *id.* § 7701(d)(1)(B) (allowing the Director to intervene in the MSPB's proceeding if he "is of the opinion that an erroneous decision would have a substantial impact on any civil service law, rule, or regulation"); *id.* § 7703(d)(1), (2) (authorizing the Director to file a petition with the appropriate court of appeals if, among other things, he "determines . . . that the Board erred in interpreting a civil service law, rule, or regulation"). That is because the "unconstitutionality canon maintains that when one interpretation of a statute would render it unconstitutional, the court should adopt any plausible interpretation that would save it." Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 138 (2010); see, e.g., *Religious Restrictions on Capital Financing for Historically Black Colleges and Universities*, 43 Op. O.L.C. 191, 209 (2019) (concluding that certain statutory "restrictions can and must be construed to avoid unconstitutionality"). Adjudicators generally should adopt not only a saving construction but, where possible, one that would "avoid serious constitutional questions." *Administration of the John F. Kennedy Centennial Commission*, 41 Op. O.L.C. 1, 3 (2017); *see also Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) (explaining that "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems"); *Whether Eluding*

6

*MSPB's Authority to Adjudicate Constitutional Issues*

*Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense*, 49 Op. O.L.C. __, at *12 (June 21, 2025) (applying the avoidance canon to "confirm" an interpretation of a statute).

To construe the Act as authorizing the MSPB to consider constitutional arguments—but only when performing statutory interpretation—would be to adopt an "excessively strained interpretation of [a] statute." *Nguyen v. United States*, 539 U.S. 69, 75–76 (2003). The better inference is that Congress did not prohibit the MSPB from considering constitutional issues material to the employment decision in any appeal over which it has jurisdiction. And, in any event, certain of the Agencies' constitutional arguments here are grounded in constitutional avoidance, so the MSPB must consider those constitutional arguments when construing the underlying statutes.

*Second*, the MSPB's regulations confirm that administrative judges cannot dodge constitutional issues presented by the Agencies. Those regulations require an initial decision to contain "[f]indings of fact and conclusions of law upon *all* the material issues of fact and law presented on the record," along with "[t]he reasons or bases for those findings and conclusions." 5 C.F.R. § 1201.111(b)(1)–(2) (emphasis added). This requirement ensures that every issue relevant to the employing agency's decision is addressed at the outset of the administrative appeals process. The MSPB most frequently applies this principle when the administrative judge fails to consider an affirmative defense raised by the appellant employee. *See, e.g.*, *Edgeston v. U.S. Postal Serv.*, 1 M.S.P.R. 300, 301 (1980). But the "appellant is not the only party entitled to a complete decision," and "[t]he Board will set aside a decision favoring an appellant if the [administrative judge] did not completely analyze all the charges against him." Broida, *supra* note 2, at 1493 (citing *Burton v. Veterans Affs.*, 35 M.S.P.R. 52, 54 (1987)). To adjudicate all material issues in a given case, as required by the Act and the MSPB's regulations, the Board must decide any constitutional issue that is material to the employing agency's decision.

In short, the MSPB has broad authority to consider legal issues—statutory and constitutional—that arise while adjudicating appeals that are

7

49 Op. O.L.C. __ (Sept. 26, 2025)

properly before it.[4] And it is obliged to do so where, as here, a constitutional issue is material to the "decision of the agency." 5 U.S.C. § 7701(c)(1); *see also* 5 C.F.R. § 1201.111(b)(1)–(2).

## III.

We have identified three primary counterarguments for why the administrative judges here should be excused from addressing the constitutional questions squarely presented to it. None changes our conclusion.

*First*, some might argue that the Act, which works to protect employees from improper dismissal, is designed to provide for a comprehensive review of constitutional questions raised by *employees*, but not by the employing *agencies*. This argument lacks foundation in the text of the Act. In addition, the MSPB has treated the question of reviewability as one of jurisdiction. *May*, 38 M.S.P.R. at 536, 538. "Jurisdiction means the right to say and the power to act; and, as between agencies of the government, jurisdiction is the power of that particular agency to administer and enforce the law." *Carroll Vocational Inst. v. United States*, 211 F.2d 539, 540 (5th Cir. 1954); *see also Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018) (similar). Either the MSPB (and any administrative judge to which it delegates authority) has the jurisdiction to address a constitutional question—irrespective of which party raised it—or it does not.

