# Exhibit 3

Megan  Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Petition for Review

Summary Page

Case Title :        Megan  Jackler v. Department of Justice

Docket Number :        DA-0752-25-0330-I-1

Pleading Title :        Petition for Review

Filer's Name :        Matthew Pizzo

Filer's Pleading Role :        Agency

Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|

Megan Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Petition for Review

Table of Contents

| | | |
|---|---|---|
| Summary | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Table of Contents | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Interview | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Body | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Agency's Petition For Review | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Certification of Agency Compliance with the Interim Relief Order | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| Certificate of Service | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |

Megan  Jackler v. Department of Justice

Docket # DA-0752-25-0330-I-1

Petition for Review

Online Interview

1. The Finality Date for your decision is 09/26/2025. This date has passed; Do you know when you received a copy of the initial decision?

Yes

_____

2. Please enter the Receipt Date

08/22/2025

_____

3. Filing of PFR will be timely if done on or before 09/26/2025.

Your petition for review is untimely.

The Board will consider the merits of your petition only if you establish good cause for the untimely filing.
To establish good cause, you must show that you exercised due diligence or ordinary prudence under the particular circumstances of the case.
To determine whether you have shown good cause, the Board will consider the length of the delay, the reasonableness of your excuse and showing of due diligence, whether you are proceeding without a representative, and whether you have presented evidence of the existence of circumstances beyond your control that affected your ability to comply with the time limits, or of unavoidable casualty or misfortune which similarly shows a causal relationship to your inability to timely file the petition.
If you are claiming that your health has affected your ability to meet filing deadlines, you must show that you suffered from an illness or injury that affected your ability to file on time. If you are making such a claim, you must:
Identify the time period during which you suffered from the illness or injury
If available, submit medical or other evidence showing that you suffered from the illness or injury during the time since the initial decision was issued; and
Explain how the illness injury prevented you from filing your document on time or requesting an extension of time.

Describe the facts and circumstances related to the untimely filing, and your arguments as to why the Board should find good cause.

The filing of this PFR is timely as it was filed on September 26, 2025, within 35 days after the date of the issuance of the Initial Decision. 5 § CFR 1201.114(e). As explained in the Initial Decision of August 22, 2025, "This initial decision will become final on September 26, 2025, unless a petition for review is filed by that date."

---

4. Do you declare, under the penalty of perjury, that the facts asserted regarding the timeliness of the Petition For Review are true and correct?

Yes

---

5. Does your pleading assert facts that you know from your personal knowledge?

No

---

6. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

---

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | | |
|---|---|---|
| MEGAN JACKLER, | ) | DOCKET NUMBER: |
| Appellant, | ) | DA-0752-25-0330-I-1 |
| v. | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| Agency, | ) | Date: September 26, 2025 |
| and | ) | |
| DIRECTOR OF THE OFFICE OF | ) | |
| PERSONNEL MANAGEMENT, | ) | |
| Intervenor. | ) | |

## AGENCY'S PETITION FOR REVIEW

Just as each appellant before this Board is entitled to a complete decision regarding all of his or her asserted claims, so too are agencies entitled to a decision that fully disposes of their defenses. The Chief Administrative Judge of the Merit Systems Protection Board ("Board") declined to consider the United States Department of Justice's ("the Agency") argument, rooted in the Constitution, that the Civil Service Reform Act ("CSRA") may not apply to restrict the Attorney General's authority to remove Appellant from office—precisely because that argument is rooted in the Constitution. Yet ironically, the Chief Administrative Judge granted Appellant relief based solely on Appellant's "constitutional claim" that the Agency failed to afford Appellant due process under the Constitution, and found that it "need not address the merits of the [A]gency's underlying removal action." Initial Decision ("ID") at 4-7.

That was legal error. The text of the CSRA, Board precedent, and Supreme Court precedent demonstrate that the Chief Administrative Judge was required to consider the Agency's constitutional argument. And proper consideration of that argument illustrates that Appellant is not entitled to relief. The Agency, with its component the Executive Office for Immigration Review ("EOIR"), therefore respectfully petitions for review of the Chief Administrative Judge's Initial Decision.

