# Exhibit 4

Mary Comans v. Department of Homeland Security

Docket # DC-0752-25-1783-I-1

Agency Motion to Dismiss

Summary Page

Case Title :          Mary Comans v. Department of Homeland Security

Docket Number :        DC-0752-25-1783-I-1

Pleading Title :        Agency Motion to Dismiss

Filer's Name :        Michelle Perry

Filer's Pleading Role :        Agency

Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|
| 1 | Attachment 1 to Motion to Dismiss.pdf | Uploaded |
| 2 | Attachment 2 to Motion to Dismiss.pdf | Uploaded |
| 3 | Attachment 3 to Motion to Dismiss.pdf | Uploaded |
| 4 | Attachment 4 to Motion to Dismiss.pdf | Uploaded |

Mary Comans v. Department of Homeland Security

Docket # DC-0752-25-1783-I-1

Agency Motion to Dismiss

Table of Contents

| | | |
|---|---|---|
| Summary | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Table of Contents | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Interview | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Body | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| A. The Board Has No Jurisdiction Over a Challenge to an Article II Removal | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| Attachment 1 to Motion to Dismiss | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| Attachment 2 to Motion to Dismiss | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| Attachment 3 to Motion to Dismiss | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| Attachment 4 to Motion to Dismiss | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| Certificate of Service | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |

Mary Comans v. Department of Homeland Security

Docket # DC-0752-25-1783-I-1

Agency Motion to Dismiss

Online Interview

1. Enter a brief title for your pleading.

Agency Motion to Dismiss

2. Does your pleading assert facts that you know from your personal knowledge?

Yes

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | | |
|---|---|---|
| **MARY COMANS** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. DC-0752-25-1783-I-1** |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY** | ) | |
| | ) | |
| **Agency.** | ) | **Date: April 25, 2025** |
| | ) | |

**AGENCY NARRATIVE RESPONSE AND**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**

This matter comes before the Merit Systems Protection Board ("Board" or "MSPB"), Washington Regional Office, upon the initial appeal of Mary Comans ("Appellant"). The appeal arises out of the actions of the U.S. Department of Homeland Security ("DHS"), and its component, the Federal Emergency Management Agency ("FEMA" or "the Agency"), to terminate Appellant's employment on February 11, 2025. Appellant's removal was undertaken pursuant to Article II of the United States Constitution at the direction of the President.

## I.    STATEMENT OF FACTS

1. FEMA appointed Appellant to the position of Chief Financial Officer (CFO) on September 13, 2020.  Attachment 1 (SF50 Appointment).

2. On February 11, 2025, the Office of the President contacted DHS officials and informed DHS officials that four (4) FEMA employees were to be immediately terminated. Attachment 2 (FEMA Administrator Statement).

3. The DHS officials were specifically instructed to carry out the terminations pursuant to the authority of the President of the United States. Attachment 2.

4. On February 11, 2025, FEMA Senior Official Performing the Duties of the Deputy Administrator MaryAnn Tierney issued the Notice of Termination in order to remove Appellant from her position as the CFO from the Office of the Chief Financial Officer, FEMA.  Attachment 3 (Notice of Termination).

5. Appellant's termination was effective that same day. Attachment 4 (SF50 Termination).

## II.      DISCUSSION

It is well established that the President of the United States is the head of the Executive Branch and is the steward of the employees who work within the Branch. As James Madison explained, "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong. 463 (1789). That power, in turn, generally includes the ability to remove executive officials, for it is "only the authority that can remove" such officials that they "must fear and, in the performance of [their] functions, obey." *Bowsher v. Synar*, 478 U. S. 714, 726 (1986) (internal quotation marks omitted).

Creating what would become the competitive service, the Pendleton Act of 1883 provided a commission to assist the President in screening candidates for the performance of duties in the executive branch. The Pendleton Act did not move to restrict the President's removal power for non-political reasons. *Id*. A 1901 case before the Supreme Court found, in the absence of prescribed laws limiting removals, "the appointing power to remove at pleasure or for such cause as it deemed sufficient" under the Constitution. *Reagan v. United States*, 182 U.S. 419, 425 (1901). This foundational ruling was later refined for cases involving the President, explaining a presumption that the President holds the power to remove executive officers at will

2 | P a g e

and that a statute must contain "plain language to take [that power] away." *Shurtleff v. United States*, 189 US 311, 316 (1903).

