**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| MARY COMANS,<br><br>        *Plaintiff*,<br><br>            *v.*<br><br>EXECUTIVE OFFICE OF THE PRESIDENT;<br>DEPARTMENT OF HOMELAND SECURITY;<br>and UNITED STATES OF AMERICA,<br><br>        *Defendants*. | No. 1:25-cv-01237-MSN-WEF |

**DEFENDANTS' REPLY IN SUPPORT OF
RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.     THE FIRST STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION
          OF JURISDICTION ................................................................................................. 2

    II.    THE SECOND STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION
          OF JURISDICTION ................................................................................................. 8

    III.   THE SAME ANALYSIS REQUIRES DISMISSING MS. COMANS'S LIBERTY-
          INTEREST CLAIM IN FAVOR OF APPEAL TO THE MSPB ......................................... 11

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Axon Enterprises, Inc. v. FTC,*
  598 U.S. 175 (2023)............................................................................................ 10, 11

*Bennett v. SEC,*
  844 F.3d 174 (4th Cir. 2016) ............................................................................... 8

*Board of Regents v. Roth,*
  408 U.S. 564 (1972)............................................................................................ 14

*Bosse v. Oklahoma,*
  580 U.S. 1 (2016)................................................................................................ 2

*Cannon v. Village of Bald Head Island,*
  891 F.3d 489 (4th Cir. 2018) ............................................................................. 14

*Carr v. Saul,*
  593 U.S. 83 (2021).............................................................................................. 7

*Cox v. N. Va. Transp. Comm'n,*
  551 F.2d 555 (4th Cir. 1976) ............................................................................. 14

*El v. U.S. Department of Commerce,*
  No. 2:15-cv-00532, 2016 WL 9113570 (E.D. Va. July 19, 2016)................................ 13, 14,15

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012)...................................................................................... *passim*

*Filebark v. U.S. Dep't of Transp.,*
  555 F.3d 1009 (D.C. Cir. 2009) .......................................................................... 8

*Fornaro v. James,*
  416 F.3d 63 (D.C. Cir. 2005) ............................................................................. 8

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
  561 U.S. 477 (2010)................................................................................... *passim*

*Gibbs v. Brady,*
  773 F. Supp. 454 (D.D.C. 1991) ........................................................................ 15

*Hall v. Clinton,*
  235 F.3d 202 (4th Cir. 2000) ............................................................................. 13, 15

*Heckler v. Ringer*,
  466 U.S. 602 (1984) ................................................................................................ 7

*Jaroch v. DOJ*,
  No. DA-0752-25-0328-I-1, 2025 WL 2476809 (MSPB Aug. 22, 2025) ....................... 7, 11, 15

*Kontrick v. Ryan*,
  540 U.S. 443 (2004) ................................................................................................ 9

*Mallory v. Norfolk Southern Railway Co.*,
  600 U.S. 122 (2023) ................................................................................................ 3

*National Association of Immigration Judges v. Owen*,
  139 F.4th 293 (4th Cir. 2025) ............................................................................. 5, 6, 8

*Radin v. United States*,
  699 F.2d 681 (4th Cir. 1983) ................................................................................... 15

*Robertson v. Rogers*,
  679 F.2d 1090 (4th Cir. 1982) ................................................................................. 14

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
  490 U.S. 477 (1989) ................................................................................................ 3

*Sciolino v. City of Newport News*,
  480 F.3d 642 (4th Cir. 2007) ................................................................................... 14

*Shirvinski v. U.S. Coast Guard*,
  673 F.3d 308 (4th Cir. 2012) ................................................................................... 14

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) ................................................................................................. 2, 3

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ......................................................................................... 1, 2, 8, 9

*United States v. Fausto*,
  484 U.S. 439 (1988) ......................................................................................... 1, 4, 5, 6

*United States v. Hatter*,
  532 U.S. 557 (2001) ................................................................................................ 2

*Zimbelman v. Savage*,
  228 F.3d 367 (4th Cir. 2000) ............................................................................ 12, 13, 16

iv

**Statutes**

5 U.S.C. § 1204 ................................................................................................................ 7

