**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MARY COMANS,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | * * * * * * * * * * | Civil Action No. 1:25-cv-01237-MSN-WEF |

* * * * * * * * * * * * *

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**

In their Reply Memorandum, Doc. No. 31 at 12-14, Defendants cite three cases that were not cited in their original Memorandum in Support of Motion to Dismiss, Doc. No. 27, to suggest that Ms. Comans' liberty interest claim should be channeled to the MSPB. Defendants do not, however, dispute the fact that the MSPB cannot consider the claim or order Defendants to grant Ms. Comans a name-clearing hearing as we explained in our Opposition, Doc. No. 29 at 26-27.

The cited cases are inapposite.

In *Zimbelman v. Savage*, 228 F.3d 367 (4th Cir. 2000), the plaintiffs were fired "based on suspicions of theft, fraud, and other misconduct." *Id.* at 369. Thus, the statements giving rise to the alleged infringement of liberty were made as part of the termination process, unlike here, where government officials made public, false, and stigmatizing statements about Ms. Comans after she was terminated and outside any formal charges or disciplinary process. The Court concluded in *Zimbelman* that the plaintiffs' "claims indisputably arise from a federal employment relationship," *id*. at 370, but the same is not true here. And thus, the holding in *Zimbelman* that "the CSRA barred [plaintiffs] from obtaining judicial review of their

employment decisions" does not apply here because the public, false, and stigmatizing statements made about Ms. Comans were not made as part of any disciplinary process and thus were not the basis for any "employment decision[]." *Id*.

Moreover, in *Zimbelman*, the plaintiffs were accorded "internal appeals," *id*., in contrast to here where Ms. Comans was summarily fired and accorded no due process whatsoever. And those internal appeals figured expressly in the Court's holding, as it found that the fact that the plaintiffs "had other safeguards, in the form of internal appeals, available to them" was one factor that "counsel[ed] against plaintiffs' *Bivens* action." *Id*. at 371.

In addition, in *Zimbelman*, the Court found "no evidence . . . that the absence of more comprehensive procedural safeguards was inadvertent." *Id*. But that was because Congress "expressly" excluded plaintiffs and all non-appropriated fund instrumentality ("NAFI") employees from the protections of the CSRA. *See id.* at 369. Here, in contrast, Ms. Comans *was* protected by the CSRA and Congress surely expected that any false and stigmatizing statements federal officials made about protected employees would be made as part of the formal process for termination mandated by Congress in the CSRA, thus giving the employee a right to be heard to rebut the accusation. It was thus surely "inadvertent" that Congress did not provide protected employees like Ms. Comans a right to be heard when federal officials step outside the legislatively mandated process to malign them.

Finally, the Plaintiffs in *Zimbelman* filed *Bivens* actions seeking money damages from individual managers and supervisors in their individual capacities that were unavailable to them "where the 'special factor' of federal employment exists." *Id.* at 370. Here, Ms. Comans does not bring a *Bivens* action against individuals, but sues only the Executive Office of the President, the Department of Homeland Security, and the United States. *See* Doc No. 1, Complaint ¶¶ 4-6.

Similarly, *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000), was a *Bivens* action against Secretary Clinton and other federal officials in their individual capacities and the holding rested heavily on *Zimbelman*. *See Hall*, 235 F.3d at 203-05. And, as in *Zimbelman*, the alleged false and stigmatizing statements were made in internal communications that were alleged to have led to Hall's demotion rather than in public statements that were not part of the process leading to termination as here. *Id.* at 203-04. Moreover, as in *Zimbelman*, the *Hall* Court concluded that "congressional inaction has not been inadvertent" because the CSRA created a "framework for evaluating adverse personnel actions against [federal employees.]" 235 F.3d at 204 (quoting *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985)). But that conclusion does not apply here where the false and stigmatizing statements were made outside that "framework for evaluating adverse personnel actions."

