```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION


MARY COMANS,                      :
                                  :
              Plaintiff,          :   Civil Action
                                  :   No. 1:25-cv-01237-MSN-WEF
              v.                  :
                                  :   February 13, 2026
EXECUTIVE OFFICE OF THE           :   10:34 a.m. - 11:22 a.m.
PRESIDENT, DEPARTMENT OF          :
HOMELAND SECURITY, and            :
UNITED STATES OF AMERICA,         :
                                  :
              Defendants.         :
                                  :
.............................:

               TRANSCRIPT OF MOTION HEARING
      BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

 For the Plaintiff:        PATRIOTS LAW GROUP OF LYONS &
                           HUGHES, P.C.
                           Kevin Edward Byrnes, Esquire
                           2760 Eisenhower Avenue, Suite 250
                           Alexandria, VA 22314

                           DEMOCRACY DEFENDERS ACTION
                           LEGAL DEPARTMENT
                           Harold Craig Becker, Esquire
                           600 Pennsylvania Avenue SE
                           Suite 15180
                           Washington, D.C. 20006

 For the Defendants:       UNITED STATES DEPARTMENT OF
                           JUSTICE
                           Cesar Azrak, AUSA
                           1100 L Street NW
                           Washington, D.C. 20005

                           UNITED STATES ATTORNEY'S OFFICE
                           Matthew J. Mezger, AUSA
                           2100 Jamieson Avenue
 (Continued)               Alexandria, VA 22314
```

(Continued)

Court Reporter:                Diane Salters, B.S., CSR, RPR, RCR
                               Official Court Reporter
                               United States District Court
                               401 Courthouse Square
                               Alexandria, VA 22314
                               Email: Dianesalters.edva@gmail.com
                               Telephone: (301) 338-8033

Proceedings reported by machine shorthand.  Transcript produced by computer-aided transcription.

*Proceedings*

THE COURTROOM DEPUTY: *Comans v. Executive Office of the President, et al.*, Case Number 25-cv-1237.

MR. BYRNES: Good morning, Your Honor. Kevin Byrnes and Craig Becker here for the plaintiff, Ms. Comans. I'm local counsel. Mr. Becker will be arguing the matter.

THE COURT: Good morning to you all. Good morning, Mr. -- Becker, is it?

MR. BECKER: Yes.

MR. MEZGER: Good morning, Your Honor. Assistant United States Attorney Matthew Mezger. I'm joined at counsel's table today by Mr. Cesar Azrak from the Department of Justice. Mr. Azrak will be making presentations to the Court today, and we're here on behalf of the defendants. Thank you.

THE COURT: All right. Good morning to you both.

This matter comes before the Court on the defendants' motion to dismiss, Docket Entry 26, and I have had the opportunity to review the pleadings, the opposition, the reply brief, and I'll hear argument at this time. Mr. Azrak, it's your motion.

MR. AZRAK: Good morning, Your Honor, and may it please the Court.

As you said, we're here this morning on the government's motion to dismiss Ms. Comans' complaint in its entirety for lack of jurisdiction. I know the Court is well familiar with the briefs, so I don't want to belabor all the

*Proceedings*

the arguments that have been made there.  Instead, if I may, I would just like to focus on what I think are the biggest sticking points between the parties in this case.  The first, I think, is the Fourth Circuit's decision in *NAIJ* and the rationale therein for why the holdings regarding the preclusive effect of the CSRA from the Supreme Court in *Elgin* and *Fausto* may no longer be applicable in this case.  We don't think that *NAIJ* is dispositive here for a few reasons.  First, *NAIJ* is a Chapter 23 case which required bringing claims originally through the Office of Special Counsel, which was vacant at the time.  This is if you're a Chapter 75 case, so we don't think that case is applicable.

Second, in *NAIJ*, at the time, there was no quorum on the MSPB, and the Office of Special Counsel was vacant, and so the Court expressed a concern that the CSRA scheme couldn't function as intended because those roles were unfilled.  And, of course, that's just not the case here; the Office of Special Counsel isn't relevant to this case, and there is currently a quorum on the MSPB.  And in any event, administrative judges are adjudicating claims pursuant to their longstanding delegated authority from the board.  So we don't think that the functionality of the CSRA scheme and of the MSPB's operations have been impaired.

Third --

THE COURT:  And you don't think that there's any

*Proceedings*

reason to delay a decision in this case based on the fact that Judge Brinkema has, at the request of the parties, stayed any action in her case while the Supreme Court decides whether to take up the *NAIJ* matter?

