IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARY COMANS,
            *Plaintiff,*

    v.

EXECUTIVE OFFICE OF THE
PRESIDENT, DEPARTMENT OF
HOMELAND SECURITY, AND THE
UNITED STATES OF AMERICA,
            *Defendants.*

1:25-cv-01237-MSN-WEF

ORDER

In this matter, Plaintiff Mary Comans, the former Chief Financial Officer ("CFO") of the

Federal Emergency Management Agency ("FEMA"), has asserted claims against the United States

Government arising out of her February 2025 termination without any process and for no reason

other than the asserted authority of the President's Article II power. ECF 1 ("Complaint").

Defendants now move to dismiss, insisting that this Court lacks jurisdiction because the Civil

Service Reform Act of 1978 ("CSRA") requires that Plaintiff take her claims to the Merit Systems

Protection Board ("MSPB") and from there, the Federal Circuit. ECF 26. For the reasons that

follow, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion.

### I.    BACKGROUND

Plaintiff is a longtime civil servant who most recently served as FEMA's CFO from 2017

until her termination by Defendants on February 11, 2025. Complaint ¶ 3. As FEMA's CFO,

Plaintiff was a career member of the Senior Executive Service ("SES"), which is designed to be a

senior corps of civil service executives who operate as the link between political appointees and

the federal workforce. *Id*. ¶¶ 7, 9. The CSRA confers certain protections on SES members, who

may only be removed for statutorily-specified reasons and under established due process

procedures. *Id*. ¶¶ 8, 9, 19–22.

The chain of events leading to Plaintiff's termination began on February 3, 2025, when FEMA transmitted $59 million to the U.S. Treasury, which in turn sent those funds to the government of New York City under FEMA's Sheltering and Services Program ("SSP"). *Id*. ¶ 14. During a February 5, 2025, meeting between Department of Government Efficiency ("DOGE") representatives and FEMA officials regarding the operation of funding programs like SSP, DOGE confirmed that funding to state and local governments was not paused. *Id*. ¶ 15. But five days later, on February 10, 2025, following publicity regarding FEMA payments to New York City, DOGE flagged the February 3 SSP payment as a violation of President Trump's Executive Order, "Protecting the American People Against Invasion," and the Secretary of Homeland Security's memorandum, "Direction on Grants to Non-governmental Organizations." *Id*. ¶ 16.

Then, on February 11, 2025, Plaintiff received a termination memorandum, which stated merely that she was being removed "pursuant to Article II of the United States Constitution, at the direction of the President." *Id*. ¶ 17. Plaintiff's termination did not come with any notice or process, and the termination memorandum did not state that Plaintiff's removal was for cause or failure to faithfully execute the law. *Id* ¶¶ 17, 19–22. Plaintiff claims that her termination was even contrary to President Trump's recent Executive Order "Restoring Accountability for Career Senior Executives," *id*. ¶¶ 10–13, 23, although that EO was never mentioned in any document regarding Plaintiff's termination. *See id*. ¶¶ 13, 17, 18, 23.

On the same day as her termination, Defendant Department of Homeland Security ("DHS") issued a public press release stating that Plaintiff was among four FEMA employees fired "for circumventing leadership to unilaterally make egregious payments for luxury NYC hotels for migrants," which Plaintiff asserts is provably false and defamatory. *Id*. ¶ 18 (noting that the press release also stated "[u]nder President Trump and Secretary Noem's leadership, DHS will not sit idly and allow deep state activists to undermine the will and safety of the American people").

2

Plaintiff's actions were also widely, publicly, and falsely called "illegal" and "criminal" on social media and in the news by public figures such as Laura Loomer and Elon Musk. *Id*.

Plaintiff filed an appeal challenging her termination with the MSPB on March 4, 2025. *Id*. ¶ 31. Defendants opposed her appeal and moved to dismiss before the MSPB on April 25, 2025, arguing that the MSPB lacked jurisdiction over her constitutional claims and the assertion of the President's Article II authority. *Id*. ¶ 32; ECF 29-4. Defendants eventually reversed their position in September 2025, claiming that the MSPB did, in fact, have jurisdiction but that Plaintiff's termination was still valid as a matter of Article II. ECF 27-2; ECF 29- 2. On March 11, 2026, Plaintiff's appeal before the MSPB was dismissed without prejudice subject to automatic refiling by the MSPB in six months pending review of the administrative judge initial decisions in *Megan Jackler v. Dep't of Justice*, 2025 WL 2476807 (Aug. 22, 2025) and *Brandon Jaroch v. Dep't of Justice*, 2025 WL 2476809 (Aug. 22, 2025), which also concerned Article II issues.[1] ECF 37.

