**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MARY COMANS,

        *Plaintiff*,

        *v.*

EXECUTIVE OFFICE OF THE PRESIDENT
*et al.*,

        *Defendants*.

No. 1:25-cv-01237-MSN-WEF

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RESPONSE TO "ADDITIONAL" STATEMENT OF UNDISPUTED MATERIAL
FACTS ............................................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.      MS. COMANS OFFERS NO MEANINGFUL RESPONSE TO DEFENDANTS' RENEWED
        JURISDICTIONAL ARGUMENTS .............................................................................. 5

II.     THERE CAN BE NO DOUBT THAT MS. COMANS WAS AN (INFERIOR) OFFICER OF
        THE UNITED STATES ............................................................................................. 8

III.    BECAUSE THE INFERIOR-OFFICER EXCEPTION DOES NOT APPLY, MS. COMANS
        WAS SUBJECT TO AT-WILL REMOVAL ................................................................ 11

IV.     A NAME-CLEARING HEARING WOULD PLAINLY AMOUNT TO A "BOOTLESS
        EXERCISE" ........................................................................................................... 16

V.      NEITHER A DECLARATORY JUDGMENT NOR MANDAMUS IS AVAILABLE HERE ................ 18

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Abramowitz v. Lake,*
    803 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................ 6

*Barnhart v. Devine,*
    771 F.2d 1515 (D.C. Cir. 1985) ........................................................................ 20

*Board of Regents of State Colleges v. Roth,*
    408 U.S. 564 (1972) .................................................................................... 17, 18

*Comey v. DOJ,*
    No. 25-cv-7625, 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) ........................ 6

*Connecticut Department of Public Safety v. Doe,*
    538 U.S. 1 (2003) ........................................................................................ 17, 18

*Elgin v. Department of Treasury,*
    567 U.S. 1 (2012) ............................................................................................... 5

*Elhady v. Kable,*
    993 F.3d 208 (4th Cir. 2021) ........................................................................... 16

*Freytag v. Commissioner of Internal Revenue,*
    501 U.S. 868 (1991) ........................................................................................... 9

*Grosdidier v. Chairman, Broadcast Board of Governors,*
    560 F.3d 495 (D.C. Cir. 2009) ......................................................................... 19

*Harrell v. City of Gastonia,*
    392 F. App'x 197 (4th Cir. 2010) ..................................................................... 17

*Karamanos v. Egger,*
    882 F.2d 447 (9th Cir. 1989) ........................................................................... 20

*Kennedy v. Braidwood Management, Inc.,*
    606 U.S. 748 (2025) ...................................................................................... 9, 11

*Lucia v. SEC,*
    585 U.S. 237 (2018) .......................................................................... 8, 9, 10, 11

*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................................................... 11

*PACEM Solutions International, LLC v. SBA*,
   148 F.4th 258 (4th Cir. 2025) ........................................................................................ 19

*Richardson v. Orangeburg School District No. 1*,
   No. 94-2092, 1995 WL 255941 (4th Cir. May 3, 1995)........................................ 16, 17

*Ridpath v. Board of Governors of Marshall University*,
   447 F.3d 292 (4th Cir. 2006) ........................................................................................ 16

*Sciolino v. City of Newport News*,
   480 F.3d 642 (4th Cir. 2007) ........................................................................................ 16

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020)................................................................................................ 11, 12

*Trump v. Slaughter*,
   No. 25-332, 2026 WL 1855612 (June 29, 2026) .................................. 11, 12, 14, 15

*United States ex rel. Rahman v. Oncology Associates, P.C.*,
   198 F.3d 502 (4th Cir. 1999) ........................................................................................ 20

*United States v. Fausto*,
   484 U.S. 439 (1988)................................................................................................... 7, 19

*United States v. Perkins*,
   116 U.S. 483 (1886)....................................................................................................... 11

### UNITED STATES CONSTITUTION

U.S. Const. art. II, § 1, cl. 1 ............................................................................... 13, 14

### STATUTES

5 U.S.C. § 3131................................................................................................... 10, 12

5 U.S.C. § 7542........................................................................................................... 7

5 U.S.C. § 7543........................................................................................................... 7

**REGULATIONS**

44 C.F.R. § 207.5 ..................................................................................................... 8, 10

44 C.F.R. § 207.7 ..................................................................................................... 8, 10

44 C.F.R. § 207.8 ..................................................................................................... 8, 10

44 C.F.R. § 207.9 ..................................................................................................... 8, 10

**LOCAL RULES**

Local Civil Rule 56 ....................................................................................................... 2

**OTHER AUTHORITIES**

The Federalist No. 47 (J. Madison) (Clinton Rossiter ed. 1961) .................................... 14

The Federalist No. 70 (A. Hamilton) (Clinton Rossiter ed. 1961) ................................. 14

**INTRODUCTION**

This case is about whether officers of the United States are removable at will under Article II of the Federal Constitution. If so, the removal constraints outlined in the Civil Service Reform Act of 1978 (CSRA) cannot constitutionally apply to such officers. If not, the CSRA's restrictions would apply as they do to other career personnel of the Executive Branch. But the Supreme Court has already—and repeatedly—resolved that question. As it noted just last week, officers of the United States, who by definition exercise significant executive authority, must be freely removable. And if any exception remains to that rule, it certainly does not apply in this case.

