IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARY COMANS,<br><br>*Plaintiff*,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, DEPARTMENT OF HOMELAND SECURITY, AND UNITED STATES OF AMERICA,<br><br>*Defendants*. | 1:25-cv-1237-MSN-WEF |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a referral from the District Judge to conduct a name-clearing hearing.[1] Dkt. 64. The purpose of this name-clearing hearing is to afford Plaintiff Mary Comans the opportunity to rebut the public stigma caused by derogatory statements made about her by high-ranking government officials at the time she was fired from her job at the Federal Emergency Management Agency (FEMA). This hearing provides Ms. Comans with the due process she was denied by the Government at the time she was fired. As the Government points out, name-clearing hearings are rare in federal court; instead they are usually conducted by the plaintiff's former employer, in this case the Department of Homeland Security (DHS). However, given the outrageous government conduct, including by those at the highest levels of DHS, in knowingly spreading false information about Ms. Comans, it is essential that this process be conducted by an independent judicial officer and memorialized in an Order of the Court.

[1] Matters may be referred by a district judge to a magistrate judge pursuant to 28 U.S.C. § 636.

In conducting this hearing, the Court is not called upon to resolve factual disputes between the parties. The facts set forth in this Memorandum Opinion and Order were proposed by the Plaintiff, unobjected to by the Government, and then deemed admitted by the Court. Dkts. 74, 75, 77.[2] These facts establish that high-ranking government officials, including then Secretary of DHS Kristi Noem and Elon Musk, engaged in a coordinated public relations campaign to impugn the personal and professional integrity of Ms. Comans. For reasons unfathomable to this Court, officials chose to turn the power of the federal government against a singular employee with an impeccable record of public service. In short, Ms. Comans was professionally targeted and personally attacked by government officials for no legitimate reason. The attacks against Ms. Comans were based entirely on false information, and many government officials knew the accusations were untrue at the time they were made. With no regard for the truth and with no consideration for the personal and professional effect on Ms. Comans, government officials exploited their access to mass media outlets to broadcast false information. These false statements reached hundreds of millions of people. The purpose of this Order is, to the best of this Court's ability, to correct the public record and establish as a matter of law that the statements made by these officials about Ms. Comans were objectively and demonstrably false.

*Procedural History and Summary of Relevant Facts*

By way of background, Ms. Comans was a career civil servant with the federal government and a member of the elite Senior Executive Service.[3] She had more than 21 years of federal service. She worked and was promoted under the leadership of both political parties. In January 2018, Ms.

[2] By failing to object to the Plaintiff's Proposed Statement of Facts, the Government knew they were conceding the accuracy of those facts for purposes of this hearing. Dkt 74. A full statement of all the facts unchallenged by the Government and deemed admitted by the Court can be found at Dkt 75. These facts are now part of the public record and are therefore only summarized as needed in this Order.

[3] The full factual and procedural history of this case is set forth in the District Judge's Memorandum and Opinion dated July 21, 2026. Dkt. 64.

Comans became the Chief Financial Officer of FEMA.[4] Ms. Comans was an exemplary public servant. She was a knowledgeable and highly skilled professional. She was a nonpartisan subject-matter expert. She worked tirelessly to further the crucial mission of FEMA on behalf of the American people.

On February 11, 2025, despite Ms. Comans' professional experience, breadth of knowledge, and demonstrated commitment to public service, she was fired. She was fired without cause or explanation. The sole reason given for her firing was that the President of the United States had the absolute and unquestioned right to do so under Article II of the Constitution. The District Judge, under the facts of this case, rejected that argument on the grounds that Congress lawfully exercised its authority to protect Senior Executive Service employees from being indiscriminately fired. The District Judge held that Ms. Comans was fired without due process and was deprived of her property interest in continued federal employment.

This hearing addresses a related issue, namely, whether the government officials' highly disparaging and utterly false comments about Ms. Comans' personal and professional character at the time she was fired were themselves unlawful. On this issue, the District Judge held that these statements deprived Ms. Comans of her liberty interest in her good name without due process of law. This name-clearing hearing is, at least, a partial remedy for that violation of law.

*False Statements Made by Government Officials*

The false statements targeting Ms. Comans were based on the incorrect belief that she circumvented an Executive Order signed by the President on January 20, 2025, that paused federal funding to non-governmental organizations providing services to illegal or removable aliens. One

[4] As CFO, Ms. Comans was the principal financial advisor to the FEMA Administrator and reported directly to the FEMA Deputy Administrator.

early point of confusion was whether the Executive Order required a pause in funding only to non-governmental organizations or whether it also paused funding to state and local governments. This was not a decision to be made by the CFO. In fact, as CFO, Ms. Comans had neither the authority nor the ability to direct money to or away from a particular grant recipient. Defining the scope of the Executive Order was left to senior DHS or FEMA leadership, their general counsels, or at the very least other FEMA employees who had direct authority over the grant programs at issue. Ultimately, the agency's decision was that payments should continue to state and local governments. This decision was explicitly approved by employees of the newly created Department of Government Efficiency (DOGE) who were embedded with DHS and were reviewing and approving all funding initiatives. As a result of DOGE's approval, Ms. Comans was directed to continue payments to state and local governments.

Thereafter, other DOGE employees embedded with the Department of Treasury claimed FEMA's payments to state and local governments violated the President's Executive Order. What followed was a series of finger pointing and backtracking that resulted in the decision to blame Ms. Comans and three other career officials. On February 11, 2025, Ms. Comans was fired and DHS and DOGE officials began their public campaign to use her as a scapegoat.