*Second*, some could argue that the MSPB, as an agency, cannot decide the constitutional arguments here because, in their view, agencies generally may not declare a statute unconstitutional. Although the MSPB considers many constitutional issues, it has "repeatedly refused to pass upon the constitutionality of legislation" by invoking "the oft-stated principle" that agencies are presumed to be unable to "declare a statute unconstitutional." *Elgin*, 567 U.S. at 16–17 (declining to "decide whether the MSPB's view of its power is correct").[5] Because this principle is justified by an assump-

---

[4] As explained in Part III of this opinion, we need not—and therefore do not—decide here whether the MSPB may adjudicate constitutional claims challenging "the structure or very existence of an agency." *Axon*, 598 U.S. at 189.

[5] *See, e.g.*, *Davis-Clewis v. Dep't of Veterans Affs.*, No. DA-0752-23-0162-I-1, 2024 WL 1209225, at *3 (M.S.P.B. Mar. 20, 2024) (considering an Appointments Clause challenge to statutory removal protection for MSPB administrative judges); *Special*

8

*MSPB's Authority to Adjudicate Constitutional Issues*

tion of "legislative intent," 3 Kenneth Davis, *Administrative Law Treatise* § 20.04, at 74 (1958); *see, e.g.*, *In re Jordan*, 1 M.S.P.B. 74, 86 (1979) (citing the same), Congress could overcome that presumption by "commit[ting] to administrative agencies the power to determine" the "constitutionality of legislation," 3 Davis, *Administrative Law Treatise* § 20.04, at 74. Since Congress has amended the Act on several occasions without displacing the MSPB's interpretation, some might characterize Congress's silence as acquiescence. *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 186 (1994).

We doubt, however, that Congress intended to ratify the MSPB's views given intervening decisions of the Supreme Court that cut in the other direction. On at least two occasions since 1990, the Supreme Court has emphasized that the principle that agencies cannot declare a statute unconstitutional "is not mandatory." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 201 (1994); *Elgin*, 567 U.S. at 16–17 (same). These statements are in tension with the view that agencies lack the power to adjudicate certain constitutional issues. Indeed, recent scholarship has documented the "long history" of agencies "engaging with constitutional questions." Yonatan Gelblum, *The Myth that Agency Adjudications Cannot Address Constitutional Claims*, 32 Geo. Mason L. Rev. 223, 243–45, 255–56 (2025); *see also* James Buchwalter et al., 73 *C.J.S. Public Administrative Law and Procedure* § 181 (2025). True, "agency adjudications are generally ill suited to address structural challenges" to their own enabling acts. *Carr v. Saul*, 593 U.S. 83, 92 (2021) (citations omitted). But an agency's "intimate familiarity with the statutes and regulations it administers" may make it particularly well suited to address most other constitutional questions—even where such challenges could be made by a large group of individual plaintiffs. Gelblum, 32 Geo. Mason L. Rev. at 290–91.

---

*Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (1990) (considering an equal protection and due process challenge to the difference in treatment between federal and state employees in the Hatch Act); *Bayly v. OPM*, 42 M.S.P.R. 524, 525–26 (1990) (considering an equal protection challenge to statutory provisions related to annuity benefits); *Malone v. DOJ*, 14 M.S.P.R. 403, 406 (1983) (considering a constitutional challenge to a statutory veteran retention preference); *Brown v. Dep't of Transp.*, 15 M.S.P.R. 617, 622 (1983) (considering a constitutional challenge to "statutes pertaining to striking by Federal employees").

9

49 Op. O.L.C. __ (Sept. 26, 2025)

In any event, the argument that the MSPB cannot invalidate a statute on its face is inapposite here. We do not understand the Agencies to argue that any provision of the Act is facially unconstitutional, that is, unconstitutional in all or most of its applications. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Rather, the Agencies contend that the administrative judges should either (1) construe the Act in a way that harmonizes the statutory text with the Article II principles applicable to the underlying personnel decisions, or (2) hold any conflicting provisions of the Act unconstitutional only as applied to the specific employee removals at issue here. In other words, the administrative judges are not being asked to "declare a statute unconstitutional," *Elgin*, 567 U.S. at 16–17, but rather "to determine constitutional applicability" in each case before them, 3 Davis, *Administrative Law Treatise* § 20.04, at 74. And each of their determinations is subject to review by an Article III court. *See* 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9). Such a limited constitutional claim falls squarely within the MSPB's own understanding of its ability to pass upon "an agency's application of a statute." *Jackson*, 119 M.S.P.R. at 179.