**BACKGROUND**

Appellant is a former Supervisory Immigration Judge (also referred to as an Assistant Chief Immigration Judge). *See* 8 C.F.R. § 1003.9(a) (stating that EOIR's Director may designate Immigration Judges to serve as Deputy and Assistant Chief Immigration Judges as may be necessary to assist the Chief Immigration Judge in the management of the Office of the Chief Immigration Judge). ID at 1-2. On February 10, 2025, the Attorney General removed Appellant from office pursuant to Article II of the United States Constitution. Initial Appeal File ("IAF), Tab 5 at 19-21. The removal decision was recorded in a Notification Of Personnel Action (Form SF-50) issued on February 14, 2025. IAF, Tab 5 at 18. On February 21, 2025, Appellant filed a MSPB Form 185 with the Board. IAF, Tab 1. On April 11, 2025, the Office of Personnel Management ("OPM") exercised its right under 5 U.S.C. § 7701(d)(1) to intervene in this proceeding. IAF, Tabs 16, 17. After receiving close of record briefing from Appellant, the Agency, and OPM, the Chief Administrative Judge ruled for Appellant, reversed the agency's removal action, and ordered reinstatement. ID at 7-8.

In his decision, the Chief Administrative Judge determined (consistent with both parties' positions) that the Board has jurisdiction over the appeal because Appellant is an "employee" under 5 U.S.C. § 7511(a)(1)(B) and the removal was an "adverse action[]" under 5 U.S.C. § 7512. ID at 2-5. The Chief Administrative Judge further reasoned that the Agency's removal action could not be sustained because the Agency "did not provide the appellant an opportunity to respond to the termination action," and the removal therefore failed to afford her constitutional due process. ID at 4-5. That was so, his decision explained, because Chapter 75 of Title 5 of the U.S. Code granted Appellant a property interest in her federal employment by providing that she could only be removed "for such cause as will promote the efficiency of the service." ID at 5 (quoting

5 U.S.C. § 7513). And because, according to the Chief Administrative Judge, that provision of the CSRA confers a property right in federal employment, the Agency was required to provide "notice and an opportunity to respond before the termination takes effect." ID at 5.

The Chief Administrative Judge declined to consider the Agency's defense that it was not required to afford notice and an opportunity to respond because Article II mandates that Appellant be removable at will, eliminating any property interest in her continued employment. ID at 5-7. The Chief Administrative Judge reasoned that because Immigration Judges are not expressly excluded from the definition of "employee" in 5 U.S.C. § 7511, "the agency is asking the Board to invalidate one or more of the provisions of the statute." ID at 6. And on its reading of Board precedent, it concluded that "administrative agencies are without authority to determine the constitutionality of statutes." ID at 6-7 (citing *Davis-Clewis v. Dep't of Veterans Affairs*, 2024 MSPB 5, ¶ 9). He, therefore, refused to consider whether the Constitution (specifically, Article II) empowered the Agency to terminate Appellant, instead held that the Agency's removal decision violated the Constitution (specifically, the Due Process Clause), and ruled for Appellant.

The Chief Administrative Judge further refused to certify an interlocutory appeal as to the Article II question it declined to resolve, asserting that "[a]side from the issues raised by the agency related to the constitutionality of the Civil Service Reform Act of 1978, which are outside the Board's authority, this appeal does not involve a question of law about which there is substantial ground for difference of opinion." ID at 7 n.5. The Chief Administrative Judge therefore ordered the Agency "to cancel the removal and to retroactively restore appellant effective February 14, 2025," to pay backpay with interest, and to take various administrative steps related to those requirements. ID at 7-8. He further ordered the agency "to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2)(A)." ID at 8-9.

**ARGUMENT**

## I.  The Agency Is Entitled to a Ruling on Its Constitutional Defense

The Chief Administrative Judge's refusal to consider the Agency's constitutional defense misunderstands Board precedent and the nature of the Agency's argument.  His Initial Decision asserts that the Agency's contention "that Immigration Judges are inferior officers and thus may be removed without cause under Article II of the Constitution" is "in essence, a challenge to the constitutionality of the removal protections afforded by 5 U.S.C. §§ 7511-7513."  ID at 6.  But while the Agency recognizes the Board's longstanding view that it lacks "authority to determine the constitutionality of statutes," *see Malone v. Dep't of Justice*, 14 M.S.P.R. 403, 406 (1983), the Agency's argument does not require such a determination.  Rather, the Agency's position requires only that the Board consider its constitutional arguments regarding the "*application* of a statute."  ID at 6 n.3 (citing *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 684 n.12 (1991).  Because, as explained below, Article II of the Constitution requires that Appellant be removable at will, the Board may properly consider whether the CSRA, as applied in this particular case, does or can impede that requirement consistent with the Constitution.  In resolving that question, the Board is not determining the facial constitutionality of the statute, but rather deciding a discrete constitutional question relevant to a "specific substantive decision" to "fire an employee."  *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 189 (2023).  As explained herein, those types of constitutional questions fall squarely within the Board's jurisdiction.