In a few short years, the Lloyd-LaFollette Act of 1912 was passed mandating that "no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal." The Lloyd-LaFollette Act provided procedures for agencies to follow when dismissing employees. Decades later, still working under this general framework, but with small functional edits though executive orders and the Veterans Preference Act (VPA) of 1944, the Supreme Court in *Arnett v. Kennedy* determined that federal employees have a constitutional due process interest in continued federal employment. 416 U.S. 134 (1974).

With this background, Congress passed the Civil Service Reform Act of 1978 (CSRA) to replace prior legislation and executive orders with a new framework. Under the CSRA, 5 U.S.C. §1101 et seq., an employing agency who proposes a covered action against a covered employee must give the employee the right to notice, representation by counsel, an opportunity to respond, and a written reasoned decision from the agency. §7513(b). The CSRA is silent, however, on the President's inherent power to remove executive employees.

The historical recognition of the President's authority has been upheld and reinforced in numerous recent cases. "The removal power helps the President maintain a degree of control over the subordinates he needs to carry out his duties as the head of the Executive Branch, and it works to ensure that these subordinates serve the people effectively and in accordance with the policies that the people presumably elected the President to promote." *Collins v. Yellen*, 594 U.S. 220, 252 (2021); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); *Free*

Document Number: 3380808          e-Appeal Submission: 04/25/2025 10:07 AM ET          MSPB Page 6 of 19

*Enterprise Fund v. Public Co. Acct. Bd.*, 561 U.S. 477, 501-502 (2010).[1] The Supreme Court further stated that at-will removals, then as now, safeguard that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community." *Free Enterprise Fund*, 561 U.S. at 498 (*quoting* 1 Annals of Cong. 499 (1789) (J. Madison)).

### A. The Board Has No Jurisdiction Over a Challenge to an Article II Removal

As stated the President has constitutional authority to remove subordinate officials in the Executive Branch. *Free Enterprise Fund*, 561 U.S. at 513 (addressing the President's authority to remove an "inferior" Constitutional officer who reports to a "Principal" Constitutional officer who also has tenure protections from removal). This authority derives from Article II of the United States Constitution, which states "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; id. at §3). The "vesting of executive power in the President" carries, by "reasonable implication," a grant of power to select subordinates and remove them from service. *Myers v. United States*, 272 U.S. 52, 117 (1926) (because the selection "of administrative officers is essential to the execution of the laws by [President], so must be his power of removing those for whom he cannot continue to be responsible"); *see also Free Enterprise Fund*, 561 U.S. at 513-14 (executive power "includes, as a general matter, the authority to remove those who assist him in carrying out his duties").

Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75, that statutory authority is separate and distinct from the President's inherent removal

---

[1] As noted *supra* the caselaw is focused on the removal of Officers and Inferior Officers as those are the Executive Branch employees over whom the President has exercised his Article II authority. As all Executive Branch employees fall under the President's authority, however, the same principles apply to the exercise of the President's authority to remove non-officer employees of the Executive Branch.

authority under Article II. Long before the passage of the Civil Service Reform Act (CSRA), "the President's absolute power of removal of federal employees was established in principle." Gerald E. Frug, *Does the Constitution Prevent the Discharge of Civil Service Employees*, 124 U. PENN. L. REV. 942 (1976). Congress may pass civil service laws allowing for removal under specified circumstances, but the President's removal authority under the Constitution exists even in the absence of statutory authority. *See Myers*, 272 U.S. 52 at 146 ("It is argued that these express provisions for removal at pleasure indicate that without them no such power would exist in the President. We cannot accede to this view."); *Parsons v. United States*, 167 U.S. 324 (1897) ("The provision for a removal from office at pleasure was not necessary for the exercise of that power by the president, because of the fact that he was then regarded as being clothed with such power in any event.").

The case at hand involves the President's exercise of his inherent Article II authority, rather than the exercise of statutory authority granted in Title 5. The notice of termination states this clearly. *See* Attachment 3 ("This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President."); *see also* Attachment 4 (removal SF-50). The Agency disclaims any reliance on Title 5 as a basis for Appellant's removal. Instead, the Agency removed appellant from service at the direction of the President. Similarly, in *Myers* a postmaster was "removed from office by order of the Postmaster General, acting by direction of the President." 272 U.S. at 106. The U.S. Supreme Court upheld that removal and ruled that Congress could not require tenure protections that would prohibit the President from directing

the removal of an officer who had been appointed by the President, by and with the advice and consent of the Senate. *Id.* at 106, 176-77.[2]

Because Appellant was removed at the direction of the President pursuant to Article II, rather than Title 5 of the United States Code, the Board has no jurisdiction over this case. "The Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation." 5 C.F.R. § 1201.3. There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II. Appellant's citation to 5 U.S.C. Chapter 75 is inapposite, because that statute governs whether "an *agency* may take an action" to remove an employee. 5 U.S.C. § 7513 (emphasis added). Similarly, her citation to 5 U.S.C. § 3393 and 5 U.S.C. § 3592 is unavailing as neither statute applies to a Presidentially-directed removal action like the one at issue in this case.