5 U.S.C. § 7701 ................................................................................................................ 7

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................ 10

Fed. R. Civ. P. 12 .......................................................................................................... 10

**Regulations**

5 C.F.R. § 1201.115 ........................................................................................................ 7

Exec. Order No. 14215, *Ensuring Accountability for All Agencies*,
    90 Fed. Reg. 10447 (Feb. 18, 2025) ............................................................................ 5

**INTRODUCTION**

Binding precedent requires Ms. Comans to seek the relief she desires exclusively before the Merit Systems Protection Board (MSPB)—which she has done, and where her appeal challenging her removal is pending.  Determined to bring a parallel challenge to her removal in this Court—but without caselaw to lean on—she urges the Court to chart a new path at each step of the *Thunder Basin* framework that guides the analysis of whether a statutory special review provision (here, the Civil Service Reform Act of 1978) channels judicial review away from district courts.  At the first step, she urges the Court to ignore binding precedent altogether because those cases "would not have been the same if the [higher courts] had been aware that a central element of the [CSRA's] scheme … was no longer in place."  Br. at 16.  At the second step, she urges the Court to inquire not, as precedent requires, whether her claims "are of the type Congress intended to be reviewed within [the CSRA's] statutory structure," *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994), but rather whether the *defenses* she anticipates the Government will raise are those appropriate for MSPB review.

The Court should not entertain those substantial deviations from settled law.  As the Supreme Court has repeatedly explained, the CSRA channels claims challenging removal from federal employment to the MSPB and the Federal Circuit, thereby bringing uniformity and order in place of the "patchwork" and "wasteful" system of review that had preceded the statute.  *See United States v. Fausto*, 484 U.S. 439, 444–45 (1988).  To that end, the MSPB continues to serve precisely the role Congress intended for it, and the Federal Circuit remains available to provide fulsome judicial review to any employee dissatisfied with the outcome of the MSPB's administrative review.  For those reasons, judicial review is not available in federal district court, and the Court should dismiss Ms. Comans's Complaint for lack of jurisdiction.

**ARGUMENT**

**I.     THE FIRST STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION OF JURISDICTION**

Ms. Comans does not dispute that the jurisdictional inquiry here requires evaluating whether "congressional intent to strip [d]istrict [c]ourts of their ordinary jurisdiction to resolve federal questions is 'fairly discernible in the [CSRA's] statutory scheme.'"  Br. at 3 (quoting *Thunder Basin*, 510 U.S. at 207).  The Supreme Court has already answered that question.  "[T]he CSRA's elaborate framework … indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review."  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (quotation cleaned).  "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."  *Id.* at 11–12.

So Ms. Comans urges this Court to disregard the Supreme Court.  She admits as much— but insists that the Court may do so because *Elgin* and its progeny "preceded … radical and unprecedented changes" at the MSPB.  Br. at 15.  But as the Supreme Court has *repeatedly* emphasized, "it is [the Supreme] Court's prerogative alone to overrule one of its precedents."  *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *United States v. Hatter*, 532 U.S. 557, 567 (2001) (same); *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (same).  And this is true even if the relevant precedent suffers from every kind of infirmity Ms. Comans purports to have identified in *Fausto*, *Elgin*, and their progeny.  In *State Oil*, for instance, a lower court characterized an on-point Supreme Court case as one beset with "infirmities" and "increasingly wobbly, moth-eaten foundations," but abided by it nonetheless; the Supreme Court approvingly observed that the lower court "was correct in applying that [case] despite disagreement" with it, because only the Supreme Court could

2

do away with precedent binding the lower courts. 522 U.S. at 20. In *Mallory v. Norfolk Southern Railway Co.*, by contrast, the Supreme Court chided the court below for failing to "follow the case which directly controls … even if the lower court thinks the precedent is in tension with some other line of decisions." 600 U.S. 122, 137 (2023) (quotation cleaned). And in yet another case, the Court explained: "[i]f a precedent of th[e] [Supreme] Court had direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

That enormity of precedent dismantles Ms. Comans's argument that jurisdiction obtains here because in her view, *Elgin* and *Fausto* "would not have been the same if the [Supreme] Court had been aware that a central element of the [CSRA's] scheme of review … was no longer in place." Br. at 16. The teaching of *State Oil*, *Mallory*, and *Rodriguez* is that a *holding* of the Supreme Court is binding on lower courts until the Supreme Court says otherwise, even if the *reasons* underpinning that holding wither away (which is not the case here, as detailed below).