Finally, in *El v. Dep't of Commerce*, No. 2:15cv532, 2016 WL 9113570 (E.D. Va. 2016), just as in both *Zimbelman* and *Hall*, the alleged false and stigmatizing statements were made as part of the formal process of discharging the plaintiff who was a probationary employee, indeed, in the formal notice of termination itself. *Id.* at *2. Thus, the Court concluded in *El* that plaintiff's claims arose "out of his 9 [sic] federal employment," *id*. at *4, and that "[t]he salient fact here is that the wrongful acts [the plaintiff] alleges were taken against her arose out of her federal employment relationship," *id*. at *5. But the same is not true here.

The factual differences between this case and *Zimbelman*, *Hall* and *El* make a critical difference both in relation to Congress' intent and Ms. Comans' rights. In the CSRA, Congress covered certain employees, like Ms. Comans, and excluded others, like the NAFI employees in *Zimbelman* and the probationary employee in *El*. Thus, there was no evidence that "the absence of more comprehensive procedural safeguards was inadvertent" as to the latter employees who

Congress expressly excluded from full protection. *Zimbelman*, 228 F.3d 371. But, as to the former, including Ms. Comans, Congress expected that federal employers would follow the procedures required by the CSRA, including providing prior notice of any allegations of misconduct and an opportunity to be heard. *See* 5 U.S.C. § 7513. Congress did not expect that federal employers and other federal actors would make false and stigmatizing statements about federal employees wholly outside the statutorily required procedures. Thus, in this case, there is clear "evidence . . . that the absence of more comprehensive procedural safeguards was inadvertent," *Zimbelman*, 228 F.3d at 371, and this Court should not follow the inapposite holdings in *Zimbelman*, *Hall* and *El*.

Finally, the critical factual difference between this case and the three cases cited by Defendants has profound consequences for Ms. Comans. If, as in *El*, for example, the false and stigmatizing statements about Ms. Comans had been made in her formal notice of termination, she would have had a right to notice and an opportunity to be heard concerning the charges against her both prior to her termination and at the MSPB. But, because the false and stigmatizing statements were not made as part of the process specified in the CSRA, Ms. Comans had no opportunity to be heard and the MSPB would not provide one because her employer did not cite any misconduct as grounds for her discharge. If Defendants were to be successful in forcing Ms. Comans to proceed before the MSPB, only two outcomes are possible: (1) the Board (and its Administrative Judges), now fully controlled by the President, could hold that the President had authority under Article II to fire Ms. Comans without cause or any due process or (2) the Board (and its Administrative Judges) could hold that Ms. Comans could not be fired without cause or due process and overturn her termination because no cause was cited and she was accorded no due process. In either case, the MSPB would not provide or order

Defendants to provide the name-clearing hearing Ms. Comans is entitled to concerning the false and stigmatizing statements made about her outside the congressionally mandated termination process.

For these reasons, this Court should, at a minimum, maintain jurisdiction over Ms. Comans' liberty interest claim.

Date: February 2, 2026

Respectfully submitted,

*<u>/s/ Kevin Byrnes</u>*
Kevin Byrnes, VSB 47623 Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fluet.law
e-file@fluet.law

*<u>/s/ Abbe David Lowell</u>*
Abbe David Lowell (DDC No. 358651)
David A. Kolansky (DDC No. 7680722)
Isabella M. Oishi (DDC No. 7680428)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, D.C. 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassocates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*<u>/s/ Heidi R. Burakiewicz</u>*
Heidi R. Burakiewicz (DDC No. 473973)
BURAKIEWICZ & DEPRIEST, PLLC
1120 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036
T: (202) 856-7500
HBurakiewicz@bdlawdc.com

*<u>/s/ Mark S. Zaid</u>*
Mark S. Zad (DDC No. 440532)
Bradley P. Moss (DDC No. 975905)
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
T: (202) 498-0011
Mark@markzaid.com
brad@markzaid.com

*<u>/s/ Harold Craig Becker</u>*
Harold Craig Becker (D.C. Bar #371239)
Taryn Wilgus Null (D.C. Bar #985724)
Norman L. Eisen (D.C. Bar #435051)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, S.E., No. 15180
Washington, D.C. 20003
T: (202) 594-9958
craig@democracydefenders.org
taryn@democracydefenders.org
norman@democracydefenders.org

*<u>/s/ Margaret M. Donovan</u>*
Margaret M. Donovan (pro hac vice)
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com

*Counsel for Plaintiff*