MR. AZRAK:  So, Your Honor, we would not oppose that course of action.  We understand plaintiffs to be -- Ms. Comans, rather -- to be dissatisfied with the pace of adjudications in the MSPB, and that being part of the reason why she has sought relief from this Court.  We would not oppose halting the matter here pending the resolution of the now-filed cert petition on the *NAIJ* matter.  I understand that the opposition is due, I think, in a few weeks.

THE COURT:  But I think what I'm hearing you say is that there's no reason to do that because you don't believe *NAIJ* sheds any light on what the Court should do here.

MR. AZRAK:  That's exactly right.  If the Court were to believe otherwise, then, you know, we think halting the proceedings here for the moment would be prudent to let the Supreme Court weigh in on *NAIJ*, but we don't think the Court needs to do that.  We think the Court can rule in our favor based on the current state of the law.  Of course, as I'm sure Your Honor is well aware, the Department of Justice has argued that *NAIJ* is inconsistent with *Elgin* and *Fausto*, and so we sort of preserve that argument.  But to the extent that's the role of this Court, you know, without halting proceedings, to

*Proceedings*

thread the needle between *Elgin* and *Fausto* and the more recent decision in *NAIJ*, we think the Court can do that for the reasons that I was laying out.  That's a Chapter 23 case; this is Chapter 75.  At the time, you know, the Fourth Circuit was concerned about the lack of a quorum on the MSPB and a vacant Office of Special Counsel that could sort of put roadblocks in the resolution of claims.  In this case, it's a pure Chapter 75 case, so we're only worried about the MSPB, and there is a quorum to the functionality piece of that just isn't in play anymore.  We acknowledge the *NAIJ* opinion did spend a significant amount of time discussing the significance of removal protections for members of the board and administrative judges, but it said that it would -- perhaps in the future, that a district court ought to consider that in the first instance if the removal protections in the CSRA are done away with, but that litigation was still ongoing at the time former board member Cathy Harris had been ordered reinstated by the district court and that had been stayed by the Supreme Court; now the D.C. Circuit has reversed that opinion, and the time for filing a cert petition is still running.  So the existence of those removal protections still hasn't ripened.

THE COURT:  But is it correct that -- and I understand that and the procedural posture of the D.C. Circuit opinion -- but is it the government's view here today that the president has Article II power to remove an MSPB member or an AJ for the

*Proceedings*

same reasons that the president articulated the removal of the plaintiff here?

MR. AZRAK:  So the president does maintain that authority, and that is our position.  We don't think that affects the preclusive nature of the CSRA in this case.  *Elgin* and *Fausto* provide really useful discussion on this point, explaining that the primary purpose of the CSRA and Congress' intent in enacting that statute was to replace what had become an outdated patchwork, haphazard system of review for federal employee claims; and the MSPB, with or without removal protections, continues to vindicate that significant interest, which is ensuring that there is a uniform body of law and a single body dedicated to addressing those claims rather than going back to the pre-1978 world of haphazard and patchwork review.  So we think that regardless of whether the removal protections are ultimately upheld, should the Court choose to engage in that analysis now rather than awaiting the resolution of any word from the Supreme Court on removal protections in the CSRA, if the Court were to consider that matter now, we just think that considering that in the first instance the way *NAIJ* suggested the Court eventually might have to do, the fact that the MSPB continues to serve this critical purpose, which was the intent of Congress in enacting the CSRA, means that the absence of removal protections really doesn't bear on the exclusive nature of the CSRA here.

*Proceedings*

I know I said I would be brief.  If I may, I just want to touch on the other piece of this, which, I think, is the major sticking point between the parties, which is Ms. Comans' argument that the liberty-interest claim for jurisdictional purposes is different in kind from the rest of her claims.  We don't think that's the case.  In our view, that claim, like all the others, is an effort to vindicate Ms. Comans in her removal; and whichever way that goes -- she may well prevail -- but whichever way that goes, we believe that district court jurisdiction on that claim, like all the others, is precluded. We think that the opinions in *Zimbelman* and *Hall* and *El* from another court in the Eastern District of Virginia are instructive on this, that the fact that the allegedly disparaging statements arise out of a federal employment relationship is enough to preclude district court jurisdiction on those.

With that, we're happy to rest on the briefs, Your Honor, though, of course, I'm happy to answer any questions you may have.

THE COURT:  Well, I am curious.  This case has a somewhat unusual procedural history, and the government took the position initially in the MSPB that the MSPB didn't have jurisdiction to adjudicate Ms. Comans' claims, correct?