In the meantime, Plaintiff filed this suit on July 24, 2025, asserting due process claims (Count I – procedural due process, property interest in employment; Count II – procedural due process, liberty interest / reputation), a constitutional challenge to the SES EO (Count III), Administrative Procedures Act claims (Count IV – *ultra vires* termination; Count V – termination memorandum), a declaratory judgment claim (Count VI), and a mandamus claim (Count VII) against Defendants. ECF 1. Plaintiff's Complaint asserted that this Court's jurisdiction was proper because "the framework of the CSRA has been thwarted" for various reasons. ECF 1 ¶ 34. After some delay, Defendants moved to dismiss the Complaint for lack of jurisdiction on January 5, 2026. ECF 26. The Court heard oral argument on the motion on February 13, 2025, at which time the Court took the motion under advisement. Subsequently, on March 31, 2026, the Court directed

---

[1] Plaintiff has informed the Court that on March 20, 2026, the MSPB vacated and dismissed the *Jackler* and *Jaroch* matters for lack of jurisdiction after determining that Article II of the Constitution abrogated the CSRA's protections and permitted the President to remove the appellant immigration judges in those matters. ECF 38; ECF 38-1. The MSPB's decision in those matters has been appealed to the Federal Circuit. ECF 38.

the parties to provide supplemental briefing on "whether the MSPB has jurisdiction over Plaintiff s claims based on the interaction between 5 U.S.C. §§ 7542, 7543(a), (b), (d)," ECF 39. The parties filed their supplemental briefs on April 7, 2026. ECF 40; ECF 41. Accordingly, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a civil action over which it lacks subject matter jurisdiction. A defendant may challenge subject matter jurisdiction either facially or factually. *Beck v. McDonald*, 648 F. 3d 262, 270 (4th Cir. 2017). The facial approach asserts that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," and under such a challenge, "the facts alleged in the complaint are taken as true." *Id*. Alternatively, in a factual challenge, the defendant may argue that the jurisdictional allegations are untrue, in which case no presumption of truthfulness applies, but the Court is permitted to look beyond the allegations of the complaint. *Id*. The plaintiff must always carry the burden of proving the existence of subject matter jurisdiction. *Adams v. Bain*, 697 F. 2d 1213, 1219 (4th Cir. 1982).

## III.    DISCUSSION

It is well established that federal district courts generally have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's claims here "arise under" such federal law. However, Defendants argue that the CSRA impliedly strips this Court of jurisdiction over Plaintiff's claims and requires that they be reviewed instead by the MSPB and Federal Circuit. ECF 27 at 6. That is wrong. As Defendants have repeatedly confirmed, Plaintiff's termination is premised only upon the President's asserted Article II powers, not the CSRA. Complaint ¶ 17; ECF 35 ("Hearing Tr.") at 10:15-19, 10:25–11:2, 31:6-10. Taking this fundamental fact together with the plain text of the CSRA, it is clear

4

that Plaintiff's due process claims are not channeled away from this Court. In fact, jurisdiction in federal district court, and not the MSPB, is mandatory.

Although the parties initially devoted much of their attention to whether implied preclusion of jurisdiction is evident under *Thunder Basin Coal v Reich*, 510 U.S. 200 (1994), this focus is misplaced. "[T]he threshold question is whether the agency order at issue falls within the relevant statutory review scheme" at all. *Union Pac. R.R. v. U.S. R.R. Retirement Bd.*, 163 F. 4th 908, 914 (8th Cir. 2025); *see Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 185 (2023) ("a statutory review scheme . . . does not necessarily extend to every claim concerning agency action"); *Worthington v. United States*, 168 F. 3d 24, 26 (Fed. Cir. 1999) ("The CSRA, by its terms, however, does not encompass every adverse personnel action against a federal employee."). "To determine the scope of the [CSRA's] special statutory review provisions, we look to the text of [the] statute[], taking into account 'both the specific context in which language is used and the broader context of the statute as a whole.'" *Union Pac. R.R.*, 163 F. 4th at 915.