That's because if anything, the term "significant executive authority" *understates* Mary Comans's role as the former Chief Financial Officer (CFO) for the Federal Emergency Management Agency (FEMA). Defendants' Statement of Undisputed Material Facts (SUMF) makes clear the many significant duties and functions she exercised as CFO, and Ms. Comans does not dispute a *single* item in Defendants' Statement. Instead, she appends to her latest brief a brand-new declaration through which she seeks to admit "additional" facts into the record—facts for which there is no other support, and which are entirely at odds with those she has already admitted.

That cannot pass muster. As an initial matter, she provides no meaningful response to Defendants' careful explanation for why the Court should not have exercised jurisdiction over this dispute. But on the merits, she has no answer to the numerous significant, quintessentially executive functions she cannot deny having exercised in her former role. That not only qualifies her as an officer—it puts her well out of reach of any remaining inferior-officer exception to the default at-will-removability rule.

Because she was freely removable, the CSRA's restrictions on removal cannot constitutionally be applied. Likewise, because at-will removal permits removal for no reason at

1

all, any hearing on the truth or falsehood of allegedly stigmatizing statements accompanying her removal would be an utterly meaningless exercise. Accordingly, the Court should deny Ms. Comans's motion for partial summary judgment enter summary judgment in Defendants' favor.

**RESPONSE TO "ADDITIONAL" STATEMENT OF UNDISPUTED MATERIAL FACTS**

*First*, Ms. Comans has raised no objection to any fact stated in Defendants' own SUMF. In fact, Ms. Comans only states that she "does not dispute that the quotations" cited in Defendants' Statement "are accurate quotations from either Ms. Comans'[s] position description or performance evaluation." ECF #58 at 1. But the point is not merely that the quotations were accurately copied. Instead, Defendants' SUMF is clear that the facts therein—based on quotations from Ms. Comans's position description and performance evaluation—are about Ms. Comans's actual day-to-day role as FEMA's CFO. Defendants dutifully cited reliable authority for those assertions of her role and responsibilities in that position. And because Ms. Comans has not "controverted" Defendants' stated facts "in [any] statement of genuine issues filed in opposition to [Defendants'] motion," "the Court may assume that" those stated facts "are admitted." Local Civil Rule 56(B).

*Second*, the local rules envision that a summary-judgment movant's opening brief will contain a "section listing all material facts as to which the moving party contends there is no genuine issue," while the opposing brief will contain a "section listing all material facts as to which it is contended that there exists a genuine issue." *Id.* But Ms. Comans has now gone further than that, proffering—in her combined *opposition* to Defendants' summary-judgment motion and reply in support of her own motion—a "statement of additional undisputed material facts" containing new "undisputed" facts based almost entirely on a new, self-serving declaration. ECF #58 at 1–2. The Court should not countenance this move.

2

*Third*, were the Court to consider Ms. Comans's "additional" statement, it should see that statement for what it is: an effort to use a late-breaking declaration to controvert Defendants' stated facts without *expressly* disputing any of them. The reason is obvious: Ms. Comans could not reasonably purport to dispute the very position description of her role as FEMA's CFO, nor the very performance evaluation of her work in that role. And the facts recited in Defendants' SUMF—with which, again, Ms. Comans has identified no "genuine issue"—belie much of Ms. Comans's "additional" statement. Defendants address each factual representation in the "additional" statement in turn.

1.      This paragraph consists of a legal conclusion to which no response is necessary.

2.      This paragraph stands for the proposition that "Ms. Comans occupied a line rather than a staff position." *See id.* at 1. But to support that assertion, Ms. Comans cites only the first paragraph of her new declaration, which says no such thing. *See* ECF #58-1 at ¶ 1. Nor does any other paragraph in her new declaration. *See generally id.* Accordingly, it is unclear what Ms. Comans means by the difference between a "line" and a "staff" position, or how she can support her claim that she was one and not the other. The truth is that neither term reflects her role: she was FEMA's Chief Financial Officer, which is a "supervisory" position. *See* Defs.' SUMF ¶ 2.

3.      This paragraph stands for the proposition that Ms. Comans was "not a decision maker." ECF #58 at 1. But to the contrary, virtually every paragraph in Defendants' SUMF reflects the opposite. In her former role, Ms. Comans "provided executive leadership over the formulation, presentation, and execution of the FEMA budget"; was "responsible for administering FEMA's $45+ billion budget"; led a "professional and technical workforce" of "more than 450 personnel"; "directed" the "implementation" of "financial management policy systems and operations"; "directed necessary adjustments" to "Office of the Chief Financial Officer program

3

goals and objectives"; "established policy" and "organizational goals" for that office; managed a team of drafters of proposed legislation; and was responsible for coordinating with Congress. Defs.' SUMF ¶¶ 3, 5–6, 9–11, 13–14, 17, 19–21 (quotations cleaned).

4.    This paragraph stands for the proposition that "Ms. Comans had no authority over how FEMA spent funds or over FEMA's budget requests." ECF #58 at 2. But Defendants' SUMF reflects the opposite: Ms. Comans was "responsible for administering FEMA's $45+ billion budget"; "provided executive leadership over the formulation, presentation, and execution" of that budget; "developed detailed justifications for major expenditures"; and bore the responsibility for coordinating FEMA's budget requests with, and defending those requests to, OMB, DHS, congressional committees, and House and Senate appropriators. Defs.' SUMF ¶¶ 3–4, 14–15, 20–21 (quotations cleaned).