*i. February 11, 2025, DHS Press Release*

The first public attack on Ms. Comans came on February 11, 2025, when DHS issued a press release stating that FEMA's Chief Financial Officer had been fired "for circumventing leadership to unilaterally make egregious payments for luxury NYC hotels for migrants." It was a matter of public record at the time, including on the FEMA website, that the Chief Financial Officer was Ms. Comans. The press release implied Ms. Comans was a "deep state activist" who had "undermine[d] the will and safety of the American people." The Government concedes and

the Court finds that other than the fact that Ms. Comans had been fired, this statement was entirely false. The Government further concedes and the Court further finds that officials at FEMA and DHS knew this statement was false at the time it was made.

*ii. February 11, 2025, Statement by DHS Spokesperson to The New York Times*

On or about February 11, 2025, DHS spokesperson Tricia McLaughlin provided *The New York Times* an on-the-record statement that four FEMA employees, including Ms. Comans, had been fired "for circumventing leadership to unilaterally make egregious payments for luxury N.Y.C. hotels for migrants." The statement was published by *The New York Times*. The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the statement to *The New York Times* was entirely false. The Government further concedes and the Court further finds that officials at FEMA and DHS knew the statement was false at the time it was made.

*iii. February 11, 2025, Statement by DHS Spokesperson to Fox News*

On or about February 11, 2025, a DHS spokesperson provided an on-the-record statement to Fox News that "four employees are being fired today for circumventing leadership and unilaterally making the egregious payment for hotels for migrants in New York City" and that the "[f]irings include FEMA's Chief Financial Officer, two program analysts and a grant specialist." The statement was published by Fox News. The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the statement to Fox News was entirely false. The Government further concedes and the Court further finds that officials at FEMA and DHS knew the statement was false at the time it was made.

*iv. February 11, 2025, Statement by DHS Spokesperson to CNN*

On or about February 11, 2025, a DHS spokesperson provided an on-the-record statement to CNN that Ms. Comans was fired for having "effectively laundered . . . forbidden funding" and

"knowingly hid this information from legal counsel to manipulate the funding process and undermine the Secretary's order." The statement was published by CNN. The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the statement to CNN was entirely false. The Government further concedes and the Court further finds that officials at FEMA and DHS knew the statement was false at the time it was made.

*v. February 11, 2025, Statement by DHS Employee to Political Commentator Benny Johnson*

On February 11, 2025, a DHS employee told Benny Johnson, a political commentator with a significant following, that "FEMA's Chief Financial Officer Mary Comans was just fired for illegally funding migrant luxury hotels in NYC against the orders of President Trump." DHS officials provided this information to Mr. Johnson with the expectation that he would further disseminate it to his audience and on-line followers. Mr. Johnson then posted the information on X. The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the information provided to Mr. Johnson was entirely false. The Government further concedes and the Court further finds that officials at FEMA and DHS knew this information was false at the time it was provided to Mr. Johnson.

*vi. February 11, 2025, Statement by Elon Musk*

On February 11, 2025, Elon Musk, a Special Government Employee and head of DOGE, retweeted on X a photo of Ms. Comans along with the statement, "FEMA CFO Mary Comans was just fired for funneling $58M to illegal migrant hotels in Manhattan" and he called it a "criminal action." The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the post by Mr. Musk was entirely false. The Government further concedes and the Court further finds that Mr. Musk and officials at FEMA and DHS knew this information was false at the time it was posted. Based on the unchallenged facts and the fact that Mr. Musk was the head

of DOGE, he knew or should have known that any payments made to state or local governments through a FEMA grant in February 2025 were approved by his subordinates. Finally, the fact that Mr. Musk posted a picture of Ms. Comans to his millions of followers while falsely characterizing her government service as a "criminal action" was clearly intended to make her afraid. Posting Ms. Comans' picture served no legitimate governmental interest and was little more than state sanctioned intimidation.

*vii. February 11, 2025, Statement by DHS Secretary Noem and Corey Lewandowski to Blogger Laura Loomer.*

On or about February 11, 2025, Laura Loomer, a blogger with a large following, posted on X that "FEMA's Chief Financial Officer Mary Comans was just fired for illegally funding over $59 MILLION for illegal Aliens to stay in luxury hotels in NYC last week in violation of President Trump's Executive Order." Ms. Loomer was given this information by then DHS Secretary Kristi Noem and DHS Special Government Employee Corey Lewandowski. Ms. Noem and Mr. Lewandowski provided this information to Ms. Loomer with the expectation that she would further disseminate it to her on-line followers. The Government concedes and the Court finds that other than the fact that Ms. Comans had been fired, the information provided to Ms. Loomer was entirely false. The Government further concedes and the Court further finds that Ms. Noem, Mr. Lewandowski, and officials at FEMA and DHS knew this information was false at the time it was provided to Ms. Loomer.

*Conclusion*

Armed only with false statements, high-ranking government officials undertook a premeditated campaign to impugn the personal and professional integrity of Ms. Comans, a non-partisan, career public servant. Their intent was to disseminate false and derogatory information about Ms. Comans as widely as possible. To be clear, it was the stated position of the United States

Government that Ms. Comans acted in a criminal manner with a criminal intent. That is untrue. Ms. Comans was publicly accused of knowingly and "egregiously" misspending federal funds. That is untrue. She was accused of laundering "forbidden funding." That is untrue. She was accused of willfully violating a Presidential Executive Order, the orders of the DHS Secretary, circumventing leadership, and frustrating the will of the American people. That is untrue. She was accused of undermining public safety. That is untrue.

Accordingly, for the reasons set forth herein the Court finds that the derogatory statements about Ms. Comans were objectively and demonstrably false, that many high-ranking government officials made these statements knowing they were false, and as to her conduct as the Chief Financial Officer of FEMA, Ms. Comans' name is **ADJUDGED CLEARED**.

William E. Fitzpatrick
William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia
October 13, 2026