*Third*, some could argue that the Agencies may obtain adequate review of their constitutional issues later in the process, in an appeal before the Federal Circuit. This ignores the practical consequences of delayed review, however, which include a burdensome administrative process and potential discovery involving the Executive Branch officials connected with the removals.[6] *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004) (emphasizing the unique "burden imposed by . . . discovery orders . . . directed to . . . senior Government officials"). These costly intrusions would be immaterial to the controlling constitutional questions at issue in the underlying cases.

While *Elgin* did explain how the Federal Circuit could provide adequate review of a constitutional claim raised by an employee that was not passed upon by the MSPB, *e.g.*, 567 U.S. at 19 (explaining that "the [Act] empowers the MSPB to take evidence and find facts for Federal Circuit review," and that the Federal Circuit "may take judicial notice of facts

---

[6] Because the issue of discovery is not at issue here, we need not, and therefore do not, opine on the legality of an order from the Board or one of its administrative judges directing discovery from a high-ranking Executive Branch official.

10

*MSPB's Authority to Adjudicate Constitutional Issues*

relevant to the constitutional question"), the Court did not conclude that Congress proscribed the MSPB from reviewing constitutional claims. *See id.* at 17 (declining to "decide whether the MSPB's view of its power is correct"). It therefore did not consider the arguments that point in the other direction.

Moreover, *Elgin* did not implicate a constitutional argument raised by an employing *agency* to justify removing an employee. Failure by the MSPB to consider such an argument could result in ongoing constitutional injury to the President. That is because, subject to certain exceptions, a prevailing employee "shall be granted the relief provided in the [MSPB] decision effective upon the making of the decision." 5 U.S.C. § 7701(b)(2)(A). And the employing agency may not seek review absent intervention of a third agency—OPM. It is therefore possible that the MSPB (or an administrative judge) might grant relief to an employee before anyone examines the question of whether that employee's continued employment violates the Constitution. Here, that relief would likely entail restoring the employee to his position within the Executive Branch, to perform executive functions, against the will of the President, just because an administrative judge refused to consider the Agencies' constitutional arguments in the first instance.

To be sure, the Act provides that relief need not be granted immediately if "the deciding official determines that the granting of such relief is not appropriate," *id.* § 7701(b)(2)(A)(i), and that an agency need not permit the employee to return to active duty if reinstatement is ordered but the employing agency "determines that the return or presence of such employee . . . is unduly disruptive to the work environment," *id.* § 7701(b)(2)(A)(ii). But the first option requires the employing agency to rely upon the administrative judge to determine that immediate relief is inappropriate—presumably based upon the very constitutional question the judge refused to entertain on its merits. And the second option also has serious costs. In that circumstance, the position would still be encumbered, preventing the agency from onboarding a new official to assume the duties of the terminated employee. And the agency would be forced to pay the employee "pending the outcome of any petition for review," *id.* § 7701(b)(2)(B), and to undergo a burdensome administrative proceeding

11

Document Number: 3685733                    e-Appeal Submission: 09/27/2025 04:09 PM ET

49 Op. O.L.C. __ (Sept. 26, 2025)

without first obtaining an answer to a fundamental constitutional issue. That result cannot be right.[7]

\*  \*  \*  \*  \*

For these reasons, we conclude that the MSPB administrative judges must adjudicate the constitutional issues raised by the Agencies. Nothing in this opinion, however, should be read to take a position on the merits of the Agencies' constitutional arguments or any other merits arguments in the underlying disputes.

T. ELLIOT GAISER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] We do not decide whether the Constitution limits Congress's ability to empower the MSPB to order reinstatement for any specific category of employee within the Executive Branch.

12

# <u>Certificate of Service</u>

e-Appeal has handled service of the assembled pleading to MSPB and the following Parties.

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Washington Regional Office | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Carstens, Zachary | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Ehler, Patrick | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Erbe, Robert | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Ferguson Queen, Julie | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Guillaume, Lourdes | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Jackler, Megan | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |
| Perkins, Jordan | Agency's Motion For Leave To File Additional Pleading And Alternative Motion To Remand; Agency's | e-Appeal |