The Board must, under its own and Supreme Court precedent, consider the Agency's constitutional justification for Appellant's removal.  While Board precedent is not always clear on this issue, the Board "does have authority to adjudicate a constitutional challenge to an agency's application of a statute."  *Special Counsel v. Jackson*, 119 M.S.P.R. 175, 179 (2013); *see also May*

*v. Off. of Pers. Mgmt.*, 38 M.S.P.R. 534, 538 (1988) (citing 3 Kenneth Culp Davis, *Administrative Law Treatise* § 20.04, at 74 (1958); Peter Broida, *A Guide to Merit Systems Protection Board Law and Practice* 345 (36th ed. 2019) ("Although there may be a constitutional violation, the Board does not have jurisdiction over the claim unless it also has jurisdiction over the action taken against the employee.").

The exercise of that authority is mandatory.  Under the CSRA, the Board is tasked with adjudicating the validity of "the decision of the agency," 5 U.S.C. § 7701(c)(1); appellants may attempt to prove their case by "show[ing] that the decision was not in accordance with law," *id.* § 7701(c)(2)(C).  For that reason, an Administrative Judge "must analyze all material issues of fact and law"; he "cannot simply announce that he will not consider" arguments that he "deems unworthy of consideration."  Broida, *supra*, at 1491 (collecting cases); *see, e.g.*, *Spithaler v. Off. of Personnel Mgmt.*, 1 M.S.P.R. 587, 588 (1980) (cleaned up); *Hayes v. Dep't of Army*, 111 M.S.P.R. 41 (2009); *Smart v. Dep't of Army*, 105 M.S.P.R. 475, 481 (2007).  That is equally true for agency arguments as for appellants' arguments, for "the appellant is not the only party entitled to a complete decision."  Broida, *supra*, at 1493 (citing *Burton v. Veterans Affairs*, 35 M.S.P.R. 52, 54 (1987)).  And it encompasses questions of law grounded in the Constitution just as it covers questions of law grounded in statute or regulation—after all, the Constitution is "the supreme Law of the Land," U.S. Const. art. VI, and the CSRA does not expressly carve constitutional questions out of the review scheme.  *See generally* 5 U.S.C. §§ 101-11001; *see also Oklahoma v. U.S. Civil Serv. Comm'n*, 330 U.S. 127, 135 (1947) (holding that review of whether an order was "in accordance with law" encompassed a challenge "to the constitutionality of the law upon which the order under review is predicated").

Indeed, the Supreme Court has made clear that in the CSRA context specifically, the CSRA's "comprehensive system for reviewing personnel action taken against federal employees" means that the Board must resolve constitutional questions that arise within the context of reviewing personnel actions. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 10-11 (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). Indeed, petitioners in that case tried to draw a distinction between claims that "allege only that an agency 'acted in an unconstitutional manner'" and claims that "challenge the constitutionality of a federal statute either facially or as applied." *Id.* at 16 n.5. But the Court rejected that distinction as "dubious at best," because "an employee's claim that the agency 'acted in an unconstitutional manner' will generally be a claim that the statute authorizing the agency action was unconstitutionally applied to her." *Id.* In terms of the CSRA's conferral of jurisdiction, therefore, the Court found no "fairly discernible" difference between a claim that an agency acted in an "unconstitutional manner" toward an employee and an as applied challenge to the statutes governing her employment. *Id*.

Accordingly, the Board has repeatedly exercised its jurisdiction to analyze, assess, and rule on constitutional questions that bear on the validity of an employee's removal. *See, e.g., May*, 38 M.S.P.R. at 536, 538 (due-process challenge to the retroactive termination of an annuity); *Special Counsel v. Murry*, No. CB-1216-15-0002-T-1, 2015 WL 6688194 (Nov. 3, 2015) (due-process and equal-protection challenge to the Special Counsel's allegedly selective enforcement of the Hatch Act); *Bain v. Off. of Personnel Mgmt.*, 49 M.S.P.R. 307 (1991) (equal-protection challenge to the calculation of retirement credits for seasonal employees); *In re Fishkin*, 2 P.A.R. 785, 790 n.6 (1968) (free-speech challenge to the Hatch Act's restraints on political activity); *Brooks v. Off. of Pers. Mgmt.*, 59 M.S.P.R. 207, 215 n.7 (1993), *superseded by statute* (equal-protection challenge to OPM's definition of "period of war"). That is what the Agency asks the

Board to do here—assess whether the statute may constitutionally apply to preclude the specific agency action at issue in this case.