Finally, Appellant's allegation that her Fifth Amendment property and liberty interests were violated, and that this action was *ultra vires*, raise constitutional law questions. *See Initial Appeal* at 2. Just as with the absence of jurisdiction over a Presidentially-directed removal action, it is well established that the Board has not been given jurisdiction through any law, rule or regulation over such constitutional law claims. *Smith v. Dept. of Defense*, 106 M.S.P.R. 228 (Jun. 22, 2007) (holding that for the Board to have jurisdiction over claimed constitutional violations the appellant must first establish that the Board has been authorized by law, rule or regulation to review his termination).

---

[2] *But see*, *United States v. Perkins*, 116 U.S. 483, 484-85 (1886) (ruling that "[w]e have no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest").

6 | P a g e

## B. Unitary Executive Theory Precludes Review of Appellant's Removal

As noted, under the Constitution, "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; *id.* at §3). "The President's power to remove is essential to the performance of his Article II responsibilities and control over the Executive Branch." *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enterprise Fund*, 561 U.S. at 514.

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 203. The first exception, which is not relevant here, allows Congress to "give for-cause removal protections to a multimember body of experts." *Id.* at 216 (citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)). The second exception enables Congress to "provide tenure protections to certain *inferior* officers with narrowly defined duties." *Seila Law*, 591 U.S. at 204 (emphasis in original) (citing *United States v. Perkins*, 116 U.S. 483 (1886) and *Morrison v. Olson*, 487 U.S. 654 (1988)). These two exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power." *Seila Law*, 591 U.S. at 216.

The CSRA is a Congressional grant of authority to Executive agencies to remove employees, and Congress may set the terms that agencies must follow in exercising that statutory authority. But the President's Article II authority to direct the removal of an employee is a different matter, and the President's authority should be unrestricted.[3] *See Feds for Medical*

---

[3] Lower court opinions have occasionally addressed the topic but, so far as the Agency can discern, no court has analyzed the issue in depth. *Compare Secs. & Exchange Comm'n v. Musk*, No. 3:23-MC-80253-JSC, 2024 WL 2875096, at *8 (N.D. Cal. May 14, 2024) (legislation providing removal protections did not conflict with Article II

*Freedom v. Biden*, 63 F.4th 366, 392 (5th Cir. 2023) (Ho, J., concurring) ("In an appropriate case, we should consider whether laws that limit the President's power to remove Executive Branch employees are consistent with the vesting of executive power exclusively in the President."), *vacated on other grounds*, 144 S. Ct. 480 (2023) (mem.).

The question of whether the civil service protections for employees, as distinguished from Constitutional officers, represent a third exception "to the President's unrestricted removal power," *Seila Law*, 591 U.S. at 203, has not been addressed directly by the Supreme Court. Although civil servants exercise less authority than inferior officers, they also enjoy layers of protection that go well beyond the limits of the two-layer protections that have been upheld in cases involving statutory tenure protections for inferior Constitutional officers. The CSRA establishes a multi-layer process where a removal decision first must be proposed by a proposing official, then can be rejected by a deciding official, by an MSPB Administrative Law Judge, the full Merit Systems Protection Board, and—depending on the grounds for challenge—the EEOC's Office of Federal Operations. Each decision-maker in this process has their own civil service protections that limit Presidential control. In short, if statutory tenure protections under the CSRA inhibit the President's authority to supervise the executive branch, the President may find himself without any feasible recourse. That is plainly inconsistent with the Supreme Court's direction that the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; id. at §3).

---

when applied to a "mere employee"), *with*, *Moyer v. Brownwell*, 137 F.Supp. 594 (E.D. Pa. 1956) (in case involving revenue agent, stating that "it has been consistently held that the President has virtually unlimited power of removal of employees, such as plaintiff, under [Article II]"). The agency is unaware of any Supreme Court opinions addressing the question of whether Congress can restrict the President's removal power of an employee who is not a Constitutional, whether Principal or inferior, officer.

8 | Page

Given this uncertainty as to how the Supreme Court might rule, the Board should not go beyond *Seila Law*'s two recognized "exceptions to the President's unrestricted removal power." *Id.* As neither one of these exceptions applies to mere employees, rather than Constitutional officers, Appellant's CSRA challenge must be dismissed.