Still, the bulk of Ms. Comans's arguments have to do with whether, in her view, the MSPB—an agency housed within the Executive Branch—is sufficiently "independent" from the very head of that branch (the President). On its own merits, that argument could only succeed in securing jurisdiction here if its critical underlying premise were true: that if the MSPB were *not* sufficiently insulated from a democratically elected, politically accountable President, the CSRA's exclusive scheme should be snuffed out altogether. But the Supreme Court has flatly rejected that scorched-earth approach to the aftermath of changes to removal protections for officials within a broader statutory scheme. Take *Free Enterprise Fund v. Public Company Accounting Oversight Board*, for instance. 561 U.S. 477 (2010). There, the Supreme Court agreed with the petitioners

3

that multiple levels of for-cause removal protections for members of the Public Company Accounting Oversight Board ("PCAOB") were "incompatible with the Constitution's separation of powers." *Id.* at 498. But the petitioners urged the Court to go even further, arguing that the PCAOB's "freedom from presidential oversight and control" rendered the entire body, and all of the authority it exercised, "in violation of the Constitution." *Id.* at 508. The Court disagreed, refusing to jettison the entirety of the statutory scheme in favor of severing the unlawful provisions: "[W]hen confronting a constitutional flaw in a statute, we try to limit the solution to the problem" in the statute "while leaving the remainder intact." *Id.* at 508. And because the statute's provisions were "not incapable of functioning independently," undoing the PCAOB's removal protections did not require scrapping the agency altogether. *Id.* at 509 (quotation cleaned). There was no reason to believe, the Court concluded, "that Congress, faced with the limitations imposed by the Constitution, would have preferred no [PCAOB] at all to a [PCAOB] whose members are removable at will." *Ibid.*

Just so here. The Supreme Court has explained that prior to the CSRA, aggrieved federal employees needed to navigate an "outdated patchwork of statutes and rules" that produced "wide variations in the kinds of decisions issued on the same or similar matters" and a "wasteful and irrational" system of judicial review. *Fausto*, 484 U.S. at 444–45 (quotation cleaned). "Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. And "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" reflects Congress's desire to channel such claims to the MSPB. *Elgin*, 567 U.S. at 11–12. That scheme, and the historical

4

reality that gave rise to it, puts to bed any notion that "Congress … would have preferred no [MSPB] at all to a[n] [MSPB] whose members are removable at will." *Cf. Free Enterprise Fund*, 561 U.S. at 509. To the contrary, the MSPB continues to play a critical role in Congress's plan for the "sound and efficient administration" of federal personnel claims, *Fausto*, 484 U.S. at 445, and nothing about the President's assertion of his constitutional removal power calls into question any one of those statutory features the Supreme Court has held to preclude district-court jurisdiction under the *Thunder Basin* framework. The same logic likewise extends to the President's assertion of authority to "'provide authoritative interpretations of law for the executive branch.'" Br. at 11 (quoting Exec. Order No. 14215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447, 10448 (Feb. 18, 2025)).

For the same reasons, Ms. Comans cannot prevail on her argument that the Fourth Circuit's decision in *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) (hereinafter *NAIJ*), strips the CSRA of its jurisdiction-channeling effect in this case. Although she characterizes the Fourth Circuit has having "held" that "the central rationale of [*Fausto*, *Elgin*, and their progeny] no longer applies," Br. at 3, that is not what the Fourth Circuit said. Instead, it explained that *Elgin* was predicated on the assumption that the CSRA would "function[] as Congress intended," 139 F.4th at 305, and it hypothesized two reasons for the district court to reconsider, in the first instance, why that assumption might no longer be true. *First*, it noted that the President had removed the Special Counsel and a member of the Board (temporarily rendering the Board without a quorum), and suggested that the CSRA's "framework" might not function "[i]f … the Senate-confirmed roles in the MSPB and Special Counsel go unfilled." *Id.* at 305. But that point is of no moment in this case, where the Special Counsel plays no role and the Board now has a Senate-confirmed quorum. *Second*, the Fourth Circuit suggested that "Congress may well