MR. AZRAK:  The government did initially take that position.  We have acknowledged that that position was error

and filed in the MSPB, first, a withdrawal of that jurisdictional objection to ensure that jurisdictional objection would not be heard --

THE COURT:  Well, let me stop you.  I understand.  I understand that they've changed their mind and there's an OLC opinion now, and the MSPB now has essentially put a lot of cases on hold as they try and figure out how to deal with that issue, but the position that was taken in April was really quite unambiguous, and I think the quote was:  There is no law, rule, or regulation that confers jurisdiction on the board to review removal actions taken pursuant to Article II.  That's the quote.  So when you say it was an error, I mean, it's not a typographical error.  That is a clear statement of a legal position.

So what changed?  What is the law, the rule, or the regulation that does confer jurisdiction that, I take it, was not you, was one of your colleagues who took that position?

MR. AZRAK:  That's right, Your Honor, and --

THE COURT:  So what is the rule, regulation, or law that, now, the government identifies that, before, it said, unambiguously, did not exist?

MR. AZRAK:  So I want to be clear in answering Your Honor's question.  The government's position on this has changed, and Your Honor is right to point that out.  The provision that imbues the board of jurisdiction is the

*Proceedings*

provision of the CSRA that lists removal as a covered action under the CSRA; and, you know, pursuant to *Elgin* and *Fausto*, if you have a covered action, therefore, you end up before the MSPB.  And our view is that removal does not distinguish between the different bases for removal or the different kinds of authority asserted to effectuate that removal.  They just --

THE COURT:  Let me stop you.  If I'm understanding correctly, when Ms. Comans was terminated, the government did not identify the CSRA as the procedure by which she was removed, correct?

MR. AZRAK:  Correct.

THE COURT:  And you're not taking that position here today that she was removed pursuant to the CSRA, correct?

MR. AZRAK:  Correct.  She was --

THE COURT:  In fact, you're asserting, as I think you have all along, that it is Article II of the Constitution, the vesting power, that was the basis for her termination, correct?

MR. AZRAK:  It was the authority pursuant to which her termination was effectuated, yes, that's right.

THE COURT:  Tell me what the "it" is.

MR. AZRAK:  I'm not sure I follow, Your Honor.  I'm sorry.

THE COURT:  You just said "it is," blah-blah-blah blah-blah.

MR. AZRAK:  So to be clear, the Article II authority

*Proceedings*

is the authority pursuant to which Ms. Comans' termination was effectuated.

THE COURT:  Not the CSRA?

MR. AZRAK:  Correct, although I hasten to add that the CSRA covers resolves, full stop.  It doesn't really depend on the authority asserted to effectuate that removal.  If a covered employee, as Ms. Comans is and concedes that she is, suffers a covered action, such as a removal -- and I think the parties are in agreement that a removal is a covered action -- that is enough to trigger the CSRA, and, therefore, its preclusive effects pursuant to *Elgin* and *Fausto*.  I think, for that reason, Plaintiff's arguments have focused on whether or not the MSPB is capable of actually carrying out its mission pursuant to the CSRA to actually hear claims from a covered employee about a covered action, namely, a member of the SES, about her removal.  I don't think the parties are in disagreement on whether or not, under normal circumstances, the CSRA would apply and the MSPB would have exclusive authority. In fact, precisely for that reason, Ms. Comans started her effort to obtain relief from her removal in the MSPB --

THE COURT:  Let me just stop you -- and I'm sorry to interrupt -- what do you mean by "normal circumstances"?

MR. AZRAK:  I should clarify and say normal circumstances by comparison to those identified by the Fourth Circuit in *NAIJ* and those that Ms. Comans pleads in her

*Proceedings*

complaint.  We made a factual attack on that point because at the time the complaint was filed, there was no quorum on the MSPB; now, there is, and so the functionality piece of the *NAIJ* analysis we just don't think really has a role to play anymore.

THE COURT:  Right, but this is what I want to get at, because this is what I think the heart of this case is about, is it's your position that Ms. Comans was not terminated under the CSRA, that she was terminated pursuant to a constitutional power that the president has under Article II, but that she now must invoke the CSRA in order to demonstrate that the president does not have that power; is that correct?

MR. AZRAK:  It is correct, Your Honor.

THE COURT:  Do you see a certain irony in that?

MR. AZRAK:  I do not for the following reason, which is that Ms. Comans may well prevail on her merits-based arguments that the president lacked authority to effectuate her dismissal.  We're just disputing --

THE COURT:  Let me just stop you there just to make sure I'm understanding because what you just said is exactly what the government said in April the MSPB could not decide, correct?