To start, Plaintiff was a member of the SES. As Defendants recognize, the SES is one of three main civil service employee classifications established under the CSRA. 5 U.S.C. § 3132(a)(2). A member of the SES may not be removed from the SES except in accordance with certain statutes. 5 U.S.C. § 3393(g). As Defendants identify, the only provision pertinent to Plaintiff's removal here is 5 U.S.C. 7543(d), which is a part of Subchapter V ("Senior Executive Service") of Chapter 75 of the CSRA. *See also Nat'l Assoc. of Immigr. Judges v. Owen*, 139 F. 4th 293, 302 (4th Cir. 2025) ("Chapter 75 addresses major adverse actions against employees.").

Subchapter V is composed of three sections. 5 U.S.C. § 7541 provides definitions "[f]or the purpose of this subchapter," including who is an SES "employee"—and there is no question that Plaintiff is an "employee." ECF 41 at 2. 5 U.S.C. § 7542 ("Actions covered") states in relevant part that "[t]his subchapter applies to a removal from the civil service or suspension for more than

5

14 days" with certain exceptions inapplicable here. ECF 41 at 2, 3. 5 U.S.C. § 7543 ("Cause and procedure") is more comprehensive, stating in pertinent part:

> (a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.

> (b) An employee against whom an action covered by this subchapter is proposed is entitled to [certain process].

> . . . .

> (d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

> . . . .

Several things are evident from all of this. First, an "action covered by this subchapter," defined in Section 7542 to include removal from the civil service, may only be taken against Plaintiff for the causes specified in Section 7543(a). 5 U.S.C. § 7543(a) (emphasis added). Plaintiff may not be removed otherwise. Thus, Section 7543(a) vests Plaintiff with a due process property interest in her continued federal employment. *Lamb v. Holder*, 82 F. Supp. 3d 416, 424 (D.D.C. 2015).

Second, the due process procedures articulated in Section 7543(b) apply to "an employee against whom an action covered by this subchapter is proposed." 5 U.S.C. § 7543(b) (emphasis added). That is, the procedures in Section 7543(b) are required regardless of the basis of a proposed action, so long as the type of action is covered by Section 7542 (including a removal from the civil service).

Third, Section 7543(d) makes clear that the MSPB only has jurisdiction over "[a]n employee against whom an action is taken under this section." 5 U.S.C. § 7543(d) (emphasis added). MSPB jurisdiction is not extended to an "action covered by [Subchapter V]" via Section 7542 in the abstract, but rather only to an "action covered" by Section 7542 "taken under" and for

6

the causes permitted by Section 7543(a)—"misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function."

Thus, the MSPB's jurisdiction as articulated in Section 7543(d) is narrower than the scope of actions (i.e., removal generally) for which Plaintiff has due process and statutory rights. Plaintiff's termination pursuant only to "Article II" does not constitute an "action [] taken under" 5 U.S.C. § 7543(a) such that MSPB is conferred jurisdiction by Section 7543(d).

To hold otherwise would be to equate "actions covered by" Subchapter V with "actions [] taken under" Section 7543. But Congress could have used the former term in the latter's place in Section 7543(d) and did not. And "when Congress deliberately uses different words, we presume those words to 'have different meanings.'" *Bruce v. Adams and Reese, LLP*, 168 F. 4th 367, 383 (6th Cir. 2026) (quoting *Tomaszczuk v. Whitaker*, 909 F. 3d 159, 166 (6th Cir. 2018)); *Moore v. Harris*, 623 F. 2d 908, 913 (4th Cir. 1980); *Valladares v. Ray*, 130 F. 4th 74, 82 (4th Cir. 2025); *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 278 (2018) ("We usually 'presume differences in language like this convey differences in meaning.'"). This is especially so where the difference in meaning bears on the scope of the MSPB's jurisdiction, which is not plenary and must be construed "narrowly" to include "only those actions <u>specifically</u> granted by some law, rule, or regulation." *King v. Jerome*, 42 F. 3d 1371, 1374 (Fed. Cir. 1994) (emphasis added).