5.    This paragraph stands for the proposition that higher-level officials could overrule Ms. Comans's decisions. *See* ECF #58 at 2. Defendants do not dispute that point.

6.    This paragraph stands for the proposition that Ms. Comans served under the supervision of FEMA's Deputy Administrator. *See ibid.* Defendants do not dispute that point.

7.    This paragraph stands for the proposition that Ms. Comans lacked authority to initiate civil or criminal actions, or to "unilaterally stop [a] transaction." *Ibid.* Defendants do not dispute that point, except to note that as leader of "450 personnel," she undoubtedly had the authority to restrain her subordinates from approving transactions or engaging in other official-capacity conduct. Defs.' SUMF ¶ 13.

8.    This paragraph stands for the proposition that Ms. Comans lacks various prosecutorial, adjudicative, and rule-making authorities. *Ibid.* Defendants do not dispute that point.

9.      This paragraph stands for the proposition that Ms. Comans was not appointed to her former position by the President or the DHS Secretary. *Ibid.*  The fact that she was not appointed as FEMA's CFO by the President or Secretary is immaterial to either Party's summary-judgment motion.

## ARGUMENT

### I.   MS. COMANS OFFERS NO MEANINGFUL RESPONSE TO DEFENDANTS' RENEWED JURISDICTIONAL ARGUMENTS

Ms. Comans has long maintained that the MSPB has jurisdiction to grant her relief.  After all, every claim she brought here was one she first raised in that forum.  And all throughout this litigation—even after she changed her position (before this Court) on MSPB jurisdiction, *see* ECF #55 at 13–14; and even after this Court's partial-dismissal order—she has kept her MSPB action alive.  If she really believed that the MSPB lacked jurisdiction, she would drop her appeal altogether.  But she has not—that would mean giving up on back-pay, front-pay, and any other monetary relief that this Court rightly held it lacks jurisdiction to award.  ECF #42 at 10.

For the moment, Ms. Comans's MSPB appeal lies dormant, dismissed on the condition of automatic revival in about two months' time.  But the reality is the same: Ms. Comans wants two bites at the apple, and is going about that effort by telling this Court that the MSPB *lacks* jurisdiction while simultaneously maintaining her appeal in that forum.  To do so, she necessarily relies on this Court's dismissal order, despite the procedural complications it will engender.  *Cf. Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012) ("CSRA's objective of creating an integrated scheme of review would be seriously undermined" by "parallel suits" and "simultaneous proceedings").  And evidently pleased with the faster pace of litigation here than in the MSPB, Ms. Comans urges the Court to stand by its jurisdictional holding.  But she has no meaningful answer to Defendants' arguments for why that holding cannot be right.

5

She begins by pointing to two other district-court opinions she says agree "that the MSPB lacks jurisdiction in this situation." ECF #58 at 4. But neither opinion contains anything particularly revealing. In *Comey v. DOJ*, the Southern District of New York simply cited this Court's opinion and repeated its analysis. *See* No. 25-cv-7625, 2026 WL 1142679, at *5–9 (S.D.N.Y. Apr. 28, 2026). The *Comey* opinion is therefore wrong for all the same reasons described in Defendants' opening summary-judgment brief here. And *Abramowitz v. Lake*, 803 F. Supp. 3d 1 (D.D.C. 2025), is even further afield. There, the director of Voice of America (VOA) sued after his removal, arguing that by law, he could only be removed upon the approval of the VOA Advisory Board, which lacked a quorum to approve his removal. *Id.* at 5–7. The Government argued that the CSRA precluded district-court jurisdiction and, in the alternative, that the approval requirement constituted an unconstitutional restriction on the removal of that official. *See id.* at 5–7, 16. The Court held that it possessed jurisdiction, but in so ruling, held that the two-step *Thunder Basin* test *did* apply (a conclusion contrary to that reached by this Court), and that the first step pointed unequivocally *against* district-court jurisdiction (a conclusion contrary to that reached by the *Comey* court). *Id.* at 11–13; *compare ibid. with* ECF #42 at 5 (deeming focus on *Thunder Basin* "misplaced") *and Comey*, 2026 WL 1142679, at *5–9 (finding that first step of *Thunder Basin* test counseled in favor of jurisdiction). So in the end, the *Abramowitz* court held that it retained jurisdiction only on the theory that two of the three considerations relevant to the second *Thunder Basin* step cut in favor of jurisdiction, 803 F. Supp. 3d at 12–13—considerations this Court never considered one way or the other.[1] In short, neither *Comey* nor *Abramowitz* adds anything to the analysis here.

---

[1] And in any event, *Abramowitz* incorrectly resolved the second-step *Thunder Basin* considerations. As Defendants explained in their motion-to-dismiss reply brief in this case, what matters at step two is the employment-dispute nature of a plaintiff's *claims*, not the constitutional

Ms. Comans's other responses to Defendants' renewed jurisdictional arguments likewise fail to persuade. For starters, Ms. Comans appears to agree that in this statutory context, "under this section" and "under this subchapter" "mean[] the same thing." ECF #58 at 5. *Precisely.* Whereas the Court based its analysis on *differentiating* between those phrases, ECF #42 at 7, the parties apparently agree that they must be interchangeable—which means that Subchapter V, and therefore 5 U.S.C. § 7543, covers "removal[s] from the civil service," *see* 5 U.S.C. § 7542. That, of course, would trigger the aggrieved employee's MSPB appeal rights under § 7543(d).