The Board's previous cases refusing to exercise jurisdiction over certain constitutional claims are inapplicable here. For example, in *Davis-Clewis v. Department of Veterans Affairs*, a case the Chief Administrative Judge repeatedly cited, the Board held that it lacked the authority to adjudicate the constitutionality of the statutory removal protection for the Board's Administrative Judges. 2024 M.S.P.B. 5, at *3 (2024). That is entirely consistent with cases holding (consistent with *Elgin*) that the Board may consider constitutional questions, like those the Agency raises here, that bear on the validity of a removal. A constitutional challenge to the *Board Chief Administrative Judge's* removal protections—that is, a challenge to the validity of the decisionmaker itself—is a "structural constitutional challenge[]" to the reviewing agency's existence or organization that is most naturally adjudicated in the district courts. *See Carr v. Saul*, 593 U.S. 83, 92 (2021); *see also Axon*, 598 U.S. at 191; *Riggin v. Off. of Senate Fair Emp't Practices*, 61 F.3d 1563, 1569-70 (Fed. Cir. 1995) (an administrative agency may adjudicate a "constitutional issue [that] does not require the agency to question its own statutory authority"). Whether the tribunal tasked with assessing the Agency's removal decision is properly constituted or may properly hear a party's claims is an entirely collateral question; it does not itself bear on whether the agency's removal decision is valid. Accepting *Davis-Clewis* on its own terms therefore suggests that the Board likely could not decide an argument asserting that the Board is *itself* "wielding authority unconstitutionally in all or a broad swath of its work." *Axon*, 598 U.S. at 189. But *Davis-Clewis* and other cases adopting the same reasoning do not preclude the Board (or its Administrative Judges) from considering whether the CSRA prevents the President or an agency head from

exercising a constitutional prerogative to "fir[e] an employee" in a "specific substantive" case. *Id.* (referencing *Elgin*). And that is the question presented in this case.

Simply put, the Chief Administrative Judge's contrary reasoning took *Davis-Clewis* too far and denied the Agency the "complete decision" to which it was entitled. Broida, *supra*, at 1493 (citing *Burton v. Veterans Affairs*, 35 M.S.P.R. 52, 54 (1987)). The Board should therefore set aside the Chief Administrative Judge's decision for Appellant and vacate the awarded interim relief. *See id.*; *cf. Meredith Corp. v. FCC*, 809 F.2d 863, 874 (D.C. Cir. 1987) (noting both that "we are aware of no precedent that permits a federal agency to ignore a constitutional challenge to the application of its own policy merely because the resolution would be politically awkward" and that the failure of an agency to consider a constitutional argument raised by a respondent in an enforcement action "seems to us the very paradigm of arbitrary and capricious administrative action").

## II.  Appellant's Grounds for Appeal Fail

Because the Chief Administrative Judge refused to consider the Agency's constitutional defense, the Chief Administrative Judge found that the Agency violated Appellant's due process rights, holding that Appellant had a property interest in her employment pursuant to 5 U.S.C. § 7513. ID at 5. But as the Agency asserted below, Appellant is an inferior officer and must be removable at will pursuant to Article II of the U.S. Constitution. The CSRA cannot constitutionally be applied to restrict that authority, and Appellant, as an officer who is removable at will, lacks any property interest in her employment. Appellant's grounds for appeal therefore fail.

## A. Appellant Was an Inferior Officer Who Was Removable At Will Under Article II of the Constitution

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President, of course, must rely on others to assist him in executing the laws. *See id.* at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints" (internal citations and quotation marks omitted)); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws on his behalf, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514.

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may properly exercise that power on his behalf. *See* U.S. Const., Art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). And when heads of departments exercise executive power, their acts are attributable to the President. *See, e.g., Printz*, 521 U.S. at 922 (the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. U.S. ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that the President speaks

and acts through the heads of the several departments in relation to subjects which appertain to their respective duties and that the acts of the heads of departments, within the scope of their powers, are in law the acts of the President." (internal quotations to *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839), and *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879), omitted)).