Respectfully submitted,

*Michelle L. Perry*

Michelle L. Perry
Senior Attorney-Advisor
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528
Telephone: (202) 282-9563
Michelle.perry@hq.dhs.gov

Ashley Darbo, Trial Attorney
Department of Homeland Security
Federal Emergency Management Agency
Office of Chief Counsel
500 C Street, S.W., 7SW
Washington, D.C.  20472-3179
T:        202-212-4962
M:       202-286-5875
ashley.darbo@fema.dhs.gov

**Standard Form 50**
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| | | | |

## FIRST ACTION

| 5–A. Code | 5–B. Nature of Action |
|---|---|
| 5–C. Code | 5–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority |

## SECOND ACTION

| 6–A. Code | 6–B. Nature of Action |
|---|---|
| 6–C. Code | 6–D. Legal Authority |
| 6–E. Code | 6–F. Legal Authority |

**7. FROM: Position Title and Number**

**15. TO: Position Title and Number**

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19.Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | | | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

**14. Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 – None  3 – 10–Point/Disability  5 – 10–Point/Other<br>2 – 5–Point  4 – 10–Point/Compensable  6 – 10–Point/Compensable/30% | 0 – None  2 – Conditional<br>1 – Permanent  3 – Indefinite | | YES  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| | | |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per<br>Biweekly<br>Pay Period |
|---|---|---|---|
| | | | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 – Competitive Service  3 – SES General<br>2 – Excepted Service  4 – SES Career Reserved | E – Exempt<br>N – Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| | |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

**45. Remarks**

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| | |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| | | |

5–Part 50–316

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

MARY COMANS                                )
                                           )
          Appellant,                       )
                                           )
     v.                                    )          Docket No. DC-0752-25-1783-I-1
                                           )
U.S. DEPARTMENT OF HOMELAND                )
SECURITY                                   )
                                           )
          Agency.                          )          Date: April 22, 2025
_____)

### DECLARATION OF CAMERON HAMILTON

1.  I serve as the Senior Official Performing the Duties of the Administrator of the Federal Emergency Management Agency (FEMA) headquartered in Washington, D.C. I began serving in that role on January 20, 2025. FEMA is a component of the Department of Homeland Security (DHS). I make this Declaration based on my own personal knowledge, on information contained in the records of the FEMA and/or DHS, or on information provided to me by FEMA and/or DHS employees.

2.  On February 10, 2025, a $59M payment to the New York City (NYC) Office of Management and Budget (OMB) under FEMA's Sheltering and Services Program (SSP) was flagged as a violation of the Secretary's January 28, 2025, direction in her memorandum " *Direction on Grants to Non-Governmental Organizations.*

3.  FEMA took action to address the erroneous payment to include stopping all payments to entities under SSP and other grant programs, initiating manual de-committing and de-obligation of lines of accounting and engaging with the U.S. Treasury Department to claw back three (3)

payments under SSP totaling $83M.

4. On February 9, 2025, I was contacted and requested to provide information to the Office of the President regarding the completion of the flagged payment to include identifying the names of individuals involved.

5. On February 11, 2025, I received instruction that four (4) FEMA employees involved in processing the flagged payment were to be immediately terminated per a direction from the President.

6. As I was on official travel on February 11, 2025, and unavailable to sign the notices of termination, MaryAnn Tierney, the Senior Official Performing the Duties of the Deputy Administrator at the FEMA, issued notices of termination to the 4 employees, to include Ms. Mary Comans. As the President had directed DHS to terminate the individuals, each termination was completed pursuant to the President's authority under Article II of the U.S. Constitution.

Pursuant to 18 U.S.C. § 1001 I hereby declare the foregoing to be true and correct.

Signed this date:

_____     April 22, 2025
Cameron Hamilton                              Date
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency
U.S. Department of Homeland Security

2

**U.S. Department of Homeland Security**
Washington, DC 20528



## MEMORANDUM

TO:        Mary Comans
           Chief Financial Officer
           Federal Emergency Management Association

FROM:      MaryAnn Tierney
           Senior Official Performing the Duties of the Deputy Administrator
           Federal Emergency Management Association

SUBJECT:   Notice of Termination

DATE:      February 11, 2025

This is an official notice that, effective immediately, you are being removed from your position with the Federal Emergency Management Agency and from Federal service.  This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President. Article II, § 1 states that the executive Power "shall be vested in a President of the United States of America," and this termination is an exercise of that vested power.