5

have intended the CSRA to strip district courts of jurisdiction only because it understood that the President could not exercise unfettered control over the Special Counsel and MSPB." 139 F.4th at 307. So it remanded that issue, "should it arise" upon resolution to the contrary by the Supreme Court, to the district court to consider in the first instance. *Ibid.* But again, no matter the President's exercise of his removal power, the CSRA is best understood to maintain its preclusive effect because the MSPB continues to perform precisely the essential task Congress envisioned for it at the enactment of the CSRA: providing a single administrative body for federal-employment disputes, thereby ensuring a uniform system of remedies and body of law. And of course, adequate and independent review of any claim brought to the MSPB remains available in the Federal Circuit.

Tacitly acknowledging the MSPB's continued viability, Ms. Comans herself has appealed her removal to the MSPB and has asked it for the very same relief she seeks here. *See* Compl. ¶ 31. In other words, she makes no effort to challenge the legitimacy of the MSPB or of any relief she may one day obtain from the proceedings she has initiated in that forum. For good reason: if the MSPB really were an illegitimate forum as applied to Ms. Comans, it would necessarily be illegitimate as to *all* ongoing proceedings in that forum, resulting in thousands of federal-employee suits flooding the federal district courts—despite Congress's dedication of a specific administrative entity to adjudicate those claims. So to avoid making an argument of such breathtaking consequence, Ms. Comans is cabined to a more conservative position: that the President's assertion of his constitutional authority opens a second, *parallel* avenue to relief in district court without necessarily depriving the MSPB of its legitimacy. But again, that makes little sense given Congress's efforts, in creating the MSPB, to do away with the "wasteful and irrational" system of judicial review that had preceded it. *Fausto*, 484 U.S. at 445.

6

Finally, Ms. Comans argues that "[r]etention of jurisdiction by this Court is … commanded" by an alternative to the *Thunder Basin* framework altogether: "traditional futility doctrine," which she describes as an "exception to exhaustion requirements" that applies when "'adjudicators … are powerless to grant the relief requested.'"  Br. at 14 (quoting *Carr v. Saul*, 593 U.S. 83, 93 (2021)).  That argument fails twice over.  For starters, the MSPB was created specifically to exercise the power to grant the relief requested in this case, *cf. Elgin*, 567 U.S. at 6 ("MSPB is authorized to order relief … including reinstatement, backpay, and attorney's fees" (citing 5 U.S.C. §§ 1204(a)(2), 7701(g))), and Ms. Comans cites no examples in which the MSPB denied relief because of the President's "authority to terminate [an employee] without just cause or any due process," Br. at 15.  In fact, in the most recent MSPB decision that Ms. Comans cites, an administrative judge *did* grant the aggrieved former federal employee relief while refusing to consider the "Article II authority" argument that Ms. Comans cites as the linchpin of futility here.  *See id.* at 20 (citing *Jaroch v. DOJ*, No. DA-0752-25-0328-I-1, 2025 WL 2476809 (MSPB Aug. 22, 2025)[1]).

But more to the point, Ms. Comans's futility argument fails because this is not an exhaustion case.  In its opening brief, the Government explained that in the context of mandamus jurisdiction, no court could grant relief to a plaintiff who had not first "exhausted all other avenues of relief."  ECF #27 at 16–17 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  But even if Ms. Comans had exhausted her administrative remedies, that still would not trigger district-court jurisdiction for *any* of her asserted theories of relief, because again, the CSRA's "statutory review scheme is exclusive."  *Elgin*, 567 U.S. at 13.  As the D.C. Circuit has repeatedly stated, "'what you

---

[1] Consistent with 5 C.F.R. § 1201.115, the Department of Justice has filed a petition for review of the administrative judge's initial decision to the full Board.

get under the CSRA is what you get.'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) (quoting *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.)). If Ms. Comans does not prevail under the CSRA's review scheme, she cannot obtain relief at all.