MR. AZRAK:  That's exactly right.

THE COURT:  And now the government is saying exactly the opposite thing, not only that the MSPB can decide that constitutional issue, but that it must decide it, correct?

MR. AZRAK:  Correct.

THE COURT:  And that is because OLC issued an opinion; is that right?

MR. AZRAK:  No, Your Honor.  In fact, even in the absence of an OLC opinion, we would still be taking the same position here, namely, that the government's position, as stated once upon a time, was wrong, that the MSPB does have jurisdiction over this case, and that the CSRA's preclusive effect means that only the MSPB has jurisdiction.

THE COURT:  But the MSPB itself had decided that it did not have such power, correct?

MR. AZRAK:  Not quite, Your Honor.  The MSPB decided that it did not have the power to declare parts of the CSRA unconstitutional because of Article II, and the result of that -- and this is apparent from the one example that Plaintiff cites in her briefing, the *Jaroch* example from the chief administrative judge of the MSPB -- the result of that was a ruling in the appellant's favor, in the former employee's favor, precisely because the MSPB said we can't entertain this argument.

THE COURT:  That decision in the plaintiff's favor in that case has now been reassessed in light of the OLC opinion, correct?  The government asked for that decision to be revisited, and now is being revisited by the MSPB in light of the OLC opinion; is that correct procedurally?

Proceedings

MR. AZRAK:  Procedurally, my understanding is that there is a petition for review pending before the full board to reevaluate what the chief administrative judge decided below; that's right.

THE COURT:  So my next question is, is the MSPB obliged to adopt the position in the OLC memo?

MR. AZRAK:  We think the MSPB is obliged to entertain all arguments that are material to the claims before it, and so that's exactly what the OLC opinion says.

THE COURT:  But that wasn't my question.  My question is, is the MSPB, the AJ's or the MSPB itself, obliged to apply the law as articulated in the OLC memo?

MR. AZRAK:  We think it is, Your Honor, and we think that the law as put forth in -- the OLC has opined that the MSPB ought to consider all arguments relevant to the removal of an employee when that employee challenges his or her removal in that forum, and that's exactly what we've asked the MSPB to do, is to consider the government's argument that Article II permits these kinds of removals.  It may well be the case that upon such consideration -- in keeping with the OLC opinion, upon such consideration, that the MSPB decides against us on the merits.  That's still an open question.

THE COURT:  How is it an open question if the MSPB members and the AJs are required to follow the law as set forth in the OLC memo?

*Proceedings*

MR. AZRAK:  So the OLC memo, Your Honor, states that the MSPB cannot refuse to entertain the Article II argument on the theory that doing so would render its own organic statute unconstitutional.  The OLC memo states that the MSPB ought to hear that argument in full rather than saying that it is powerless to entertain.

THE COURT:  Well, I think I'm asking a slightly different question, and I don't know if I'm not being clear about my question.  There are two issues.  One is whether or not the OLC memo persuades or binds the MSPB into considering the constitutional issue.  That's Issue 1.  Issue 2 is when they consider it, do they have the option of disagreeing with the OLC conclusion that Article II trumps the CSRA in certain circumstances?  So my question is about number 2, not about number 1.

MR. AZRAK:  I understand, Your Honor, and I'm sorry for the confusion earlier.  I think we challenge the premise of number 2 there.  I'm quoting from the second paragraph of the OLC opinion, which says:  To date, you have not asked us to address, and we do not opine on, the merits of any question currently pending before the administrative judges about whether Congress has limited or even could limit the ability of officers of the United States to terminate when necessary to fulfill the president's obligation to, quote, take care that the laws be faithfully executed, end quote.  In other words, on

the merits of the question of whether Article II requires deciding any given case one way or another, the OLC has not opined.

THE COURT:  All right.  Now I want to turn to Executive Order 14215 and ask you how that impacts my question. In other words, the EO appears to take the position that executive branch employees must take on the legal position of the attorney general as expressed, presumably, through the OLC and in other ways, and so to the extent that the government and you, as the government's representative, are arguing that Article II trumps the CSRA and justifies Ms. Comans' removal, how can the MSPB and the AJs not also take that position given this executive order?

MR. AZRAK:  So, Your Honor, I want to be careful here not to sort of get out in front of or get into the mind of an MSPB administrative judge or the full board on how they would resolve this, but it is true that the government's position is that members of the executive branch are bound by the executive's interpretations of law.  We think that as a practical matter, because judicial review is available in the Federal Circuit, that that doesn't weigh on the judicial implications of this case.