As relevant to this matter, the appellate jurisdiction of the MSPB (and from there, the Federal Circuit) is defined by Section 7543(d). 5 U.S.C. §§ 7701(a) ("An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation."), 7703(a)(1) ("Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.") 7703(b)(1)(A) (specifying Federal Circuit as forum for review); *see also* 5 C.F.R. § 1201.3(a)(10).

Because the MSPB has no jurisdiction under Section 7543(d), it is clear then that the MSPB has no jurisdiction over the claims regarding Plaintiff's termination.

Defendants attempt to resist this conclusion by pointing to the regulations at 5 C.F.R. § 752 Subpart F, as conferring jurisdiction. They observe that Section 752.601(a) states that "[t]his subpart applies to suspensions for more than 14 days and removals from the civil service as set forth in 5 U.S.C. [§] 7542" and that Section 752.605(a) states that "[u]nder 5 U.S.C. [§] 7543(d), a career appointee against whom an action is taken under this subpart is entitled to appeal to the Merit Systems Protection Board." ECF 41 at 6, 7; *see also* 5 C.F.R. § 752.603 ("An agency may take an adverse action under this subpart only for reasons of . . ."). But as indicated by Section 752.605(a)'s introductory clause, "[u]nder 5 U.S.C. [§] 7543(d)," these regulations do not alter what Section 7543(d) already says. To the extent that Defendants suggest otherwise, the Court does not understand these regulations as expanding the scope of the MSPB's jurisdiction determined by the CSRA's plain text. *See Jerome*, 42 F. 3d at 1374 ("If we believe the board's interpretation of [the statute] is 'contrary to the intent of Congress . . .' we owe the board's statutory interpretation no deference . . . . The board cannot use [5 U.S.C. § 1204(a)]'s very general grant of authority to create a power of review where the statutory scheme indisputably contemplates no such power.").

The MSPB's lack of jurisdiction is not at odds with the CSRA precedent upon which Defendants principally rely. In *Elgin v. Department of Treasury*, the Supreme Court, applying *Thunder Basin*, held that it was "fairly discernible" in the CSRA scheme that "the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action" on constitutional grounds is through the MSPB and the Federal Circuit, recognizing amongst other things that "MSPB jurisdiction over an appeal [is] dependent only on the nature of the employee and the employment action at issue[.]" 567 U.S. at 5, 12, 18, 23. But in *Elgin*, the "employment

action at issue" was within the scope of the CSRA's text. There, the plaintiff employees were discharged for failure to register for Selective Service pursuant to 5 U.S.C. § 3328 (and challenged the constitutionality of that statute), which constituted a removal "for such cause as will promote the efficiency of the service"—5 U.S.C. § 7513, which is materially similar to Section 7543, specifically permits removal "taken under this section" on that basis and accordingly permits appeal to the MSPB for such removal.[2] 5 U.S.C. § 7513(d); *Elgin*, 567 U.S. at 5, 7; *see also* 641 F. 3d 6, 8 (1st Cir. 2011). As discussed above, and unlike the removals in *Elgin*, Plaintiff's removal here was not "taken under" the applicable CSRA section such that the MSPB has jurisdiction. Thus, however ornate the CSRA's "comprehensive system for reviewing personnel action taken against federal employees" is when it *does* apply, 567 U.S. at 6, *Elgin* simply does not demand that the scheme applies to the adverse action here.

It follows that because the MSPB has no jurisdiction, this Court necessarily has federal question jurisdiction over Plaintiff's due process claims because of the "serious constitutional question that would arise if [the CSRA] were construed to deny any judicial forum" for those here.[3] *Coleman*, 65 F. Supp. 3d at 104–05 (collecting cases) (finding no "heightened showing of Congressional intent to preclude review of constitutional claims" and concluding "this Court has

---

[2]    Section 7513 is part of Subchapter II of Chapter 75 of the CSRA, applicable to certain competitive or excepted service employees. Subchapter II is structured similarly to Subchapter V (for SES members) and includes Section 7512, an "actions covered" section analogous to Section 7542, and Section 7513, a "cause and procedure' section which is analogous to Section 7543 and contains similar "action covered by this subchapter" and "action taken under this section" language.