Next, Ms. Comans argues that a highly rigid reading of "section" and "subchapter" is appropriate because if Congress had wanted to allow an MSPB appeal in the Article II-removal context, it should have "used different language entirely." ECF #58 at 6. But in the very next breath, she renounces that rigid textual adherence, dismissing its logical implications and suggesting that "under this section" only refers to § 7543(a) but not § 7543(b). *Ibid.* She cannot have it both ways. And at bottom, neither view fairly reads the text, which is best understood the way it has always been understood: to give removed employees the right to an MSPB appeal.

Finally, Ms. Comans briefly reflects Defendants' arguments back at them, suggesting that "it is Defendants' radical argument" that "blows a hole in the CSRA" because of Defendants' theory that the CSRA is not always constitutionally applicable. *Ibid.* But the fact that "Congress … did not anticipate" that one of its statutes may occasionally be overcome by constitutional values does not prove anything. *Ibid.* And Ms. Comans still has no answer to the wreckage her theory would cause the "integrated scheme of administrative and judicial review" that Congress enacted in the CSRA. *United States v. Fausto*, 484 U.S. 439, 445 (1988).

---

nature of a defendant's *defenses*. *See* ECF #31 at 8–11. Defendants have appealed *Abramowitz* to the D.C. Circuit, where the matter remains pending. *See* No. 25-5314 (D.C. Cir. 2025).

Because the CSRA is best understood to entitle Ms. Comans to appeal to the MSPB, this Court lacks jurisdiction over her claims. Accordingly, the Court should re-visit its dismissal-stage jurisdictional holding and enter summary judgment in Defendants' favor for lack of jurisdiction.

## II.    THERE CAN BE NO DOUBT THAT MS. COMANS WAS AN (INFERIOR) OFFICER OF THE UNITED STATES

Ms. Comans's recitation of the applicable legal standard cites anything but the Supreme Court's clearest—and most recent—pronouncement on the officer-status analysis. In *Lucia v. SEC*, the Court specified the governing, two-part "framework for distinguishing between officers and employees." 585 U.S. 237, 245 (2018). First, one is an officer if her position is "continuing and permanent" rather than "occasional or temporary." *Ibid.* Second, one is an officer if she "exercise[s] significant authority pursuant to the laws of the United States." *Ibid.* For the reasons discussed in Defendants' opening brief, that standard is plainly satisfied in this case.

So Ms. Comans tries to move the goal posts. First, she argues that an officer must have "power … to bind third parties or the government itself." ECF #58 at 14–15. But that requirement doesn't appear anywhere in the governing test. In fact, that is the very position advanced by the *dissent* in *Lucia*, in which Justice Sotomayor explained that she "would hold that one requisite component of 'significant authority' is the ability to make final, binding decisions on behalf of the Government." 585 U.S. at 269 (Sotomayor, J., dissenting); *see also id.* at 271 (Sotomayor, J., dissenting) ("I would hold that" the individuals at issue "are not officers because they lack final decisionmaking authority"). Needless to say, this Court must reject conclusions of law reached by dissenting Supreme Court justices where a majority of the Court reached a contrary conclusion.[2]

---

[2] And in any event, Ms. Comans *did* have the power to bind the Executive Branch: federal regulations empowered her to alter the terms of grants previously granted to grantees receiving funding from FEMA. *See* ECF #55 at 20 (citing 44 C.F.R. §§ 207.5(d)–(e), 207.7(e), 207.8(b)(3), 207.9(d)(3)).

Next, Ms. Comans argues that she "was an advisor, not a decision-maker." ECF #58 at 15–16. But that factual contention is one specifically rebutted by Defendants. *See supra* pp. 3–4. And Ms. Comans only supports it by cherry-picking from her position description and performance evaluation while ignoring the many substantive functions detailed in Defendants' SUMF and opening summary-judgment brief. Those functions put to rest Ms. Comans's suggestion that she served in a purely advisory capacity. In any event, even if she were right on the facts, she would still fall short on the law: her argument again reflects the rejected, *dissenting* opinion in *Lucia*, which argued that in the absence of the "ability to make final, binding decisions on behalf of the Government … a person who merely advises and provides recommendations to an officer would not herself qualify as an officer." 585 U.S. at 269 (Sotomayor, J., dissenting). Indeed, the *Lucia* majority expressly reaffirmed its contrary holding in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), that even where officials "could not enter a final decision," "the significance of the duties and discretion" that they exercised "meant that they were officers." *Lucia*, 585 U.S. at 274 (quotation cleaned).

Next, Ms. Comans argues that she could not be an officer because she "serve[d] under the direct formal supervision of the Deputy Administrator" of FEMA, "indicat[ing] that [her] authority was highly constrained." ECF #58 at 16–17 (quotation cleaned). But that just re-states the definition of an inferior officer, which is an officer "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 761 (2025) (quotation cleaned). The mere existence of a supervising officer proves nothing more than that Ms. Comans was not a *principal* officer—an unremarkable proposition Defendants do not contest here.

9

Ms. Comans then briefly compares herself to other officials who have been deemed inferior officers by the Supreme Court. ECF #58 at 17–18. But it proves nothing that Ms. Comans had no prosecutorial or adjudicative authority of the kind at issue in *Morrison*, *Nixon*, *Freytag*, *Lucia*, and *Arthrex*. The limited number of such cases addressed by the Supreme Court does nothing to alter the governing test: whether Ms. Comans's role was "continuing and permanent" and involved the exercise of "significant" executive authority. *Lucia*, 585 U.S. at 245.