When the Attorney General terminated Appellant from her position as an Assistant Chief Immigration Judge, the Attorney General was exercising the President's executive power.[1]  When Congress has tasked a department head with the appointment of an inferior office, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493.[2]  That is because "the power of removal of executive officers [is] incident to the power of appointment." *Myers v. United States*, 272 U.S. 52, 119 (1926); *see Kennedy v. Braidwood Management*, 145 S. Ct. 2427, 2444 (2025) (citing the same); *Duenas v. Garland*, 78 F.4th 1069, 1074 (9th Cir. 2023) ("[T]here can be no doubt that the Attorney General enjoys the power to remove [i]mmigration [j]udges …, just as he or she enjoys the power to appoint them."). Where the head of a department exercises such removal power—as the Attorney General

---

[1] Appellant has suggested that "the actual decision-maker in this case was the Acting Director of the Executive Office of [*sic*] Immigration Review and not the Attorney General." IAF, Tab 21 at 30. But the Attorney General—and no one else—made the ultimate decision and signed Appellant's removal paperwork. IAF, Tab 5 at 19-21. Heads of departments must necessarily rely on recommendations and advice from subordinates in order to run their agencies. But recommenders and advisors are not converted into the decision-maker when the individual who signs on the dotted line accepts their recommendation or follows their advice. There is no evidence that EOIR's then-Acting Director, in fact took the relevant action or signed the relevant paperwork in place of the Attorney General, so there is no basis to assert that the then-Acting Director was "the actual decision-maker."

[2] Of course, the President may also exercise that power, including through his supervision over the department head. Because of that supervision, the department head's actions in some sense may be fairly attributed to the President. *See Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839) ("The President speaks and acts through the heads of the several departments, in relation to subjects which appertain to their respective duties.").

did here—Article II protections apply the same as if the President had terminated Appellant himself.

Here, Appellant was appointed by the head of a department: the Attorney General, the head of the Department of Justice. 28 U.S.C. § 503.  As 8 U.S.C. § 1101(b)(4) makes clear, an "Immigration Judge" is "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review."  Appellant was also supervised by the Attorney General.  *See* 8 U.S.C. § 1101(b)(4) ("An [I]mmigration [J]udge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe.").  And he was vested by law with executing the laws of the United States.  8 U.S.C. § 1229a (vesting Immigration Judges with power to "conduct proceedings for deciding the inadmissibility or deportability of an alien").  Because Appellant was appointed to her former position as an Immigration Judge by the Attorney General and supervised by the Attorney General in the exercise of executive power, she was presumptively removable from that position without cause under Article II.  *Seila Law*, 591 U.S. at 228 ("[T]he President's removal power is the rule, not the exception.").

The Supreme Court has recognized only two exceptions to the general rule that an executive branch officer must be removable at will.  *See Myers*, 272 U.S. 52.  First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Seila Law*, 591 U.S. at 216.  Second, the Court has held that "Congress could provide tenure protections to certain inferior officers with narrowly defined duties."  *Id.* at 204.

Immigration Judges do not fit within either of those exceptions.  First, Immigration Judges do not resemble commissioners of a multimember body of experts, balanced along partisan lines, exercising quasi-legislative and quasi-judicial power, as the Supreme Court found was at issue in *Humphrey's Executor*.  *Id.* at 216.  Immigration Judges do not act as a "legislative agency" or "an agency of the judiciary" by "making recommendations" to those bodies.  *Id.* at 215-16.[3]  Instead, they exercise executive power.  Immigration Judges are tasked with "conduct[ing] proceedings for deciding the inadmissibility or deportability of an alien," and those proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or … removed from the United States."  8 U.S.C. § 1229a(a)(1), (3).  To fulfill that responsibility, Immigration Judges "administer oaths, receive evidence, and interrogate, examine, and cross-examine" witnesses; "issue subpoenas;" and may "sanction … any action (or inaction) in contempt of the judge's proper exercise of authority."  *Id.* § 1229a(b)(1).  At the conclusion of the proceeding, the Immigration Judge decides "whether an alien is removable from the United States."  *Id.* § 1229a(c)(1)(A).  Such activities are plainly executive, rather than legislative or judicial—and "indeed, under our constitutional structure they *must be* exercises of [] the 'executive Power.'"  *Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013).