**INSTRUCTIONS:** As of February 11, 2025, your access to all DHS systems will be terminated. You must turn in all Government-issued equipment including but not limited to cellular phones, laptop computers, iPhone-type devices, keys, and any DHS office files or back-up (key drives/discs) computer files you have in your possession. You must also ensure your DHS-issued credentials and access cards, to include a parking permit and/or government issued transit subsidy, are returned at this time.  You are instructed to provide a personal e-mail address where you can be contacted to make further arrangements.

---------------------------------------------------------------------------------------------------------------------

## ACKNOWLEDGEMENT OF RECEIPT:

Please sign the acknowledgement of receipt below.  Your signature does not indicate agreement or disagreement with the contents of this document; it only serves as verification of your receipt of it.  Conversely, your refusal to sign[1] will not invalidate this document.

---

[1] If the employee refuses to sign acknowledging receipt, the supervisor should so annotate this on the file copy of this document.

2

2

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| COMANS, MARY FRANCIS F | 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 | 08/27/1978 | 02/11/2025 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| **5–A. Code** 330 | **5–B. Nature of Action** REMOVAL | **6–A. Code** | **6–B. Nature of Action** |
| **5–C. Code** ZLM | **5–D. Legal Authority** ARTICLE II 1 OF UNIT | **6–C. Code** | **6–D. Legal Authority** |
| **5–E. Code** | **5–F. Legal Authority** | **6–E. Code** | **6–F. Legal Authority** |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| CHIEF FINANCIAL OFFICER 90977722  0EN033 | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19.Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES | 0505 | 00 | 00 | 225,700.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 225,700.00 | .00 | 225,700.00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| FEDERAL EMERGENCY MGMT AGENCY Off of Chief Financial Officer | EM HS CB0300000000000000   PP 04 2025 |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1   1 – None   2 – 5–Point   3 – 10–Point/Disability   4 – 10–Point/Compensable   5 – 10–Point/Other   6 – 10–Point/Compensable/30% | 0   0 – None   1 – Permanent   2 – Conditional   3 – Indefinite | | YES    X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0  BASIC | 9  NOT APPLICABLE | 0  NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS AND FICA | 07/25/2004 | F  FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 3   1 – Competitive Service   2 – Excepted Service   3 – SES General   4 – SES Career Reserved | E   E – Exempt   N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON  DIST OF COLUMBIA  DC |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

**45. Remarks**

SF-2819 WAS PROVIDED. LIFE INSURANCE COVERAGE IS EXTENDED FOR 31 DAYS
DURING WHICH YOU ARE ELIGIBLE TO CONVERT TO AN INDIVIDUAL POLICY (NON-
GROUP CONTRACT).
HEALTH BENEFITS COVERAGE IS EXTENDED FOR 31 DAYS DURING WHICH YOU ARE
ELIGIBLE TO CONVERT TO INDIVIDUAL POLICY (NONGROUP CONTRACT). YOU ARE
ALSO ELIGIBLE FOR TEMP CONTINUATION OF YOUR FEHB COVERAGE FOR UP TO
18 MTHS
FORWARDING ADDRESS= 1317 SOUTH GLEBE ARLINGTON, VA 22204
"          "  :
LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
REASON(S) FOR REMOVAL:ARTICLE II OF THE UNITED STATES CONSTITUTION,
AT THE DIRECTION OF THE PRESIDENT. ARTICLE II STATES THAT THE EXECUTIVE
POWER SHALL BE VESTED IN A PRESIDENT OF THE UNITED STATES OF AMERICA

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| HOMELAND SECURITY | ELECTRONICALLY SIGNED BY: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | PURNITA FIELDS |
|---|---|---|---|
| HSCB | 4293 | 02/09/2025 | DIRECTOR, EXECUTIVE RESOURCES |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

Document Number: 3380808

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

MSPB Page 18 of 19

e-Appeal Submission: 04/25/2025 10:07 AM ET

# Certificate of Service

e-Appeal has handled service of the assembled pleading to MSPB and the following Parties.

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Washington Regional Office | Agency Motion to Dismiss | e-Appeal |
| Darbo, Ashley | Agency Motion to Dismiss | e-Appeal |
| Moss, Bradley | Agency Motion to Dismiss | e-Appeal |
| Zaid, Mark | Agency Motion to Dismiss | e-Appeal |

I agree to send a printed copy of the electronic pleading with attachments to all parties by the end of next business day, as follows:

| Name & Address | Documents | Method of Service |
|---|---|---|
| Comans, Mary<br><br>1317 S Glebe Road Arlington, Virginia 22203 United States of America | Agency Motion to Dismiss | US Mail |