## II.    THE SECOND STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION OF JURISDICTION

The second step of the *Thunder Basin* inquiry likewise requires dismissing this case in favor of appeal to the MSPB. That step asks whether Ms. Comans's claims "are of the type Congress intended to be reviewed within [the CSRA's] statutory structure." *Thunder Basin*, 510 U.S. at 212. Again, the Supreme Court decided that question in *Elgin*. "The CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue.*" *Elgin*, 567 U.S. at 18 (emphasis added). Ms. Comans concedes that she is covered by the CSRA, *see* Compl. ¶ 27, and "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," *Elgin*, 567 U.S. at 22. That should end the inquiry.

Ms. Comans resists this straightforward conclusion. And she does so by quietly—but fundamentally—altering the governing standard. Consider *Thunder Basin*'s articulation of the test: "whether petitioner's claims are of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 212. (The petitioner in that case was the plaintiff.) Then *Elgin*'s articulation of the argument: "Petitioners raise … additional factors in arguing that *their claims* are not the type that Congress intended to be reviewed within the CSRA scheme." 567 U.S. at 15 (emphasis added). (The petitioners, again, were the plaintiffs.) And now the Fourth Circuit's repeated articulation of the standard: "'whether [the] plaintiffs' claims are of the type Congress intended to be reviewed within this statutory structure.'" *NAIJ*, 139 F.4th at 308 (quoting *Bennett v. SEC*, 844 F.3d 174, 181 (4th Cir. 2016). Examples abound, all reflecting a subtle, but critical,

8

point: that the second *Thunder Basin* factor evaluates whether a "claim," brought by a plaintiff, is of the type Congress intended to be reviewed within the relevant statutory scheme. *See also Free Enterprise Fund*, 561 U.S. at 487 (evaluating claim, brought in district court by subject of PCAOB investigation, seeking declaratory judgment that PCAOB is unconstitutional).

Now consider Ms. Comans's articulation of the test: "'whether [the] claims are of the type Congress intended to be reviewed within this statutory structure.'"  Br. at 16 (quoting *Thunder Basin*, 510 U.S. at 212) (alteration in original).  That alteration takes the identity of the relevant party—*i.e.*, the petitioner-plaintiff—out of the picture.  And then the punchline: that there can be no preclusion of jurisdiction "where *Defendants* make the … *claim* that the CSRA is unconstitutional as applied to the President." *Id.* at 16–17 (emphasis added).

That completely reinvents the second step of the *Thunder Basin* analysis.  Ms. Comans's argument leans repeatedly—and exclusively—on those litigating positions she alleges the Government to have taken in MSPB proceedings: "Defendants argue that the CSRA is unconstitutional as applied," *id.* at 17; "that is, in fact, Defendants' position," *ibid.*; "[a] claim that the CSRA is unconstitutional is not the type of claim Congress intended to be reviewed by the MSPB," *ibid.*; "the government's argument in this case is … that the MSPB itself would violate the Constitution if it applied the CSRA" in this context, *id.* at 18; "[t]he [G]overnment argues that the MSPB is without authority under the Constitution" to side with Ms. Comans, *ibid.*; the Government's position "is a novel, structural, constitutional challenge to Congress'[s] authority," *ibid.*  But none of this matters.  After all, "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct." *Kontrick v. Ryan*, 540 U.S. 443, 444–45 (2004).  And though litigants often colloquially describe their opponents' arguments as "claims," that is not what that term means in a legal sense.  As the cases quoted above reflect—and in light of the

9

identity, each time, of the source of the "claims" at issue—the term refers to those *claims for relief* brought forth *by a plaintiff* in the complaint. *Cf.* Fed. R. Civ. P. 8(a)–(b) (describing requirements for stating "a claim for relief" as opposed to "defenses"); Fed. R. Civ. P. 12(b)(6) (permitting motions for dismissal for "failure to state a claim upon which relief can be granted"). And here, Ms. Comans has not argued that the CSRA is unconstitutional, or brought any "novel, structural, constitutional challenge to Congress'[s] authority." Br. at 18. Instead, she has brought straightforward claims challenging her removal from the federal civil service—that is, claims "precisely the type … regularly adjudicated by the MSPB," *Elgin*, 567 U.S. at 22, and precisely the type addressed by *Elgin*. Under the *Thunder Basin* framework, her claims are out of the reach of district-court jurisdiction.