THE COURT:  Well, I want to make sure I'm understanding that last sentence, and I realize these are difficult questions.  This is a serious, serious issue.  Are

*Proceedings*

you saying that administrative judges and the MSPB are bound to follow the attorney general's articulation of the vesting power in the circumstance and, therefore, will automatically reject the petitioners in all of these cases, but that that doesn't matter because, eventually, the Federal Circuit, which is not bound by this executive order, will hear the matter and decide whether or not Article II trumps the CSRA?

MR. AZRAK:  What I can say, Your Honor, is that we think members of the executive branch are bound by the executive's interpretations of law.  I cannot say that that will automatically lead to the rejection of appeals like the one in this case, but we do think that the availability of judicial review by the Federal Circuit in the end obviates any jurisdictional concerns that the Court may have here.

THE COURT:  All right.  You have not addressed *Thunder Basin* directly.  The briefs address it.  Do you want to say anything more on those issues?

MR. AZRAK:  I don't want to belabor the briefs, Your Honor.  We think that as to Step 1 of *Thunder Basin*, *Elgin* and *Fausto* are pretty clear, and so the sticking point is the role that any IJ would have in that analysis, and we discussed that a little bit this morning.  I'm happy to answer any questions Your Honor has on that point.

As for Step 2, you know, *Elgin* was clear that a claim about a removal is in the heartland of the MSPB's expertise and

*Proceedings*

review, and so for that reason, under Step 2 of the *Thunder Basin*, any claim that is the vehicle by which one aims to vindicate himself or herself in their removal from federal employment or suspension or the like, those claims are all channelled to the MSPB.

THE COURT:  And I don't like to do this to lawyers, and I'm going to put the plaintiff in the same position, but I don't think either side discussed *Abramowitz v. Lake*, a district court decision from D.C. that addresses *Thunder Basin*. I'm going to take a chance and ask you if you're familiar with it and how you would distinguish it.

MR. AZRAK:  I am not familiar with it, Your Honor. I'm, of course, happy to look into it and provide written materials if that would help.

THE COURT:  I understand.  All right.  Thank you.

MR. AZRAK:  Thank you, Your Honor.

MR. BECKER:  Good morning, Your Honor.  Craig Becker for the plaintiff.  I would also like to introduce the plaintiff, Mary Comans, who is with us here today.

THE COURT:  Good morning.

MR. BECKER:  If I may, I would like to try to take the issues raised by Your Honor directly.  First, as to the Fourth Circuit's decision in *NAIJ*, there are really two issues --

THE COURT:  Let me just stop you.  I'll let you talk about it, but if you really would wanted to hit a home run, you

*Proceedings*

would have told me exactly what you think of the *Abramowitz* case, but I'm afraid that perhaps you, too, are not prepared to address it.

MR. BECKER:  I'm familiar with the case in broad terms, but not in the detail that I would be comfortable discussing.

THE COURT:  All right.  Very good.  You can continue.

MR. BECKER:  Thank you.  As to the Fourth Circuit's decision, Your Honor, counsel is correct; there really are two aspects of the decision.  One has to do with a processing speed and the lack of a quorum.  That is not the aspect of the decision which we rely on and which is controlling here, but the decision is controlling and directly rejects the government's position that somehow by holding that this case is not channelled, this Court would be overturning Supreme Court precedent.  What the Fourth Circuit held is that that Supreme Court precedent depended centrally on the independence of the two entities, both the special counsel and the MSPB.  So the Court stated explicitly -- the Fourth Circuit, that is -- that the conclusion of the earlier cases can only be true when the statute functions as Congress intended.  And then it went on, Congress intended for the CSRA to strip district courts of jurisdiction only if federal employees were otherwise able to receive independent review of their claims.

THE COURT:  Well, we now know what the government's

*Proceedings*

position is without any doubt.  It's that regardless of whether or not you can get a fair opportunity to persuade an AJ or the MSPB that your client was improperly dismissed, that, ultimately, you will have the opportunity to present that to Article III judges in the Federal Circuit.  Why is that not sufficient?

MR. BECKER:  That's not sufficient, Your Honor, first, because that was obviously true at the time the Fourth Circuit decided the Immigration Judges case.  The availability of Federal Circuit review was obviously available at that time, and the Court said -- the Fourth Circuit said, Applying *Thunder Basin* to their current facts, we find that the case should not be channeled.  That is, *Thunder Basin* requires determination at Step 1 about whether fairly discernible in the statutory text is a congressional judgment that the case should proceed before the agency.  And the Fourth Circuit said, Given the current facts, that is not fairly discernible.