[3]    For related reasons, there is no trouble with *United States v. Fausto*, 484 U.S. 439 (1988). The Court in *Fausto* remarked that the CSRA's provisions "establish a congressional judgment that [nonpreference excepted service employees] should not be able to demand judicial review for the type of personnel action covered by Chapter 75," from which those employees were excluded given the statutory definition of "employee[s]," through on claims under the Tucker Act and Back Pay Act. 484 U.S. at 443, 447. But comparison to *Fausto* is inappropriate because the employees there brought a statutory, not constitutional, challenge. *Coleman v. Napolitano*, 65 F. Supp. 3d 99, 104 & n.4 (D.D.C. 2014); *see also Fausto*, 494 U.S. at 454 ("[W]e find that under the . . . CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination[.]"). Moreover, Plaintiff is a qualifying employee under the CSRA's SES provisions and is asserting claims for a removal that is not within the MSPB's purview but one for which the Constitution (by the CSRA itself)— not some other statute lying in the background against which the CSRA was enacted—nonetheless confers rights.

subject matter jurisdiction to hear the plaintiff's constitutional due process claim which cannot be reviewed under the CSRA by the MSPB nor subsequently appealed to the Federal Circuit"); *Esparraguerra v. Dep't of the Army*, 981 F. 3d 1328, 1338 (Fed. Cir. 2020) (rejecting reliance on *Elgin*, holding Federal Circuit lacked jurisdiction to consider due process challenge to SES removal pursuant to 5 U.S.C. § 3592(a)(2) because no MSPB appellate jurisdiction over removal existed under CSRA, instead directing plaintiff to federal district court).

However, there are two caveats to this Court's jurisdiction. First, Plaintiff's APA claims challenging her termination cannot proceed, given the ordinarily "comprehensive and exclusive" nature of the CSRA. *Grosdidier v. Chairman, Broadcasting Bd. of Governors*, 560 F. 3d 495, 497 (D.C. Cir. 2009) ("what you get under the CSRA is what you get"); *Coleman*, 65 F. Supp. 3d at 103 n.2. Second, although the Complaint requests the remedy of back pay and money damages, ECF 1 at 17, none of the claims pleaded would permit the Court to afford such relief as a matter of sovereign immunity.[4] *Radin v. United States*, 699 F. 2d 681, 684–85 (4th Cir. 1983) (sovereign immunity prohibits constitutional claims for money damages); *Hubbard v. Administrator, EPA*, 982 F. 3d 531, 539 (D.C. Cir. 1992) (APA waiver of sovereign immunity does not include relief of back pay).

Separately, the Court will also dismiss Plaintiff's constitutional challenge to the SES EO without prejudice for lack of Article III standing, because the pleaded allegations disclaim the notion that Plaintiff's termination has to do with the SES EO. *Doe v. Obama*, 631 F. 3d 157, 160 (4th Cir. 2011) (injury must be "fairly traceable to the challenged action of the defendant").

But notwithstanding these exceptions, the Court finds that Plaintiff's claims concerning her Article II termination do not lie within the CSRA's scheme and that jurisdiction lies in federal district court, not the MSPB.

---

[4]    The Court takes no position on whether back pay is available under the Back Pay Act and/or Tucker Act in any court under the circumstances notwithstanding *Fausto* because Plaintiff has not asserted such a claim.

10

## IV.    CONCLUSION

The beginning and the end of Defendants' Motion lies in the fact that Plaintiff was terminated pursuant to the President's purported Article II powers. Accordingly, and for the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss (ECF 26) is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Counts III, IV and V are DISMISSED without prejudice; and it is further

ORDERED that Plaintiff's request for backpay and/or monetary damages is DISMISSED without prejudice; and it is further

ORDERED that Plaintiff's Motion for Leave to File Sur-Reply (ECF 32) is GRANTED; and it is further

ORDERED that Defendants will respond to the Complaint within fourteen (14) days of the entry of this Order.

**IT IS SO ORDERED.**

The Clerk of Court is directed to forward a copy of this Order to counsel of record.

/s/
Michael S. Nachmanoff
United States District Judge

April 15, 2026
Alexandria, Virginia

11