The bottom line is this: Ms. Comans—a former member of the Senior Executive Service, and the former Chief Financial Officer of a large agency—was, by any objective measure, an officer of the United States. She was charged with "ensur[ing] that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation." 5 U.S.C. § 3131. She was "accountable and responsible for the effectiveness and productivity of employees under" her. *Id.* § 3131(3). She personally supervised a team of 450 employees, administered a budget of over $45 billion, served as the Executive Branch's representative to Congress in the negotiation of that budget, oversaw the drafting of proposed legislation, "transform[ed] the way FEMA conducts business," and was the sole official empowered by federal regulations to change otherwise fixed terms for FEMA grants. Defs.' SUMF ¶¶ 1–5, 11, 13–17, 19–21; 44 C.F.R. §§ 207.5(d)–(e), 207.7(e), 207.8(b)(3), 207.9(d)(3); *see also* ECF #55 at 19–20 (discussing the significant authority exercised by Ms. Comans on behalf of the Executive Branch). Those are all "significant authorit[ies]" evincing her status as an officer. *Lucia*, 585 U.S. at 245.

Ms. Comans has *no answer* to any of this. None of these points is addressed anywhere in her brief. All she can muster is pointing to "[t]he second sentence of the Position Description," which states that the FEMA CFO "serves as the primary advisor to the Administrator and Deputy Administrator." ECF #58 at 16 (emphasis omitted). But that is obviously not *all* she did. And in

10

light of the substantial responsibilities recited in the preceding paragraph and at greater length in Defendants' opening brief, ECF #55 at 19–20, it is inconceivable that someone at so high a perch in the Executive Branch, charged with so many critical duties, does not exercise sufficiently "significant authority" to qualify as an officer of the United States. *Lucia*, 585 U.S. at 245.[3]

### III.    BECAUSE THE INFERIOR-OFFICER EXCEPTION DOES NOT APPLY, MS. COMANS WAS SUBJECT TO AT-WILL REMOVAL

As Defendants explained in their opening brief, because Ms. Comans was an officer of the United States, she must be removable at will unless she satisfies the limited inferior-officer exception. ECF #55 at 17, 21–22. Her substantial duties and functions as FEMA's CFO compel the conclusion that she cannot. *Ibid.*

In support of applying that exception here, Ms. Comans relies heavily on outdated caselaw in *United States v. Perkins*, 116 U.S. 483 (1886), which the Supreme Court cited in dicta in *Myers v. United States*, 272 U.S. 52 (1926). *See* ECF #58 at 7–10. But the Supreme Court has had much to say about the removability of officers in the 140 years since. Just a few years ago, the Supreme Court explained that there existed exactly "two exceptions" to the at-will removal power. *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020). The first—"for multimember expert agencies that do not wield substantial executive power," *ibid.*—has now been expressly overruled, *Trump v. Slaughter*, No. 25-332, 2026 WL 1855612, at *15 (June 29, 2026). The second, now last,

---

[3] Briefly, Ms. Comans makes one more argument: that "[i]f she had been an inferior officer, her appointment would have had to be vested in and made by … the Secretary of DHS" (or the President himself). That's irrelevant here: the validity of her appointment has nothing to do with whether she satisfies the test for officer status, which is based on the nature of her tenure, duties, and functions. Were there an Appointments Clause problem, the solution would be ratification of her appointment by the Secretary, not nullification of the Article II removal power. *See Braidwood*, 606 U.S. at 793 (no Appointments Clause issue where HHS Secretary ratified previous appointments and re-appointed officers to remain in their roles). Indeed, if Ms. Comans had not been validly appointed to the office of FEMA CFO, that is all the more reason she must be freely removable from that role.

11

exception—*i.e.*, the inferior-officer exception—applies only to "inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions, now reduced by half, "represent[ed] … the outermost constitutional limit[] of permissible congressional restrictions on the President's removal power." *Ibid.* Accordingly, no greater removal restriction is constitutionally permissible than that described in *Seila Law*.

There is no world in which Ms. Comans satisfies that narrow exception. The basis for the exception is that, in those specific circumstances featuring "an inferior officer … with limited jurisdiction and tenure and lacking policymaking or significant administrative authority," a restriction on removal would not "unduly interfere with the functioning of the Executive Branch." *Id.* at 217–18. Only in that instance is a for-cause removal restriction appropriate. But a member of the SES, and the CFO of FEMA, far surpasses that kind of highly constrained officer. After all, Ms. Comans has already admitted the truth of Defendants' SUMF, which, for the reasons noted in Defendants' response to her "additional" statement of undisputed facts, *supra* pp. 3–5, clearly demonstrates that Ms. Comans was far more than the passive, "purely advisory" figure she makes herself out to be, ECF #58 at 18; *see also* ECF #55 at 18–21 (describing Ms. Comans's various critical functions). And as already explained in Defendants' opening brief, members of the SES are tasked with the very "executive management of the Government of the United States" and are "responsible for the effectiveness" of Executive Branch officers and employees working beneath them. ECF #55 at 19 (citing 5 U.S.C. § 3131). Removal restrictions on that kind of officer definitionally "interfere" with the President's free reign over quintessentially executive operations within his branch of the Federal Government. *Seila Law*, 591 U.S. at 217; *see also Slaughter*, 2026 WL 1855612, at *21 (President "alone is vested with 'the executive Power' of the United