An Immigration Judge's broad duties also exceed the bounds of the exception for certain inferior officers who perform only limited duties, exemplified by *Morrison v. Olson*, 487 U.S. 654

---

[3] Appellant has suggested that Immigration Judges exercise "quasi-judicial" functions like those the Supreme Court attributed to the Supreme Court in *Humphrey's Executor*.  IAF, Tab 21, at 31.  But in that case, the "quasi-judicial" power involved was "to act as a master in chancery" and to submit recommended dispositions to Article III courts.  *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935).  Indeed, the Supreme Court has expressly contrasted the type of *executive* authority Immigration Judges wield—"unilaterally issu[ing] final decisions … in administrative adjudications"—from "submitting recommended dispositions to an Article III court," as in *Humphrey*'s.  *Seila Law*, 591 U.S. at 218-19.  And in any event, Immigration Judges operate within the Department of Justice, an indisputably executive agency.

(1988).  In *Morrison*, the Supreme Court concluded that removal protection for an independent counsel who had been appointed by a court of law was constitutional because the independent counsel had "limited jurisdiction" and "lack[ed] policymaking or significant administrative authority."  *Id.* at 691.  While independent counsels' jurisdiction under the (now-expired) statute at issue in *Morrison* was limited to investigating and prosecuting specific matters referred by the Attorney General, *id.* at 660-63, Immigration Judges have broad authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien."  8 U.S.C. § 1229a(a)(1).  Far from "lacking policymaking or significant administrative authority," *Morrison*, 487 U.S. at 691, Immigration Judges "shall exercise their independent judgment and discretion" in conducting hearings to decide inadmissibility or deportability.  8 C.F.R. § 1003.10.  And in doing so, they make decisions that are subject to only limited appellate review in an area that implicates core executive power—the federal government's authority to enforce the immigration laws.  *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (discussing 8 U.S.C. § 1252(a)(2)); *Arizona v United States*, 567 U.S. 387, 395-97 (2012); 8 C.F.R. § 1003.1(b) (setting forth limited circumstances in which the Board of Immigration Appeals ("BIA") may review decisions of Immigration Judges).

For example, negative decisions of Immigration Judges in "credible fear review" proceedings are not subject to further review and result in the "expedited removal' of the alien.  *See* 8 C.F.R. § 1208.30(g)(2)(iv).  Likewise, no direct appeal lies from an Immigration Judge's decision to order an alien's removal from the United States in absentia.  *See Matter of Guzman-Arguera*, 22 I&N Dec. 722, 722 (BIA 1999).  Even if review is available, if an alien does not appeal an Immigration Judge's removal decision, the Immigration Judge's decision becomes a final administrative order of removal.  *See* 8 C.F.R. § 1241.1.  Moreover, Immigration Judges also have the authority to grant

aliens a wide range of immigration benefits, including asylum, which can place them on a path towards United States citizenship and render them eligible for numerous public benefits at great expense to the American taxpayer. *See* 8 C.F.R. § 1208.2(b). By wielding significant immigration authority, often unencumbered by further review, Immigration Judges effectively determine the policy and enforce the laws of the United States as delegates of the Attorney General. 8 C.F.R. § 1003.10(a) ("Immigration [J]udges shall act as the Attorney General's delegates in the cases that come before them."); *Free Enter. Fund*, 561 U.S. at 484.

The significant responsibilities of Immigration Judges demonstrate that they are not "part of the broad swath of lesser functionaries in the Government's workforce"; they are officers of the United States who exercise part of the President's executive power. *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018). In fact, "any appointee" to a continuing position "exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States'" within the meaning of Article II. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). The Securities and Exchange Commission's administrative law judges meet that standard; they exercise "significant discretion" in conducting "fair and orderly adversarial hearings" and issue decisions with legal effect. *Lucia v. SEC*, 585 U.S. 237, 248 (2018). As the Ninth Circuit squarely held, Immigration Judges do too. Immigration Judges' responsibilities are legally defined and continuous and involve substantial authority to conduct adversarial hearings in removal proceedings. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023) (citing 8 U.S.C. § 1229a). As such, any restriction on the removal of an Immigration Judge from office would impermissibly encroach on the President's otherwise "unrestricted removal power" with respect to "inferior officers." *Seila Law LLC*, 591 U.S. at 204; *see also Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 445 (5th Cir. 2022) ("The President's power to remove is essential to the performance of his Article II

responsibilities and control over the Executive Branch."). To hold otherwise would unduly restrict the "executive power" which is "vested in a President," who must "take care that the laws be faithfully executed." U.S. Const., Art. II, § 1, cl. 1; § 3. Therefore, the Attorney General's decision to terminate Appellant's appointment as Assistant Chief Immigration Judge—a position in which Appellant exercised significant executive power—was a proper exercise of Article II authority.