For the same reasons, Ms. Comans is wrong to analogize this case to *Free Enterprise Fund*. Br. at 18–20. In that case, the subject of an investigation by the PCAOB sued in district court seeking a declaratory judgment that the PCAOB was unconstitutional, and an injunction preventing that agency from exercising its powers. 561 U.S. at 487. The Supreme Court held that the district court had jurisdiction over that claim for relief because the plaintiffs could not otherwise "meaningfully pursue" their claims. *Id.* at 490. But Ms. Comans does not "charge that an agency is wielding authority unconstitutionally," Br. at 19 (quoting *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175, 189 (2023)); she *can* meaningfully pursue her claims in the MSPB, and has, in fact, done so, *see* Compl. ¶ 31. It makes no sense to retort, as Ms. Comans does, that she may nevertheless sue in district court because of her concern that *the Government* will be prevented from meaningfully pursuing its *defenses* in the MSPB. Br. at 19–20. After all, if Ms. Comans is correct that the MSPB cannot consider the Government's defenses, the result—as reflected in the very example she cites from just a few months ago—would be an MSPB decision *in Ms. Comans's*

10

*favor*. *See id.* at 20 (quoting *Jaroch*, 2025 WL 2476809, in which MSPB administrative judge reversed appellant's removal after concluding it could not entertain agency's argument that "Article II of the Constitution precludes the application of the removal protections afforded under the" CSRA). Needless to say, the specter of *success* is hardly a basis upon which Ms. Comans can complain about being compelled to proceed before the MSPB.

Finally, Ms. Comans's analogy to *Axon* likewise falls flat. Br. at 21–22. There, respondents in administrative enforcement actions sued in district court to enjoin the administrative proceedings that certain agencies had initiated against them, arguing that those proceedings were unlawful because the agencies were structured in a constitutionally problematic manner. 598 U.S. at 182. The Supreme Court held that such claims are not channeled to exclusive administrative review because the claim was not about the outcome of the enforcement action, but about "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," *even if* the respondents ultimately prevailed in the enforcement actions brought against them. *Id.* at 191. That is nothing like this case, where Ms. Comans has affirmatively sought relief from the MSPB and has not asserted a structural challenge to the constitutional legitimacy of its operations. Her bare assertion that the President's removal of Board members "invades Congress' authority under Article I," Br. at 22, does not suffice to transform this case into a challenge to the constitutional legitimacy of the MSPB: a Board composed of removable, rather than non-removable, members violates no part of the federal Constitution, thereby rendering this case altogether distinct from *Axon*. Ms. Comans offers no argument to the contrary.

**III.    THE SAME ANALYSIS REQUIRES DISMISSING MS. COMANS'S LIBERTY-INTEREST CLAIM IN FAVOR OF APPEAL TO THE MSPB**

Ms. Comans argues that even if the Court were to dismiss every other claim, it should not dismiss her Fifth Amendment liberty-interest claim (Count II), because, in her view, "a liberty

interest claim is not an unlawful-removal claim." Br. at 29 (quotation cleaned). That misses the point: the liberty-interest claim, like every other claim in this case, is an effort to vindicate Ms. Comans in her removal from the federal civil service. The crux of that claim is that because, in her view, she was not given an opportunity to be heard prior to her termination, she was "deprived … of the ability to challenge the accuracy of the evidence … that the Defendants falsely claimed was the stated basis for her removal." Compl. ¶ 41. Such a claim plainly arises out of an adverse action covered by the CSRA. As *Elgin* makes clear, that claim belongs in the MSPB, and Ms. Comans's efforts to cast that claim in a new light cannot suffice to secure jurisdiction here.