This case is a much stronger case than the immigration judges case for two reasons.  One, and most importantly, that case involved a policy adopted by the agency concerning whether judges could speak to the press.  It did not involve a decision made explicitly by the president.  Ms. Comans was fired explicitly at the direction of the president, and the president went on to tweet about it after the termination notice.  So this case involves a direct conflict between everything that

*Proceedings*

was discussed with my opposing counsel and what Congress intended in the MSPB.  That is, the president, in the most thorough-going way, has captured the agency.  He's fired members.  He's asserted his power to fire members; he's asserted his power to fire administrative judges; he's asserted his power in the executive order, that Your Honor cited, to instruct both the agency and its judges how to construe the law.  He's actually done that through the Justice Department in specific cases on an issue relevant to this case.  And now the government is asking this Court to channel Ms. Comans to that agency.  An employee fired at the direction of the president has to go to an agency fully captured in every way possible by the president.  Under *Thunder Basin* in Step 1, as the Fourth Circuit held, that intent to channel is no longer fairly discernible, much more in case than the immigration judges case.

THE COURT:  Well, I'm not sure we need to spend too much more time on the *NAIJ* case.  The government has made an argument that it really isn't necessary in order to resolve this, but it's an interesting timing question about how you discern congressional intent.  The statute was passed in 1978. Congress thought whatever it thought, wrote down what it wrote down, and now courts have tried to interpret what they intended.  The fact that the facts on the ground may have radically changed to make this process very different than what

*Proceedings*

Congress envisioned is a curious thought that it could play a role in a judge's decision-making now.  You know, the Fourth Circuit has given those instructions to Judge Brinkema, and she'll have to, you know, apply them as she sees fit depending on what the Supreme Court does, but I will tell you, I'm not sure that it's the key to resolving this issue here today.

MR. BECKER:  Understood, Your Honor, and I would agree it would be an interesting question outside of this circuit.  I think in this circuit, the question has been answered; that is, the position of the government that it would somehow be overturning the earlier decisions to reach that conclusion, that argument is precluded in this circuit, at least by the immigration judges decision.

THE COURT:  Why don't we turn to the second step of *Thunder Basin* because, again, there are cases that address this, but, you know, there are three factors, and the second factor is whether or not the issue is wholly collateral to the statutory scheme.  So the question here is, as I asked the government, what is this case really about?  Is it about the CSRA; is it about her removal; or is it about the separation of powers?  Is it about a fundamental constitutional question about whether the president has the power to do something that vitiates a congressional statute?

MR. BECKER:  That's exactly right, the latter, Your Honor.  That is the only argument the government is making to

*Proceedings*

the MSPB and in other parallel cases, is that the president has the authority under Article II to fire employees without cause and without notice, and that to hold otherwise -- that is, for the MSPB to hold otherwise -- would violate Article II.  So it is a structural constitutional argument, not an argument under the CSRA.  And *Thunder Basin*, in Step 2 says, quote, The adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.

Now, of course, the government cites *Elgin*, but *Elgin* was an entirely different matter.  *Elgin* was a simple discharge case under the CSRA -- explicitly under the CSRA -- where a constitutional argument was made not about the MSPB and its structure, but about whether the agency's action -- firing someone to register for the draft -- was constitutional. That's entirely different.  This case is on all fours with *Axon* and *Free Enterprise Fund*, because in those cases, just like here, the government argued to the plaintiffs in federal court, You can't come here; you have to go through the agency process, and then you can always get review, just as you can here in the Federal Circuit, but the Supreme Court said, No, there's a structural constitutional challenge to the agency -- a different one -- that is, there, the plaintiffs in federal court argued that the agency could not proceed because its members or its judges, as the case may be, were improperly

insulated by a statute from presidential control.  Here, we have the flip side, but we have the same type of structural constitutional argument.  The government has argued explicitly, if you were to take jurisdiction -- MSPB -- and even review the president's action, you violate Article II.  It's clearly the type of question under *Thunder Basin*, Step 2, which Congress did not intend to put before the agency.

So I think either under Step 1, following the Fourth Circuit, or Step 2, this case is not channeled, the full case.

THE COURT:  All right.