States," requiring that he not be "saddle[d] … with those with whom he cannot work" (quoting U.S. Const. art. II, § 1, cl. 1) (emphasis omitted)).[4]

In response to all this, the best Ms. Comans can do is note that she did not exercise any of the prosecutorial powers possessed by the Independent Counsel in *Morrison*. *See* ECF #58 at 19. But that unremarkable observation does nothing to support her argument. The point is that in her own, different, "essential" role within the Executive Branch, Defs.' SUMF ¶ 13, Ms. Comans exercised substantial executive authority far exceeding the standard by which the inferior-officer exception is applied. And given the many critical executive functions for which she was responsible, binding precedent compels the conclusion that she was removable at will, and that the CSRA's removal restrictions therefore cannot be constitutionally applied to her removal.[5]

Finally, the Supreme Court's recent decision in *Trump v. Slaughter* further underscores Defendants' position.[6] There, the Court analyzed, in careful detail, the extent of permissible removal restrictions on officers. "Nearly 250 years ago," it explained, "the Framers decided to

---

[4] Ms. Comans's suggestion that perhaps she could have been *demoted*, rather than removed altogether, ECF #58 at 12–14, does not change the bottom line: because she was an officer of the United States to whom no relevant exception applies, at-will removability must have been an available option.

[5] Separately, Ms. Comans also argues that "[e]ven accepting the Defendants' theory, if Ms. Comans is not an inferior officer, Ms. Comans still had an enforceable right to continued employment" and "a right to contest the assertion that she was an inferior officer." ECF #58 at 26–28. That makes no sense at all. Defendants' argument is premised squarely on the position that Ms. Comans was an officer. And Defendants' argument that she is therefore *freely* removable definitionally means that she was entitled to no procedural rights in the course of her removal. Ms. Comans cites no caselaw whatsoever for the proposition that even at-will removability comes with a catch—*i.e.*, one that would allow her to contest her executive-officer status prior to removal.

[6] Defendants appreciate that *Slaughter* was issued only after Ms. Comans completed her summary-judgment briefing. Accordingly, Defendants would not oppose permitting Ms. Comans a sur-reply regarding the impact of that decision on this case, on the condition of a commensurate continuance of the hearing currently set for July 17, 2026—both to allow Ms. Comans time to raise those arguments, and to allow Defendants (and the Court) time to digest them.

13

vest 'the executive Power' in one person—a President of the United States of America." 2026 WL 1855612 at *5 (quoting U.S. Const. art. II, § 1, cl. 1) (quotation cleaned). "With just one President in charge, they reasoned, there would be no doubt 'on whom the blame or punishment of a pernicious measure ought really to fall.'" *Ibid.* (quoting The Federalist No. 70, p. 428 (A. Hamilton) (Clinton Rossiter ed. 1961)) (quotation cleaned). But "[b]ecause no one could execute the laws alone and unaided, … the President must be permitted to select those who act for him and remove those for whom he cannot continue to be responsible." *Ibid.* (quotation cleaned). "To hold otherwise would make it impossible for the President to fulfill his constitutional obligation to take care that the laws be faithfully executed." *Ibid.* (quotation cleaned).

The point of this system is "to establish a hierarchy—a 'Chief Magistrate' with whom the buck stops, and below him various 'assistants or deputies' who … remain 'subject to his superintendence.'" *Id.* at *7 (quoting The Federalist No. 47, p. 303 (J. Madison) (Clinton Rossiter ed. 1961)). And "[t]o remain accountable to the President, those officers must be removable by the President." *Ibid.* Put differently, "the power to remove at will was a necessary corollary of the Constitution's design," because "[o]nly if the President's deputies were removable at will would they truly be 'subordinate' to 'the sole executive magistrate.'" *Id.* at *9 (quoting The Federalist No. 47, p. 303). "And only then could the Constitution live up to" the aspiration "that the President would be *personally responsible* for everything." *Ibid.* (emphasis in original) (quotation cleaned).

In *Slaughter*, applying those principles meant expressly overruling *Humphrey's Executor*—the only exception, out of what were once two exceptions, to the general-removability rule relevant there. *See id.* at *15 ("If anything more is left of *Humphrey's*, we overrule it" (emphasis omitted)). Here, applying the same principles requires a maximally narrow

understanding of the inferior-officer exception. That, in turn, requires concluding that Ms. Comans, as a former SES member and CFO of FEMA, is removable at will. That's because the President can only be "*personally responsible* for everything" in the Executive Branch if he is personally responsible for—and therefore able to freely remove—officials exercising those functions Ms. Comans exercised in her former role. *Id.* at *9 (emphasis in original). Those functions are quintessentially executive: administering $45 billion in funds allocated by Congress; serving as the Executive Branch's representative for negotiations with Capitol Hill on legislation regarding FEMA and its budget; and managing a team of 450 employees; just to name a few. Defs.' SUMF ¶¶ 1–5, 14–15, 17, 19. *Slaughter* confirms that such functions must trigger at-will removability.