**B. No Statute Does Nor Could Restrict Appellant's Removal**

Neither the Civil Service Reform Act of 1978 nor any other statute provides Immigration Judges with protection from removal at-will by the President or the Attorney General. Regardless, adopting Appellant's reading of the CSRA would render it unconstitutional under Article II, and thus the canon of constitutional avoidance counsels against adopting Appellant's interpretation.

First, no statute specifically provides that Immigration Judges are protected from at-will removal. A foundational canon of statutory construction is *expressio unius est exclusio alterius*— the expression of one thing implies the exclusion of others. Congress has explicitly provided removal protections for administrative law judges. *See* 5 U.S.C. § 7521(a) (requiring "good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board" for adverse employment action). Yet Immigration Judges enjoy no similar *explicit* statutory grant of protection. 8 U.S.C. § 1101(b)(4) merely states that Immigration Judges are "attorneys whom the Attorney General appoints," with no mention of tenure, term limits, or removal conditions. The absence of protective language in Title 8 suggests Congress, when enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, or elsewhere did not intend to restrict the Attorney General's removal power over Immigration Judges. Indeed, the Supreme Court and the D.C. Circuit have explained that "to 'take away' the power of at-will removal from

an appointing officer, Congress must use 'very clear and explicit language.'" *Braidwood*, 145 S. Ct. at 2448 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)); *see Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) ("Congress must make it clear in a statute if it wishes to restrict the President's removal power."). The right to remove an officer "should not be held to be taken away by mere inference or implication"—which is all Appellant's argument relies on. *Shurtleff*, 189 U.S. at 315.

Perhaps recognizing the absence of any explicit statute expressly protecting Immigration Judges from removal by the President or the Attorney General under Article II, Appellant relies principally on the CSRA. The CSRA provides protections for certain employees from removal by their employing agency without cause, and the statute's procedural mandates were concededly not followed here. 5 U.S.C. § 7513(a), (b). Yet the CSRA's protections from at-will removal should not be read to preclude an Article II removal by the head of a Department. *See Braidwood*, 145 S. Ct. at 2449 ("Congress must speak clearly if it wishes to insulate officers from at-will removal."); *Severino*, 71 F.4th at 1044 (demanding a "clear signal" that Congress intends to displace the appointing official's Article II removal authority); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

First, the statute itself does not "clearly express[] a congressional intent to trim" the Attorney General's removal power. *Severino*, 71 F.4th at 1044. While Immigration Judges would putatively qualify as "employees" with appeal rights under the CSRA, the CSRA's provision of protections and processes does not expressly apply to the President's or the Attorney General's

constitutional removal authority, as opposed to, for example, routine administrative discipline procedures. To the extent that the statute is ambiguous, the constitutional avoidance canon should preclude a reading that does restrict that authority. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). As demonstrated above, Immigration Judges are inferior officers under the Constitution, and neither exception to the unrestricted removal power of the President and Attorney General applies. *Supra* pp. 7-13. Interpreting the Civil Service Reform Act to restrict the power of the President and the Attorney General to remove Appellant without cause would significantly encroach on the Executive's power and thus render the statute unconstitutional under Article II. This is especially true here because Appellant, in her former position, exercised significant policymaking discretion over immigration, a matter traditionally reserved for the Executive Branch. *See Dep't of State v. Munoz*, 602 U.S. 899, 907 (2024) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

**C. Because Appellant Was an At-Will Employee, Her Due Process Claim Fails**

The Chief Administrative Judge's initial decision, nonetheless, found a due process violation, based on a refusal to consider the Agency's arguments above regarding the proper application of the CSRA. But where, as here, a federal officer serves at will—that is, as explained above, she may be removed for "any constitutionally permissible reason or for no reason at all"—the employee "has no property interest" in her employment. *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) (citations omitted). Appellant therefore, as an individual "subject to

at-will dismissal," "lack[s] the statutorily-protected property interest necessary to ground a due process challenge." *Griffith v. Lanier*, 521 F.3d 398, 404 (D.C. Cir. 2008); *see also Chmielewski v. EPA*, 2022 WL 22902407, at *3 (D.D.C. July 28, 2022). The Chief Administrative Judge's finding that Appellant's due process rights were violated was therefore error.