Even before *Elgin*, the Fourth Circuit recognized as much. In *Zimbelman v. Savage*, the plaintiffs, former federal employees, alleged the same violation of the their Fifth Amendment "right to preserve their reputations" that Ms. Comans asserts here: that "false accusations caused each of them to lose gainful employment and the opportunity for future employment," and that "they did not have the constitutionally required opportunity to clear their names." 228 F.3d 367, 370 (4th Cir. 2000). The district court denied the Government's motion to dismiss as to the Fifth Amendment claim; the Fourth Circuit unanimously reversed. "[F]ederal personnel matters are governed by the CSRA," the Court explained, which "constitutes a comprehensive set of procedural and substantive provisions governing the rights of federal employees." *Ibid.* Accordingly, the plaintiffs' claims that they were not "grant[ed] … a name-clearing hearing" "before losing their federal jobs" could not proceed: the plaintiffs' claims, the Court observed, "*indisputably* [arose] from a federal employment relationship." *Ibid.* (emphasis added). And because the CSRA is the "*exclusive* remedial framework" for such claims, the Court "reversed and remanded with instructions to dismiss [the] plaintiffs' Fifth Amendment claim." *Id.* at 370–71 (emphasis added).

12

Months later, the Fourth Circuit doubled down on that conclusion. In *Hall v. Clinton*, a federal employee in the Executive Office of the President was continually demoted while memoranda disparaging her were circulated among White House officials. 235 F.3d 202, 203–04 (4th Cir. 2000). She received no prior notice or reasonable opportunity to defend herself against the allegations contained therein. *Id.* at 204. So she sued, claiming that the transmission of the "false memoranda disparaging her … violated [her] liberty interest in her reputation without affording her the due process of law required by the Fifth Amendment to the United States Constitution." *Ibid.* The district court dismissed her claim, determining that it lacked subject-matter jurisdiction because of the CSRA's jurisdiction-precluding effects. *See ibid.* And the Fourth Circuit affirmed, for the same reason. "The salient fact here," the Court explained, "is that the wrongful acts [that the plaintiff] alleges were taken against her arose out of her federal employment relationship." *Id.* at 205. "That the CSRA does not provide the remedy that she would prefer is of no moment": the CSRA's exclusive remedial scheme meant that federal district courts could not exercise subject-matter jurisdiction over the claim. *Ibid.*

Those cases should leave no doubt: Ms. Comans's liberty-interest claim, like all her claims, arises out of her federal employment relationship and therefore cannot be brought in federal district court. And in a very similar case, a court in this district has already reached that conclusion. In *El v. U.S. Department of Commerce*, a former employee of the Department of Commerce claimed a violation of his Fifth Amendment due-process rights when the Department terminated him and "falsely alleg[ed] that he had misused his government travel card, knowing that the false allegation would irreparably harm [his] good name and reputation." No. 2:15-cv-00532, 2016 WL 9113570, at *2 (E.D. Va. July 19, 2016), *aff'd*, 678 F. App'x 99 (4th Cir. 2017). Citing *Hall* and *Zimbelman*, the court held that it lacked jurisdiction to entertain that claim because, as in both

13

Fourth Circuit cases, it "clearly" arose "out of [the] [p]laintiff's federal employment." *Id.* at *4–5. Faced with a near-identical circumstance here, this Court should reach the same conclusion.

None of Ms. Comans's cited cases counsels to the contrary. Of the Supreme Court and Fourth Circuit cases upon which she relies, all but one involved liberty-interest claims brought against a non-federal employer. *See* Br. at 23–26 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Robertson v. Rogers*, 679 F.2d 1090 (4th Cir. 1982); *Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555 (4th Cir. 1976); *Cannon v. Village of Bald Head Island*, 891 F.3d 489 (4th Cir. 2018); *Sciolino v. City of Newport News*, 480 F.3d 642 (4th Cir. 2007)). And when the defendant government employer is non-federal, the CSRA (and its attendant preclusion of jurisdiction) simply does not apply. The one outlier is *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308 (4th Cir. 2012) (cited at Br. at 23), but in that case, the plaintiff was "a subcontractor to a subcontractor to a prime contractor with a federal agency"—in other words, "neither an employee of nor in a direct contractual relationship with the" federal government, *id.* at 312, 315. Again, the CSRA would not apply, so again, that case simply does not inform the resolution of this one.