MR. BECKER:  If I could, just for a moment, address our alternative argument about the liberty-interest claim, and we made a motion for leave to file a sur-reply because the government cited three cases which we address in the sur-reply which were not in their original moving papers.  The difference in the liberty-interest claim -- and I have to quote my opposing counsel -- he said that the reason the liberty-interest claim is also channeled is because in the liberty-interest claim, Ms. Comans attempts to challenge her removal.  That's exactly the point.  She doesn't, and she can't.  It's clear that a liberty-interest claim cannot result in a reinstatement; it can result in an order that the Due Process Clause be satisfied by a name-clearing hearing.  The difference in this case versus the three cited by the government is that the statements made about Ms. Comans were

Proceedings

not made in that CSRA process.  They weren't in a formal notice from which she would have had a right to be heard, both initially, prior to the termination, and before the MSPB. That's what those cases hold; an ordinary case where the government proceeds, as Congress expected, and provides notice and opportunity to be heard.  The liberty-interest claim can be satisfied because there is a hearing in which the employee has a right to clear his or her name.  Here, there was no such hearing because the government did not proceed according to the CSRA, so the cases of that type are distinguishable.

The other type of cases that the government cites are employees expressly excluded from the CSRA.  Those are obviously different because Ms. Comans was covered by CSRA. So, here, we have a somewhat extraordinary circumstance, which Congress clearly did not expect, where someone is terminated outside the confines of the CSRA without notice, without an opportunity to be heard, and then outside that process, false and disparaging statements are made.  So that claim clearly cannot be challenged.

So we would argue both that all the claims cannot be channeled either under *Thunder Basin* Step 1 or 2, but, clearly, the liberty-interest claim cannot be challenged.  With that, I will stop unless you have any questions, Your Honor.

THE COURT:  Thank you.

Mr. Azrak, I'll give you an opportunity to respond.

*Proceedings*

MR. AZRAK:  If I may for a moment.

THE COURT:  You may.

MR. AZRAK:  Thanks.  I would just like to make two quick points.  First, opposing counsel said that this case is on all fours with *Axon*.  We strongly disagree.  *Axon* was about a challenge from a plaintiff to the structural validity, the constitutionality of the agency itself.  Ms. Comans has sought relief from the MSPB.  She has not challenged the constitutional validity of the MSPB.

To that point, Step 2 of the *Thunder Basin* test -- and this is a point we make in our brief, so I don't want to belabor it -- is about evaluating the plaintiff's claims, not the government's defenses.  If Ms. Comans were right that the government's defenses can't be heard in that forum, then exactly what happened in the *Jaroch* case would happen here, that MSPB would say, We can't hear this, the plaintiff is right, therefore, Ms. Comans prevails.  So we don't think that the specter of success warrants this Court's exercise of jurisdiction here.

Second, on the liberty interest --

THE COURT:  I'm sorry, go back just for a second.  I want to make sure I understood what you meant by "specter of success."

MR. AZRAK:  So my point there, Your Honor, is that if Ms. Comans is right that the MSPB can't hear the kind of

*Proceedings*

arguments that the government is making, then the consequence of that is a ruling in her favor the way that the consequence in *Jaroch* was a ruling in the appellant's favor.

THE COURT:  Can you really make that argument after our previous discussion about where we are now with the OLC opinion and the executive order?  I mean, I get it that the issues haven't been decided, but is it really possible to imagine a circumstance in which the MSPB won't conclude that they must consider constitutional claims?

MR. AZRAK:  I think our view is that if we're applying the *Thunder Basin* test, the point of a *Thunder Basin* test, Step 2, is to evaluate the plaintiff's claims, and that's a sort of --

THE COURT:  But you just heard the plaintiff say what her claim is.  It's a constitutional claim about the separation of powers.  The president says, I had the right to fire you.  I can ignore Congress, who passed the statute.  How is that not a constitutional claim?

MR. AZRAK:  So *Elgin* was clear that the MSPB can hear constitutional claims when those claims are the vehicle by which an appellant before the MSPB aims to vindicate his or her removal.  That is --

THE COURT:  Yeah, but that's in the context of, You fired me for cause; I was exercising my First Amendment right; now I want my process to show that my constitutional right

*Proceedings*

means that I can't be fired.  This is about, Does the president have the power to ignore a congressional statute?

MR. AZRAK:  So, Your Honor, we think that the CSRA, by its plain terms, covers a removal.  It doesn't distinguish between the different bases or rationales for that removal.

THE COURT:  And where does that argument come from?

MR. AZRAK:  So the CSRA lists a series of covered actions, and those are in the --

THE COURT:  None of which apply here, correct?