Nor is there any merit to the suggestion that the principles outlined in *Slaughter* apply only to principal officers. In fact, even the dissent in *Slaughter* resigned itself to the fact that those principles prevent "drawing a line" on the President's removal authority "at principal officers." 2026 WL 1855612 at *49 (Sotomayor, J., dissenting). After all, "[i]nferior officers … wield some executive power." *Ibid.* (Sotomayor, J., dissenting). And "[r]egardless of their rank, if the President cannot have such individuals removed at will, then there is a break in the chain of dependence … []which … must reach" from the President "down all the way to the lowest officers." *Ibid.* (Sotomayor, J., dissenting) (quotation cleaned). That is exactly right. In fact, the only exceptions acknowledged by *Slaughter* to the general-removability rule is for officers to whom executive power is not "attached," or for those limited to "functions traditionally handled outside the Executive Branch." *Id.* at *18. Accordingly, even assuming the limited inferior-officer exception survives *Slaughter*, it simply cannot apply here, because for the litany of reasons described in Defendants' SUMF and opening summary-judgment brief, there can be no doubt that

15

Ms. Comans exercised substantial, quintessentially executive power in her former role.  *See* ECF #55 at 3–5, 19–21.

## IV.    A NAME-CLEARING HEARING WOULD PLAINLY AMOUNT TO A "BOOTLESS EXERCISE"

As to Ms. Comans's liberty-interest claim, she concedes that "the sole[] remedy for a deprivation of liberty in the employment context[] [is] a name-clearing hearing."  ECF #58 at 20.  But as Defendants have already explained, even in that context, a name-clearing hearing is not available when it would have no effect on the "discharge or significant demotion" accompanying the allegedly stigmatizing statements for which a name-clearing hearing might be afforded. *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006); *see* ECF #55 at 23–27.

None of Ms. Comans's counter-arguments has anything to do with why the precedents Defendants cite are not binding here.  She begins by claiming that "a name-clearing hearing … will be of great value to Ms. Comans in that it will allow her to clear her name and restore her reputation."  ECF #58 at 21.  But that treats her liberty-interest claim like a defamation claim. They are not the same: whereas defamation has to do with a plaintiff's sheer reputation, "stigma or reputation alone, apart from some more tangible interests such as employment, is not 'liberty' within the meaning of the Due Process Clause."  *Elhady v. Kable*, 993 F.3d 208, 226 (4th Cir. 2021) (quotation cleaned).  Instead, a liberty-interest claim has to do with the relationship between the "public charge" and the accompanying adverse government action.  *Sciolino v. City of Newport News*, 480 F.3d 642, 649 (4th Cir. 2007).  And the point of any hearing is so that the aggrieved employee "may test the validity of the proffered grounds for his dismissal."  *Richardson v. Orangeburg Sch. Dist. No. 1*, No. 94-2092, 1995 WL 255941, at *3 (4th Cir. May 3, 1995) (unpublished op.).  In this case, there are no such grounds to test: the point of at-will removal is

16

that no reason need be proffered at all, rendering a hearing on the truth or falsehood of any proffered reason a "bootless exercise." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003).

Next, Ms. Comans argues that "an employee is entitled to" a hearing "even if the employee is not entitled to reinstatement *via* a property interest claim." ECF #58 at 21 (citing *Harrell v. City of Gastonia*, 392 F. App'x 197 (4th Cir. 2010), and *Richardson*, 1995 WL 255941). But neither of the cited cases—each unpublished and therefore non-precedential—stands for that proposition, or contends with the Supreme Court's decision in *Connecticut Department of Public Safety*. Ms. Comans then cites *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), calling it "the fountainhead of the [sic] liberty interest jurisprudence" and claiming that it requires a hearing "even in a case like *Roth* where the employee was dismissed" and had "no possible claim of entitlement to re-employment," ECF #58 at 21–22. But *Roth* actually held the exact opposite. *See* 408 U.S. at 578 (because terms of appointment "secured absolutely no interest in re-employment" at end of contract, employer was not "require[d] … to give [respondent] a hearing when [it] declined to renew his contract").

Ms. Comans then insists that "[t]here is no requirement that the termination or demotion was itself unlawful" and that "[i]f Defendants' argument were correct, an employee could never bring a liberty interest claim[] unless the employee could also bring a property interest claim." ECF #58 at 23. But she cites only her own flatly incorrect interpretation of *Roth*'s holding to support that argument. And in any event, Defendants have never argued that "the termination or demotion" in question must be "unlawful" for a name-clearing hearing to be appropriate. The point is that the allegedly stigmatizing statements must have been *legally related* to the adverse action suffered. *Cf. Conn. Dep't of Pub. Safety*, 538 U.S. at 7 ("even assuming" deprivation of liberty interest, no entitlement to hearing "to establish a fact that is not material" to adverse action).

17

Finally, Ms. Comans dismisses *Connecticut Department of Public Safety* with the terse conclusion that "[t]he case is not on point" and "does not overrule *sub silentio Roth* and all of the Fourth Circuit precedent that is directly on point." ECF #58 at 23–24. That is no argument at all. Supreme Court precedent is binding on this Court, and nothing in *Roth* or any of the Fourth Circuit cases she cites is at odds with *Connecticut Department of Public Safety*. Again, *Roth* held that no name-clearing hearing was required where there was no entitlement to employment. 408 U.S. at 578. None of the Fourth Circuit cases Ms. Comans cites involve the kind of legal disconnect that features in this case between the adverse government action and allegedly stigmatizing statement. And *Connecticut Department of Public Safety* is right on point: there, the Supreme Court held that "even assuming, *arguendo*, that" the plaintiff "ha[d] been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material" to the accompanying adverse government action. 538 U.S. at 7. "In short, even if" Ms. Comans "could prove" the fact for which she sought a name-clearing hearing, the fact that she is subject to at-will removal renders "any hearing on" that fact "a bootless exercise." *Id.* at 7–8.[7]