Further, this makes sense given the constitutional structure. As explained above, the President and his immediate subordinates must be able to act with dispatch and make important, inherently discretionary judgment calls regarding the individuals who exercise executive power on his behalf. They must be able to do so quickly, as *all of* the executive power belongs to the President—he cannot be hamstrung with officials whom he no longer trusts wielding executive power while he waits for some notice period to pass or hearing to transpire. *Cf. Trump v. Wilcox*, No. 24A966, 2025 WL 1464804, at *1 (May 22, 2025) ("[T]he Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."). And because these key personnel decisions regarding officers wielding executive power on the President's behalf involve "sensitive and inherently discretionary judgment call[s]," there is no meaningful standard for this Board to apply "to review the substance of such a judgment." *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) (holding that the Board did not have authority to review substance of underlying decision to deny or revoke security clearance in the course of reviewing an adverse action).

In sum, Appellant was not deprived of any property interest in her employment, and her due process rights therefore were not violated when the Attorney General removed her from office.

## CONCLUSION

The Chief Administrative Judge below entered relief—including interim relief—based solely on Appellant's claim of a constitutional violation. And he did so without even considering the

Agency's core defense, simply because that defense is rooted in the Constitution. That plainly inconsistent approach to resolving constitutional questions was error under the text of the CSRA, Board precedent, and Supreme Court precedent. The Board may therefore set aside the Chief Administrative Judge's decision on that basis alone, and remand for consideration of the Agency's constitutional argument in the first instance.

In the alternative, the Board may itself consider the Agency's constitutional argument in reviewing the Chief Administrative Judge's erroneous due process analysis. As Immigration Judges are appointed by the Attorney General under 8 U.S.C. § 1101(b)(4), and wield executive power on behalf of the President and the Attorney General, Immigration Judges must be removable at will. Because at-will employees have no property interest in their employment, the Attorney General's removal did not violate Appellant's constitutional right to due process. The Agency's removal action should be upheld by this Board.

Since its enactment in 1978, the Civil Service Reform Act of 1978 has applied to numerous civil service employees and agencies in addressing employment actions. But it must operate consistent with the Constitution of the United States, which, by the Supremacy Clause, displaces any law or enactment inconsistent with its demands. This Board has previously set aside agency actions because they violated the Constitution. Here, the Board should uphold the Agency's removal because it was a proper exercise of the Attorney General's constitutional authority.

Respectfully submitted,

**/s/ Matthew T. Pizzo**
Matthew T. Pizzo
Special Counsel
Office of General Counsel
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2269
Falls Church, Virginia 22041
Matthew.Pizzo@usdoj.gov;  Cell: 832-651-7522

**<u>Certification of Agency Compliance with the Interim Relief Order</u>**

The Department certifies that it has complied with the Chief Administrative Judge's interim relief order by reinstating the Appellant, Megan Jackler, to her position of record, effective the date of the initial decision.  The Appellant is receiving all appropriate pay and benefits as of the date of reinstatement but in a non-duty status because the Department has determined that returning Appellant to duty would cause an undue disruption to the work environment.  5 U.S.C. § 7701(b)(2)(A)(ii), (b)(2)(B); 5 C.F.R. § 1201.116(a).

MICHAEL
TENNYSON

Digitally signed by
MICHAEL TENNYSON
Date: 2025.09.26
14:54:42 -04'00'

Michael Tennyson
Deputy Assistant Director (Acting)
Office of Administration
Executive Office for Immigration Review
U.S. Department of Justice

# Certificate of Service

e-Appeal has handled service of the assembled pleading to MSPB and the following Parties.

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Washington Regional Office | Petition for Review | e-Appeal |
| Carstens, Zachary | Petition for Review | e-Appeal |
| Ehler, Patrick | Petition for Review | e-Appeal |
| Erbe, Robert | Petition for Review | e-Appeal |
| Ferguson Queen, Julie | Petition for Review | e-Appeal |
| Guillaume, Lourdes | Petition for Review | e-Appeal |
| Jackler, Megan | Petition for Review | e-Appeal |
| Perkins, Jordan | Petition for Review | e-Appeal |