Instead, in keeping with *Zimbelman* and *Hall*, and as with the rest of Ms. Comans's claims, the *Thunder Basin* test requires channeling the liberty-interest claim to the MSPB. Meaningful judicial review of the claim obtains in the Federal Circuit via the MSPB. The claim is not "wholly collateral" to the CSRA's review scheme because it arises out of Ms. Comans's federal employment relationship with DHS, a relationship the CSRA is designed to govern. And the claim is not outside the MSPB's expertise because it involves a due-process claim arising from the termination of Ms. Comans's federal employment relationship—the kind of circumstance the MSPB was designed to address. To that end, the MSPB regularly adjudicates claims that an aggrieved employee was not provided an adequate opportunity to be heard in the course of her

14

termination.  *See, e.g., Jaroch*, 2025 WL 2476809 (finding violation of aggrieved employee's due-process rights due to lack of opportunity to be heard on circumstances of removal); *see also Gibbs v. Brady*, 773 F. Supp. 454, 457 (D.D.C. 1991) ("following a personnel action that implicates a liberty interest … Plaintiff received an adequate opportunity to address the charges against her and to clear her name at the hearing before the MSPB").

One final point.  The scope of the relief that Ms. Comans seeks for her liberty-interest claim is somewhat unclear.  The Complaint asks for "a name-clearing hearing regarding the false public statements regarding her actions and the basis for her removal," Compl. ¶ 43, and makes no mention of damages.  Her brief, however, for the first time in this case, suggests that the MSPB cannot exercise exclusive jurisdiction here specifically because it cannot "grant [her] the form of compensatory damages" to which she is "entitled" on her liberty-interest claim.  Br. at 26–27.  That argument also fails.  As an initial matter, not even this Court could grant Ms. Comans damages for her liberty-interest claim because the federal Government has "not waived sovereign immunity for suits seeking damages based on allegations of constitutional violations."  *El*, 2016 WL 9113570, at *4 (citing *Radin v. United States*, 699 F.2d 681, 684–85 (4th Cir. 1983)).  But in any event, whatever the remedy sought, the same argument for jurisdiction-preclusion applies: jurisdiction depends "only on the nature of the employee and the employment action at issue," *Elgin*, 567 U.S. at 18; the CSRA's review scheme is "exclusive," *id.* at 13, 23; and "[t]hat the CSRA does not provide the remedy that [Ms. Comans] would prefer is of no moment" for jurisdictional purposes, *Hall*, 235 F.3d at 205.

\*          \*          \*

Under binding precedent, Ms. Comans's liberty-interest claim "indisputably" arises out of her employment relationship with the federal government—in particular, the termination of that

15

relationship. *Zimbelman*, 228 F.3d at 370. That relationship, and her removal from federal employment, fall squarely within the CSRA's exclusive remedial scheme. Accordingly, her liberty-interest claim, like the rest, belongs exclusively in the MSPB.

**CONCLUSION**

The Court should dismiss Ms. Comans's Complaint, in its entirety, for lack of jurisdiction.[2]


JANUARY 26, 2026

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

      /s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Respectfully submitted,*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Cesar Azrak*
CESAR AZRAK
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-0693
Email: cesar.e.azrak@usdoj.gov

*Counsel for Defendants*

---

[2] The Court should deny Ms. Comans's request for jurisdictional discovery. Br. at 30 n.13. As binding precedent has repeatedly made clear, no set of facts would permit a district court to exercise jurisdiction over Ms. Comans's claims, which are "the vehicle by which [she] seek[s] to reverse the removal decision[]" and therefore falls in the wheelhouse of the MSPB's exclusive jurisdiction under the CSRA. *Elgin*, 567 U.S. at 22. Further, it is unclear what, if any, discovery could be had as to "the scope of the government's claim that when the President or a Department head invokes the President's Article II authority, the CSRA cannot constitutionally be applied." Br. at 30 n.13. Such legal questions cannot be answered by freewheeling discovery requests.