MR. AZRAK:  No, Your Honor.  We disagree with that.  A covered action is a removal, so --

THE COURT:  A removal under the CSRA?

MR. AZRAK:  No, Your Honor.  We think that the CSRA says that when a member of the SES is removed, she has appeal rights to challenge that removal, and that's exactly what we think has happened --

THE COURT:  So when the president says, I'm firing you, I don't have to follow the CSRA, then the person has to say, I have to follow the CSRA to show that the president didn't have that power?

MR. AZRAK:  We don't think it's a matter of the person following the CSRA; we think it's a matter of Congress having channelled the claim as to the lawfulness of that firing or removal and where that claim ought to be heard; and because the CSRA states that this is a covered employee in a covered

action, namely a member of the SES and a removal, therefore, pursuant to *Elgin* and *Fausto*, claims by a covered employee about a covered action --

THE COURT:  How do you answer the question about Step 3 of Step 2, which is that you look to see whether or not the agency has greater expertise on resolving the claim at issue?  Do you think that the MSPB has greater expertise to resolve this issue if it's defined as a constitutional clash between the executive and the legislative branch?

MR. AZRAK:  We think -- so the third factor of the *Thunder Basin* test, Your Honor, is whether a claim is wholly outside the agency's expertise.  We don't think that a claim aiming -- a claim by a covered former member of the civil service about a covered action -- namely, a member of the SES -- about a removal is wholly outside of the expertise of the MSPB.  So in our view, the expertise prong cuts decisively in our favor precisely for those two reasons.

THE COURT:  That's a very long way from the government's position in April that said that there's no law, rule, or regulation that confers jurisdiction on the board to review this very issue.

MR. AZRAK:  That's exactly right, Your Honor.  I completely appreciate that point, which is why I want to be very clear with the Court that our position has changed, and we firmly disavow that former view, and I, perhaps, ought not to

*Proceedings*

get into sort of behind the scenes, but it was important to us that we withdraw the jurisdictional objection in this case even before we filed the updated motion to dismiss, just to get out in front of the issue and let the board know that our view is that jurisdiction is properly there and not here.

If I may on the liberty-interest point which opposing counsel raised here.  I want to quote from *Zimbelman* and *Hall*, both Fourth Circuit cases, where the touchstone there was whether the challenged statements arose from a federal employment relationship.  That was enough for the CSRA's preclusive effects to kick in.  And I think in an effort to sort of get around that language, my friend on the other side said, Well, because the statements weren't in the formal notice of termination, if they had been, then, you know, the government would be right, but because they were outside of the formal notice, therefore, it's not the same.  We don't think that the placement of the allegedly disparaging statements either in a formal notice or out of a formal notice is a jurisdictional moment.  We don't think that the CSRA's preclusive effects sort of snap in and out depending on where those statements are made.  I think an illustrative example was in *Hall* where there were these -- the appellant there was being steadily demoted, and at the same time, there were these disparaging memoranda about her being circulated.  And, you know, just so here where you've got, you know, a notice which

Proceedings

doesn't make mention of these disparaging statements, but then collaterally to those -- contemporaneously, in fact -- you've got these disparaging statements.  So in our view, we don't think the placement of those statements matters for jurisdictional purposes.

THE COURT:  Just to be clear on our final point, the memorandum that marked Ms. Comans' termination referenced Article II, but didn't give any other information about the reason for the termination; is that correct?

MR. AZRAK:  That's exactly right, Your Honor.

THE COURT:  Anything else?

MR. AZRAK:  Thank you, Your Honor.

THE COURT:  All right.  Well, I'm going to take this matter under advisement.  I think it is important and worthwhile to take the opportunity to think about the arguments that were made here and the briefs submitted.  This is an important matter and deserves appropriate consideration by the Court.

Is there anything else I need to address with regard to this matter this morning?

MR. AZRAK:  Nothing from the government, Your Honor.

MR. BECKER:  Your Honor, only the small housekeeping matter of our unopposed motion to file the sur-reply addressing the liberty interest.

THE COURT:  I will grant that motion and consider that

material.

            MR. BECKER:  Thank you very much.

            THE COURT:  Thank you very much.

                    *      *      *      *      *


                    CERTIFICATE OF REPORTER

        I, Diane Salters, hereby certify that the foregoing transcript is a true and accurate record of the stenographic proceedings in this matter.

                                /s/ Diane Salters
                        _____

                        Diane Salters, CSR, RCR, RPR
                        Official Court Reporter