## V.    NEITHER A DECLARATORY JUDGMENT NOR MANDAMUS IS AVAILABLE HERE

As to her "declaratory judgment" claim, *see* Compl. ¶¶ 55–57 ("Sixth Cause of Action"), Ms. Comans has now conceded that it "cannot survive as a standalone claim," ECF #58 at 29. That alone warrants the entry of judgment in Defendants' favor on that point. If Ms. Comans prevails on any of her other claims, a *prospective* declaratory judgment might be an available

---

[7] In a separate section of her brief, Ms. Comans accuses Defendants of "misrepresent[ing] the controlling case law by suggesting that in order to establish a liberty interest claim, Ms. Comans must show that Defendants' stigmatizing statements were made in the formal notice of termination." ECF #58 at 24–26. This is a bewildering accusation indeed. Defendants have not made that argument in any briefs to date. And Ms. Comans quotes no part of Defendants' briefs to that effect. Whatever the purpose of this straw-man argument, the Court should pay it no heed.

18

*remedy* for that claim.   But her "claim" for declaratory relief simply cannot survive as an independent cause of action.   And in any event, because her other claims fail, a declaratory judgment is off the table altogether.   Even as to the liberty-interest claim, for which Defendants have "assum[ed]" a sufficient "minimum showing" at this stage, ECF #55 at 23, declaratory relief is unavailable because it would amount to an impermissibly *retroactive* declaration of wrongdoing rather than a *prospective* declaration of rights.   *See PACEM Sols. Int'l, LLC v. SBA*, 148 F.4th 258, 264 (4th Cir. 2025) ("In the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant").

As to her mandamus claim, Ms. Comans at least concedes that it may survive "only as an alternative remedy in the event that no other remedy is available."   ECF #58 at 29.   But that still gives short shrift to the law.   As the Court's partial-dismissal order explained, "given the ordinarily 'comprehensive and exclusive' nature of the CSRA," Ms. Comans's APA claims could not proceed.   ECF #42 at 10 (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)).   And Ms. Comans has no response to Defendants' argument that the same rationale applies to her mandamus claim.   After all, "'what you get under the CSRA is what you get,'" *ibid.* (quoting *Grosdidier*, 560 F.3d at 497), and the whole point of the CSRA was to replace the "patchwork" of formerly applicable remedies, including "suits for mandamus," *Fausto*, 484 U.S. at 444.   Accordingly, it is no answer to suggest, as Ms. Comans does, that mandamus should be available as a last-ditch alternative.   Either she is entitled to relief under the CSRA, or she is entitled to no relief at all.

Nevertheless, Ms. Comans insists that "mandamus jurisdiction has not been rendered entirely unavailable by the CSRA."   ECF #58 at 29 (quotation cleaned).   But she cites no Fourth Circuit authority to support that assertion.   And three of the four cases she does cite pre-date

19

*Fausto*'s express holding, in 1988, that the CSRA altogether replaced alternative remedies like mandamus. The fourth case—*Karamanos v. Egger*, 882 F.2d 447 (9th Cir. 1989)—does her no better: the language she quotes from that case in fact comes from a D.C. Circuit case pre-dating *Fausto*. *See* ECF #58 at 29 (quoting *Karamanos*, 882 F.2d at 450, which in turn quotes *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985)). And in any event, the *Karamanos* opinion expressly noted that it was not "resolv[ing] the effect of *Fausto* on mandamus actions in the present case." 882 F.2d at 451 n.1. At bottom, there is no overcoming the Supreme Court's holding—repeated by the D.C. Circuit, and in turn by this Court—that the CSRA provides all the relief available, if any, in this case. ECF #42 at 10.

Finally, Ms. Comans's suggestion that "it is not clear whether any remedy other than mandamus is available" does not suffice to save her mandamus claim from summary judgment in Defendants' favor. ECF #58 at 30. She makes no effort to satisfy the five-part test outlined in Fourth Circuit precedent, nor attempts to explain how this case constitutes the "extraordinary situation[]" required to warrant such "drastic" relief. *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999). For the reasons explained in Defendants' opening summary-judgment brief, this claim, too, must fail. *See* ECF #55 at 28–29.

## CONCLUSION

The Court should enter summary judgment against Plaintiff and in favor of Defendants on all claims.

JULY 9, 2026                                         *Respectfully submitted,*

TODD W. BLANCHE                                      BRETT A. SHUMATE
Acting Attorney General                             Assistant Attorney General
                                                    Civil Division

_____/s/_____
MATTHEW J. MEZGER                                    CHRISTOPHER HALL
Assistant United States Attorney                    Assistant Branch Director
Office of the United States Attorney                Federal Programs Branch
2100 Jamieson Avenue
Alexandria, Virginia 22314                          */s/ Cesar Azrak*
Tel:    (703) 299-3741                              CESAR AZRAK
Fax:    (703) 299-3983                              Trial Attorney
Email: Matthew.Mezger@usdoj.gov                     United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, NW
                                                    Washington, DC 20005
                                                    Telephone: (202) 305-0693
                                                    Email: cesar.e.azrak@usdoj.gov

                    *Counsel for Defendants*

21